1                    UNITED STATES DISTRICT COURT

2                    NORTHERN DISTRICT OF GEORGIA

3                         ATLANTA DIVISION

4

5      KINSALE INSURANCE COMPANY,

6           Plaintiff,

7      vs                                  CIVIL ACTION

8      VENETIAN HILLS APARTMENTS, LLC,        FILE NO.:

       JOHN MAUGHAN, and MARIE HUGHES,

9      as Authorized Administrator for      1:21-cv-03214-LMM

       the Estate of GEORGE HUGHES,

10

            Defendants.

11

12

13

14               REMOTE 30(b)(6)DEPOSITION OF

15                VENETIAN HILLS APARTMENTS, LLC

16                        THROUGH

17                  JAMES B. McCLUNG

18

19                  September 18, 2023

20                      12:23 p.m.

21

22      (All attendees appeared remotely via videoconferencing and/or

23                  teleconferencing.)

24

25                  Ashley N. Ellis, CVR-7199, CCR

Page 2

```
 1                     APPEARANCES OF COUNSEL
 2
 3    On behalf of the Plaintiff(s):
 4         ANDRES CORDOVA, ESQUIRE
           Clyde & Co US, LLP
 5         271 17th Street, Northwest
           Suite 1720
 6         Atlanta, Georgia 30363
           E-mail: andres.cordova@clydeco.us
 7
      On behalf of the Defendant, Marie Hughes:
 8
           DARRELL W. HINSON, ESQUIRE
 9         Shiver Hamilton, LLC
           3490 Piedmont Road
10         Suite 640
           Atlanta, Georgia 30305
11         Office: 404.593.0020
           Fax: 888.501.9536
12         E-mail: darrell@shiverhamilton.com
13    On behalf of the Defendants, Venetian Hills Apartments, LLC and
      John Maughan:
14
           MATTHEW G. MOFFETT, ESQUIRE
15         Gray, Rust, St. Amand, Moffett & Brieske, LLP
           950 East Paces Ferry Road, Northeast
16         Suite 1700
           Atlanta, Georgia 30326
17         Office: 404.870.7390
           Fax: 404.870.1030
18         E-mail: mmoffett@grsmb.com
19
20     (Pursuant to Article 10(b) of the Rules of Regulations of the
21        Georgia Board of Court Reporting, a written disclosure
22      statement was submitted by the court reporter to all counsel
23                     present at the proceeding.)
24
25
```

1                    INDEX TO EXAMINATIONS

2

3    WITNESS: JAMES B. McCLUNG

4

5    CROSS-EXAMINATION                              PAGE

6    By Mr. Cordova ................................. 5

7

8    DIRECT EXAMINATION

9    By Mr. Hinson .................................. 49

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
                                                        Page 4
 1                          INDEX TO EXHIBITS

 2

 3     EXHIBIT              DESCRIPTION               PAGE

 4     For the Plaintiff:

 5     Exhibit 1           Amended complaint          11

 6     Exhibit 2           Response to requests for

 7                         admissions                 15

 8     Exhibit 3           Response to interrogatories 16

 9     Exhibit 4           Answer and defenses        17

10     Exhibit 5           Initial disclosures        22

11     Exhibit 6           Commercial general liability

12                         declarations               36

13     Exhibit 7           7/27/21 Letter             46

14

15     For the Defendant, Marie Hughes:

16     Exhibit D1          Work order detail          51

17     Exhibit D2          Core survey                52

18

19     (Plaintiff's Exhibit No. 2 and No. 7 were retained by counsel.)

20

21

22

23

24

25
```

1       THE VIDEOGRAPHER:  We are on the record, September

2    18th, 2023 at approximately 12:23 p.m. Eastern time.

3    This will be the 30(b)(6) videotaped deposition of

4    Venetian Hills Apartments.  The corporate representative

5    today will be Brad McClung.  Would counsel please identify

6    themselves and who they represent for the record.

7       MR. CORDOVA:  Hello, everyone.  Counsel for Kinsale

8    Insurance and my name is Andres Cordova.

9       MR. MOFFET:  Matt Moffett for Venetian Hills, the

10    defendant.

11       MR. HINSON:  Darrell Hinson for Marie Hughes, the

12    defendant.

13       THE VIDEOGRAPHER:  Would the court reporter please

14    swear the witness in.

15                    WHEREUPON,

16                    JAMES B. McCLUNG,

17    having been produced and first duly sworn as a witness,

18    testified as follows:

19                    CROSS-EXAMINATION

20    BY MR. CORDOVA

21       Q    Okay.  Good morning, Mr. McClung, as I said before my

22    name is Andres Cordova and I represent Kinsale Insurance

23    Company in this case.  Basically, like I'm sure you discussed

24    with counsel, the purpose of today's deposition is just for me

25    to hopefully gain some insight about Venetian's position in not

Page 6

1    only this case, but the underlying lawsuit by Marie Hughes

2    against Venetian Hills which I'll refer to generally as the

3    underlying case today.  And yeah -- and also, as you know, the

4    underlying lawsuit involves a fire or an incident involving a

5    fire that occurred on March 15th, 2017, so whenever I say the

6    fire and incident, I'm referring specifically to that.

7              Just some quick ground rules.  Please respond to my

8    questions verbally rather than making gestures or nodding and

9    stuff like that just so that the transcript is clear from

10   today.  Also, if you don't understand a question, just let me

11   know and I'll do my best to rephrase it.  If you answer a

12   question, I'll assume you understood the question and you don't

13   need any clarification, so just let me know if you ever

14   confused or you don't quite understand what I'm asking.

15        A    Okay.

16        Q    Thank you.  Can you please state your name and

17   address, again, for the record?

18        A    It's James B. McClung and my current address is 1728

19   Autumn Sage Drive, Dacula -- that's D-a-c-u-l-a -- Georgia

20   30019.

21        Q    Okay.  And you understand that you're testifying here

22   today as the corporate representative or designated

23   representatives of Venetian Hills, LLC, correct?

24        A    Yes.

25        Q    Okay.  And you understand that that means that your

1     testimony is binding on Venetian Hills as a company, correct?

2         A     Yes.

3         Q     Okay.  And generally today I'll be referring to

4     Venetian Hills, LLC as Venetian or Venetian Hills.  I'm sure

5     you'll be able to follow that.  So where are you physically

6     located today?

7         A     I'm at Mr. Moffett's office in Atlanta.

8         Q     Okay.  And other than Mr. Moffett, is anyone else in

9     the room with you?

10        A     No.

11        Q     Okay.  Have you been deposed before?

12        A     No.

13        Q     Okay.  What did you do to prepare for today's

14    deposition?

15        A     I went over basically the documents that you

16    identified in your Exhibit A to the notice of deposition.

17        Q     Okay.  Did you meet or talk with Mr. Moffett or

18    another attorney at his firm prior to today to prepare?

19        A     Yes, spoke with Mr. Moffett and Mr. Del Campo.

20        Q     Okay.  How many times would you say you spoke with

21    them?

22        A     Twice, I believe.

23        Q     Okay.  What is your title within Venetian Hills the

24    company?

25        A     I have been its attorney.  I don't really have a

1    title, but I've been its general counsel probably for five

2    years now, going on six.

3         Q    Okay.  So you were -- you were -- were you serving as

4    general counsel when the fire incident happened?

5         A    I was retained after, right after the fire happened.

6         Q    Was the lawsuit by Marie Hughes, the underlying

7    lawsuit, already pending at that time when you were retained?

8         A    I don't believe that one was pending.  I would have

9    to check back on the dates that that suit was filed.  I don't

10   believe it was pending at the time.  I could be wrong.

11        Q    Okay.  And in your capacity as general counsel for

12   Venetian Hills, who is your primary contact at the company or

13   were there multiple people?

14        A    Multiple people, but primarily John Maughan and also

15   had contact with Art Robinson, the property manager.

16        Q    Okay.  Were you involved with Venetian's preparation

17   of the answer of any discovery responses or anything like that

18   either in this coverage accident or in the underlying lawsuit?

19        A    In the underlying lawsuit I was something of conduits

20   for documents that were produced in response to discovery in

21   the Hughes lawsuit, the underlying lawsuit.  I do not believe I

22   was personally involved in producing documents in this case,

23   although I understand they are one and the same.  I believe, in

24   large part, the documents that were produced in the Hughes suit

25   was also produced here.  That's my understanding anyway.

1        Q     Okay.  Let me ask you, as an attorney, have you ever

2   deposed someone before?

3        A     More times than I can count.

4        Q     Okay.  What type of law did you practice?

5        A     I am presently -- we concentrate on real estate

6   litigation and some corporate litigation, but we're trial

7   lawyers primarily.

8        Q     Okay.  And is that representative of your practice

9   throughout your career or is that just what you do right now?

10       A     That's what I'm doing now.

11       Q     Okay.  What did you do before?

12       A     I started out as a federal public defender probably

13  in the late 80s, moved to assistant district attorney through

14  the mid 90s, moved to insurance defense probably until 2000 --

15  no, I'm sorry, 1996 and been concentrating our real estate

16  litigation since 1996.

17       Q     Okay.  So I guess just to be clear, you reviewed the

18  amended Rule 30(b)(6) notice of deposition for today, right?

19       A     Yes.

20       Q     So you're prepared to testify regarding all the areas

21  of inquiry in there?

22       A     Yes.

23       Q     Perfect.  And I know you mentioned a moment ago that

24  you primarily dealt with John Maughan at the Venetian company.

25  It he -- what's your understanding of his position within the

1   company?

2        A    He's the sole owner of the company.

3        Q    Okay.  So he the sole member of the LLC.  Is he also

4   an active manager of the LLC?

5        A    Of the LLC, yes.

6        Q    And have you -- are you still contact with

7   Mr. Maughan?

8        A    Yes.

9        Q    And my understanding is that --

10       A    But --

11       Q    Yeah, I think maybe we're -- you're alluding to

12  something else about that, but my understanding is maybe his

13  health is deteriorated a little bit over the last couple of

14  years.  Is that your understanding?

15       A    Yes, yes, he's -- I always forget the exact number.

16  I believe he's over 90 now and he has -- cannot hear very well.

17  All my communications with him are essentially in writing by

18  fax.

19       Q    Okay.  So I'm going to turn to discussing the

20  underlying lawsuit a little bit in a little more detail.  I'm

21  going to show you first -- let me share my screen here and

22  we'll go ahead and just mark this as Exhibit 1, the underlying

23  amended complaint from the underlying lawsuit.  Do you have

24  there in front of you by any chance or would you prefer me to

25  share my screen?

```
                                                      Page 11
 1         (Plaintiff's Exhibit No. 1 marked for identification.)

 2     A    I could get in front of me.

 3     Q    Yeah, if you could, that would be easier.

 4     A    I'm sure I have it here.

 5          MR. MOFFET:  Just let us know what exhibit you want

 6     to mark it as so we'll have the record accurate.

 7          MR. CORDOVA:  Yeah, I'm going to have that marked as

 8     Exhibit 1.

 9          MR. MOFFET:  Okay.

10          THE WITNESS:  I may not have made it.

11          MR. MOFFET:  You might have to put up on the screen.

12          THE WITNESS:  I think you may have to put it up on

13     the screen .

14          MR. CORDOVA:  Okay.

15          THE WITNESS:  Oh, wait, I have it.  I have the copy

16     that it was an exhibit to this suit, so.

17  BY MR. CORDOVA

18     Q    Okay.  So that's an 11-page document, right?

19     A    Yeah.

20     Q    The amended complaint from the underlying lawsuit?

21     A    Yes.

22     Q    Perfect.  So like I said, we're going to go ahead and

23  mark that as Exhibit 1.  Just generally, I take it you're

24  familiar with this document?

25     A    Yes.
```

```
                                                       Page 12
  1        Q    Okay.  And what's your understanding of the
  2   allegations against Venetian made in that complaint?
  3        A    That we were negligent because we did not have
  4   sufficient smoke detectors in the building, did not have a
  5   sprinkler system in the building.  I'm not sure if there was a
  6   fire extinguisher issue or not, but it was primarily fire
  7   suppression and smoke detection.
  8        Q    Now, do you, as the representative of the company, do
  9   you believe Venetian was negligent?
 10        A    I'm sorry, do I what?  Believe they were negligent?
 11             MR. MOFFET:  Objection to the form of the question.
 12             THE WITNESS:  No.  No, I don't think they were
 13        negligent.
 14   BY MR. CORDOVA
 15        Q    Okay.  Can I ask why?
 16             MR. MOFFET:  Same objection, form of the question,
 17        attorney-client privilege.
 18   BY MR. CORDOVA
 19        Q    Just generally -- just generally, do you believe that
 20   Venetian was negligent?
 21             MR. MOFFET:  Same objection.
 22             THE WITNESS:  Go ahead and answer or not?
 23             MR. MOFFET:  If you believe you can without violating
 24        the privilege, certainly.
 25             THE WITNESS:  Yeah, I think without violating the
```

Page 13

1         privilege, Venetian Hills had smoke detectors in the

2         stairwell.  We believe that that was sufficient.

3    BY MR. CORDOVA

4         Q    Okay.  Now, in the underlying lawsuit, there's been a

5    lot of discussion and we have a motions practice regarding a

6    nonparty Kamara Wheeler, do -- do you know or are you aware of

7    that individual?

8         A    I'm aware that she was charged with starting the

9    fire, yes.

10        Q    Okay.  And is Venetian Hills' position in the

11   underlying lawsuit that she did start the fire?

12        A    That's my understanding is that she did start the

13   fire, yes.

14        Q    Okay.  Do you know if Venetian is arguing in the

15   underlying lawsuit that she started the fire, perhaps to say

16   that Venetian actually wasn't negligent and she was the

17   proximate cause of the damage or what's your understanding?

18             MR. MOFFET:  Objection to the form of the question,

19        foundation, attorney-client privilege.

20   BY MR. CORDOVA

21        Q    So do you know if Venetian Hills is arguing, in the

22   underlying action, that Kamara Wheeler started the fire?

23        A    Mr. Grantham is defending us in that action.  We're

24   just relying on him to make the arguments that he's going to

25   make.  We do know that she did start the fire.  We think she

Page 14

1   caused Mr. Hughes' death.  I cannot speak to Mr. Grantham on

2   what he's going to argue.  We haven't done the trial prep yet,

3   but those are my -- that's my understanding of the facts.

4        Q    Okay.  To your knowledge -- well, let me ask you

5   this:  Were you involved with the drafting of Venetian's

6   discovery responses in the underlying lawsuit?

7        A    Mr. Grantham drafted those.  I assisted in gathering

8   the documents that were responsive to the request assisting Mr.

9   Maughan in doing that.  I didn't pull documents myself out of

10  files.  I assisted Mr. Maughan and complied with discovery

11  requests.

12       Q    Okay.  Now, do you recall if you specifically

13  assisted with Venetian's responses to Hughes' requests for

14  admission in the underlying case?

15       A    I do not.  My recollection is that Mr. Grantham

16  communicated directly with Mr. Maughan on that.

17       Q    Okay.  But did you review -- did you review those

18  responses and prepare to testify about those responses today?

19       A    I have reviewed them, yes.  I'll need to look at them

20  before I testify about them, but yeah, I reviewed them.

21       Q    Okay.  Give me one moment here.  Okay.  So would you

22  happen to have a copy of those responses or do you need me to

23  share my screen?

24       A    I do not think I brought those.  Yeah, share your

25  screen if you can on that.

```
 1        Q    Okay.  So these are Venetian's responses to Hughes'
 2   request for admission in the underlying lawsuit.  I'm going to
 3   go ahead and mark that as Exhibit 2, and I am pulling that up
 4   right now.  Let me scroll to the top.  Do you see that
 5   document?
 6        (Plaintiff's Exhibit No. 2 marked for identification.)
 7        A    I do.
 8        Q    Okay.  And those are Venetian's responses to
 9   plaintiff's first request for admission in the underlying
10   lawsuit, correct?
11        A    It does look like it, yes.
12        Q    Okay.  So I just wanted to run through a couple of
13   these with you, specifically Number 9, for example.  In that
14   response, Venetian responds that plaintiff's damages, if any,
15   were caused by Kamara Wheeler, correct?
16        A    Yes.
17        Q    Do you know if that position has changed at all since
18   these responses were served?
19        A    Not to my knowledge.  She started the fire and we
20   contend she was responsible for his death.
21        Q    Okay.  I guess I kind of have the same question about
22   Number 10, the same response.  I apologize, strike that last
23   statement.
24             Okay.  So I understand your response.  Let me also
25   get one moment here.  And now we're going to turn to Venetian's
```

Page 16

1   responses to first interrogatories in the underlying lawsuit,

2   which I'll go ahead and mark it as Exhibit 3.  Give me one

3   moment here to pull it up.  Okay.  So do you see the

4   interrogatories responses on the screen?

5       (Plaintiff's Exhibit No. 3 marked for identification.)

6       A    Yes.

7       Q    Okay.  So I guess just generally I'm going to have

8   similar questions about the response to Interrogatory Number 4.

9   In this response, Venetian identifies Kamara Wheeler as the

10  sole cause for plaintiff's damages.  Venetian also referred to

11  Ms. Wheeler an arson that lead to the death, and again, I -- is

12  your understanding that that position has not changed since

13  these responses were served?

14          MR. MOFFET:  Objection to the form of the question.

15          THE WITNESS:  That is my understanding, has not

16      changed.

17  BY MR. CORDOVA

18      Q    Okay.  Give me a moment.  So I guess let me jump to

19  Venetian's answer in this case, the coverage action.  Do you

20  have that in front of you?

21      A    Yes.

22      Q    Okay.  So if you could turn to the response

23  allegation -- the allegation in Paragraph Number 9, and I guess

24  I think you might need the complaint to cross-reference on this

25  is also -- the allegation is actually copy.  Do you see the

1    allegation and the response there?

2         A    I see the response.

3         Q    Okay.  If you could also pull up the complaint, I

4    suppose, to cross-reference.  And I'll go ahead and have

5    Venetian's answer in this case marked as Exhibit 4 for the

6    record.

7         (Plaintiff's Exhibit No. 4 marked for identification.)

8         A    All right.  I've reviewed it.

9         Q    Okay.  So the response -- well, first of all, the

10   allegation in Paragraph 9 was -- that allegation is, quote, on

11   March 15th, 2017, Wheeler committed arson by setting the fire

12   at the Venetian Hills Apartments.  Could you please -- could

13   you please read the response to that allegation and the answer?

14        A    Paragraph 9 of plaintiff's complaint asserts a legal

15   conclusion to which no response is required.  To the extent

16   that the paragraph -- should say nine -- is construed to a

17   certain factual or legal allegation, these defendants are

18   without sufficient knowledge or information to either admit or

19   deny the allegations contained in Paragraph 9 of plaintiff's

20   complaint.

21        Q    So regarding the factual allegations made in

22   Paragraph 9, the response was essentially that Venetian has

23   insufficient knowledge to admit or deny?

24        A    Yeah.

25        Q    Is that fair to say?

1       A     Yes.

2       Q     Okay.  Isn't that inconsistent with Venetian's

3    position in the underlying lawsuit that Wheeler started the

4    fire?

5             MR. MOFFET:  Objection to the form of the question,

6          foundation.

7             THE WITNESS:  It says what it says, but yeah, I read

8          it as legal speak.  I do the same thing when I file

9          answers where factual allegations that we think might be

10         true but haven't been fully proven or made, you know,

11         everything is fleshed out in the actual underlying

12         lawsuit.

13   BY MR. CORDOVA

14      Q     Correct.  But when you're answering a complaint,

15   don't you have -- well, let me rephrase.

16             So you're saying that Venetian was responding

17   tactically or strategically, but not actually based on fact in

18   that paragraph?  I'm trying to understand your response.

19             MR. MOFFET:  Objection to the form of the question.

20             THE WITNESS:  We relied on our attorney to draft the

21         answer.  We understand that Kamara Wheeler was arrested

22         and charged with arson.  I think at the time -- I don't

23         remember if she has entered her plea yet or not, she may

24         have, but respectively we just relied on our attorneys to

25         answer Number 9.

1    BY MR. CORDOVA

2        Q    Okay.  And did you work with your attorneys on that

3    response?

4        A    I did not personally, no.

5        Q    Okay.  Do you know if John Maughan did?

6        A    I think Mr. Maughan reviewed the response prior to it

7    being filed is my understanding.

8        Q    And that understanding is -- did you see e-mails that

9    substantiate that understanding or what is that understanding

10   based on?

11       A    I was aware that Mr. Moffett's firm sent a copy of

12   the draft answer to Mr. Maughan.

13       Q    Okay.  Do you know if they ever met to discuss it or

14   discussed it over the telephone?

15       A    I can't say that with certainty.

16       Q    Okay.  And I guess let's also turn to Paragraph 11.

17   Please read the allegation -- actually, I'll read the

18   allegation.  Paragraph 11 alleges the ultimately the fire that

19   Wheeler started killed Mr. Hughes.

20       A    Yes.

21       Q    My understanding from your testimony here today is

22   that that is an accurate statement based on Venetian's position

23   in the underlying lawsuit.  Do you agree?

24            MR. MOFFET:  Objection to the form of the question.

25            THE WITNESS:  My understanding is that Wheeler

Page 20

```
 1        started the fire, yes.
 2   BY MR. CORDOVA
 3        Q    Okay.  And if you could look at Venetian's answer in
 4   this case, the answer to Paragraph 11 specifically, it looks
 5   like Venetian again said that it didn't have sufficient
 6   knowledge or information to admit or deny that allegation.  But
 7   again -- is that correct?
 8        A    That is how it reads, yes.
 9        Q    Okay.  And again, I suppose -- my question is again:
10   Isn't that inconsistent with Venetian's position in the
11   underlying lawsuit?
12             MR. MOFFET:  Same objection, form of the question.
13             THE WITNESS:  Well, yes, we understand that Ms.
14        Wheeler started the fire.  We rely on our counsel though
15        to draft the pleading in response to the complaint.
16   BY MR. CORDOVA
17        Q    And if I could ask:  What exactly is your
18   understanding that Wheeler started the fire based on?
19        A    Her deposition transcript in part, police reports,
20   fire reports from the scene, discussions with my client.
21        Q    Are you aware of any evidence indicating that she
22   didn't start the fire?
23        A    Did not start the fire?  No, no, she started the
24   fire.
25        Q    Do you know why she started the fire?
```

Page 21

1        A     Only what she said in her deposition.  I can only

2     repeat what she claimed, I don't know if it's true or not.

3        Q     So no one else has testified about what -- you know,

4     the reason why she started the fire except Wheeler?

5        A     I believe Wheeler is the only one that gave an

6     explanation.  I don't believe that Roger, his last name escapes

7     me, whose room she was in at the time, has given any statement,

8     not that I'm aware of anyway.

9        Q     Would you happen to know why that is?  Did anyone

10    subpoena his testimony?

11       A     I do not know.  I never saw a police report with his

12    -- any statement by him.  I don't know if he gave a statement.

13       Q     Okay.  And your recollection from Wheeler's

14    testimony, she says she was in the room and that ultimately she

15    started the fire to escape from the Roger individual you

16    mentioned.  Does that sound correct to you or accurate?

17       A     Yes.

18       Q     And she testified that the fire -- she started it

19    intentionally, correct?

20       A     Yes, she said she lit a sock on fire, one of her own

21    socks, because she was being sexually assaulted and she wanted

22    a diversion, I believe is what she testified to.

23             MR. MOFFET:  Object to the form of the question.

24             THE WITNESS:  And I believe she started -- lit one

25        other item on fire.

Page 22

BY MR. CORDOVA

2    Q    Okay.  So I'm going to turn now to Venetian's initial

3    disclosures in this case, and I'm going to go ahead and mark

4    that as Exhibit 5.  Would you happen to have a copy of that in

5    front of you?

6        (Plaintiff's Exhibit No. 5 marked for identification.)

7    A    Those I do not have with me.

8    Q    Okay.  Just give me one moment and I'll pull up my

9    screen.  Okay.  You should be able to see the initial

10   disclosures now.  Do you see them?

11   A    I do.

12   Q    Okay.  So I just wanted to ask you a couple of

13   questions about attachments to this document.  First,

14   Attachment A, and this is a list or schedule of individuals

15   likely to have information according to Venetian.  And on here,

16   Venetian responded with Kinsale underwriting personnel.  Do you

17   know why underwriting personnel was identified?

18   A    I would -- I can only guess, but I would think since

19   this is a coverage issue, they would understand the coverage

20   criteria.

21   Q    Okay.  Well, does Venetian intend to argue in this

22   case, either on summary judgment or at trial, that the

23   policy -- that the ultimate policy that was issued somehow

24   conflicts with what was purchased or what was supposed to be

25   underwritten?

1          A     I don't know what that argument will be, but I know

2     that Mr. Maughan was seeking what he calls full coverage, which

3     is generally -- as I understand, what he was looking for an all

4     risk type policy.  He went through an agent to do it and he was

5     expecting full coverage, including coverages for injuries

6     related to fires.

7          Q     So, okay.  So Mr. Maughan intended to purchase an all

8     risk policy?

9          A      That is at the wording he uses.  I interpret full

10    coverage as an all risk policy, and I'm hoping I'm using the

11    right language from that as well, but everything is covered

12    unless it's expressly not cover.  But he was absolutely seeking

13    coverage for fire.

14         Q     Okay.  So I guess to help get some clarity about what

15    an all risk policy is according to you or what your

16    understanding of it is, it's a policy that provides coverage

17    for basically everything, all risks.  Is it your understanding

18    that type policy is a first-party policy or a third-party

19    policy?

20         A     I'm not an expert on insurance law, but I would say a

21    first-party --

22         Q     Okay.

23         A     -- meaning we are the insures in all risks, all

24    liabilities are covered unless they're expressly excluded.

25         Q      Okay.  And an all risk policy typically -- is it your

Page 24

1    understanding that it would provide coverage -- or sorry, let

2    me -- let's strike that.

3            Is your understanding that an all risk policy

4    provides a duty to defend under some circumstances of the

5    insured?

6       A    You're getting beyond my knowledge of insurance on

7    that.  Honestly, there is a duty to defend component of all

8    insurance policies, but I cannot testify about all the details

9    of what that entails and what it doesn't.

10      Q    Okay.  So I guess to ask in another way, so Maughan

11   did not intend to purchase the commercial liability policy; is

12   that accurate?

13           MR. MOFFET:  Objection to the form of the question.

14           THE WITNESS:  He wanted coverage for the liability,

15       yes.  When I say he wanted coverage for fire, I'm not

16       talking about a casualty type policy.  I'm talking about

17       is liability policy for his company as a landlord and fire

18       is a risk for every landlord.  He wanted coverage for it.

19   BY MR. CORDOVA

20      Q    Understood, but all risk policies are different than

21   commercial general liability policies, correct?

22      A    That may be.  You probably know more than I about

23   that.  Insurance is not my area of the law.  I could very

24   easily have used the wrong term.

25      Q    Okay.  So when you said that he intended to purchase

Page 25

1    the policy like an all risk policy, was that based on any

2    conversation with him or is that just something you glean?

3        A    It's based on my conversation with him, which was

4    attorney-client.  I can't get into the details, but the gist is

5    he wanted coverage for this -- incidents like this.

6        Q    Okay.  Is his position -- well, sorry, let me strike

7    that.

8             Does he blame the insurance agent for obtaining the

9    wrong type of policy for him?

10       A    He has not blamed the insurance agent, no.  He told

11   the insurance agent that he needed a policy for the apartments.

12   He did not get into great detail, there were not a lot of

13   questions asked, but fire is one of a primary concern for a

14   landlord.

15       Q    All right.  Do you know if Mr. Maughan reviewed the

16   quote that was issued before the ultimate policy was issued?

17       A    I do not.  His recollection of the events was not the

18   strongest.  He said he talked -- he spoke with the agent, told

19   him what he needed, and a policy was issued and he assumed it

20   had the coverage he required.

21       Q    So I guess the same is probably true for the binder,

22   correct?  Did Mr. Maughan ever review a binder before the

23   policy was issued?

24       A    He does not recall any details other than asking for

25   the policy, getting the policy.

Page 26

1        Q    Okay.  And I guess regarding Attachment A, turning

2    back to the initial disclosures, it also identifies Kamara

3    Wheeler as someone likely to have more information.

4        A    Yes.

5        Q    Other than her role in starting the fire, was there

6    anything else Venetian thought she had some information about?

7        A    No, just information regarding the fire.

8        Q    Okay.  Next, I'm going to turn to Attachment D in the

9    disclosures.  Give me one moment.  Okay.  So this attachment,

10   it mentions that Venetian is reserving the right to assert a

11   claim for attorney's fees and costs as it relates to Kinsale's

12   coverage action, which is this case.  Do you understand -- or

13   do you know what the basis for their potential fee claim is?

14       A    Rule 11, Rule 54, I think there is an inherent power

15   in federal courts to assess attorney's fees, and I've seen case

16   law that says 91514 of Georgia Frivolous Litigation Code also

17   applies at least as far as 11th Circuit is concerned in

18   federal court.  And the basis is that we don't think that your

19   exclusions apply by their plain language.

20       Q    Does Venetian contend that the exclusions are

21   ambiguous in any way?

22       A    Yes, we do think they are ambiguous.

23       Q    Okay.  Are you aware that Venetian did not raise that

24   as an affirmative defense in its answer?

25       A    I don't think ambiguity in a contract is an

1    affirmative defense.  I think if it is ambiguous and it is

2    construed against you and in our favor, it is not an

3    affirmative defense.  An affirmative defense is, otherwise I

4    would be liable, but for this.  I just think it's a defense.

5         Q    Okay.  So Venetian intends to argue ambiguity

6    potentially, but it doesn't believe that's technically

7    affirmative defense --

8         A    I think we are allowed to defend the case on the

9    basis that this exclusion doesn't apply by its language

10   construed against.  I understand that's the direction, subject

11   to what my attorneys do, of course.

12        Q    Okay.  And when you say this exclusion, which one are

13   you referring to exactly?

14        A    I think assault and battery is ambiguous.  I think

15   the pollution exclusion either does not apply on its face or is

16   written so broadly as to be ambiguous under the circumstances.

17   Do we have another one?  I think is what the maintenance and

18   the -- what's the third exclusion?  Can someone tell me?

19        Q    There's also a failure to maintain exclusions.  Is

20   that what you're referring to?

21        A    Yes, although I don't necessarily think it's

22   ambiguous.  I think on its face, it doesn't apply.  To the

23   extent may be ambiguous, we certainly reserve the right to

24   argue that.

25        Q    That exclusion, to paraphrase, says that there's no

Page 28

1    coverage for failing to (indiscernible) a safe condition.

2    Earlier, I believe you testified that the underlying complaint

3    or lawsuit is over Venetian failing to provide fire suppression

4    equipment, fire detection equipment.  Wouldn't that be a

5    situation where Venetian is sued for failing to maintain a

6    premises with a safe condition?

7            MR. MOFFET:  Objection to form.

8            THE WITNESS:  I do not think so.  I'm going to refer

9        back to the July 27, '21 letter that my counsel wrote.

10       There's nothing that I say right here is going to contract

11       that or waive any of the arguments that are in there.  It

12       may speak better than I can here, but essentially, the way

13       your policy is drafted, you cannot simply put a period

14       after the word safe.  It has to be safe, untenantable,

15       uninhabitable, unsanitary.  All of the things on your list

16       have to be proven to exist at the same time.  And the only

17       thing that y'all are riding on is safe.

18           So if you simply say that if the premises isn't safe,

19       we don't have to provide coverage, then you basically

20       don't have a policy.  And that's where an ambiguity could

21       be read into it.  In other words, anytime somebody trips

22       over a crack in the sidewalk, the premise is unsafe, but

23       that is by golly what we have insurance for.  So we do not

24       think that that exclusion would apply and, yeah, we do

25       think that that could be ambiguity in the language.

```
1    BY MR. CORDOVA

2        Q    Okay.  Would you say that there is ambiguity in any

3    specific term or the way that Kinsale is trying to read it as a

4    whole?

5             MR. MOFFET:  Objection to the form of the question.

6             THE WITNESS:  Again, I think on its face it doesn't

7         apply because you haven't shown that the property met all

8         of those criteria, but it could be any -- whatever the

9         court deems unambiguous, to be ambiguous.  It's really up

10        to the court.  You know, it's suffice to say that we think

11        it is potentially ambiguous.

12   BY MR. CORDOVA

13       Q    Okay.

14       A    But we also say that, on its face, it does not apply

15   to these circumstances.

16       Q    Okay.  And I'll turn back to the exclusion in some

17   more detail later.  I guess you also alluded to ambiguity in

18   the assault and battery and I just wanted to touch on that real

19   quick.  What's the basis for that argument?

20       A    If you read down at the bottom of that exclusion,

21   there is a statement that it is viewed from the standpoint of

22   the insured.  And in the context in the entire exclusion, to

23   me, it's a little confusing as to what that statement means.

24   To me, I read it as if the assault was not intended by Venetian

25   Hills, the exclusion does not apply.  The court may deem that
```

Page 30

```
1    ambiguous.  I think is a little be ambiguous because I had to
2    scratch my hand reading that, and ultimately, it's up to the
3    judge to decide if it's ambiguous and, if it is, what it means.
4    But from our standpoint, it means exclusion doesn't apply
5    unless we intended the injury.
6         Q    Okay.  And is that the only ambiguity or potential
7    ambiguity that Venetian seeks to that exclusion?
8              MR. MOFFET:  Objection to the form of the question.
9              THE WITNESS:  It's the only one that comes to mind at
10             the moment.  It may have -- there may have been some other
11             ambiguity addressed in that letter in July, but we're
12             certainly reserving the right to test the entire exclusion
13             for any ambiguity that comes up.
14   BY MR. CORDOVA
15        Q    You did -- you did review that July letter that
16   you're referring to, right, before today's deposition?
17        A    Yes.
18        Q    Okay.  So was there another basis for ambiguity
19   mentioned in that letter?
20        A    I don't recall.  It was like 11 pages long.  It was
21   extremely detailed.  I don't recall if there was another
22   ambiguity.  I'd have to see the letter to know.
23        Q    I think you mentioned Rule 11 earlier.  What's your
24   understanding of what that rule says?
25        A    Rule 11, it says that if a party brings an action
```

Page 31

1    that is without good-faith basis and law fact, you may end up

2    having to pay attorney's fees.  It's essentially, in my

3    opinion, very similar to Georgia's frivolous litigation statue,

4    although I think it's a little broader perhaps is the better

5    word for it.

6         Q    That rule also talks about the denials of factual

7    contention and whether they're warranted based on the evidence.

8    Wouldn't that apply to Venetian's answer in this case?

9              MR. MOFFET:  Objection to the form of the question.

10             I think you're also beyond your topics in the 30(b)(6)

11             deposition notice of this.  I'm just not seeing what

12             you're referring to.

13             MR. CORDOVA:  Well, it relates to Venetian's answer

14             and what the basis for it was.

15             MR. MOFFET:  I think you're asking, if I'm correct,

16             conclusions that are not specifically incorporated into

17             your denominated topics.  You're asking for legal

18             conclusions and opinions at this point.

19             MR. CORDOVA:  No, I'm trying to understand what the

20             factual basis for saying there is no information or

21             insufficient information about Wheeler when in the

22             underlying lawsuit they are arguing that she's the only

23             one responsible for the fire.  I'm trying to understand

24             what that position is.

25             MR. MOFFET:  Well, my position is you're arguing with

Page 32

1          the witness at this point.

2                    MR. CORDOVA:  Okay.  So are you going to instruct the

3          witness not to answer?

4                    MR. MOFFET:  No, I'm going to follow the rules and

5          the standing order of the Court that I've stated my

6          objections.

7                    MR. CORDOVA:  Okay.

8     BY MR. CORDOVA

9          Q    So, Mr. McClung, I think we discussed in the

10    underlying lawsuit Venetian's position was that Wheeler was

11    responsible for the fire and the ultimate death of Mr. Hughes;

12    is that correct?

13         A    Yes.

14         Q    So considering Venetian's answer in this case, you

15    know, it occurred after Venetian took that position in the

16    underlying lawsuit.  Isn't that inconsistent with its response

17    in this case that there's insufficient information regarding

18    Wheeler's involvement with the fire?

19                   MR. MOFFET:  Objection to the form.

20                   THE WITNESS:  To the extent the answer is

21         inconsistent, but I don't believe that the position in

22         this case has been she did not set the fire.  The answer

23         was just drafted by our attorney where we frequently

24         denied things to join the issue, but I don't believe we've

25         taken that position in underlying litigation and any other

1    pleading.

2    BY MR. CORDOVA

3        Q    I'm sorry, you don't think Venetian took the position

4    that Wheeler started the fire in the underlying lawsuit?  Is

5    that what you're --

6        A    No, I think in -- in this proceeding in district

7    court, I believe the position all along has been, other than

8    what you see in the answer, that Wheeler started the fire.  We

9    didn't start it.  We're not liable, and we should have coverage

10   under the policy.

11       Q    Okay.  So the only place that Venetian doesn't take

12   that position is in its answer to the complaint that was filed?

13       A    I think that's the only pleading that I have seen to

14   which that position is different.

15       Q    Okay.  And was -- I think you testified earlier that

16   that was basically legal strategy to say insufficient

17   information.  Was there a factual basis for that statement?

18       A    I think I testified that our attorneys drafted the

19   answer.  That when I draft answers, generally we frequently

20   deny things we end up not denying simply because we want to

21   join the issue, we want to make sure that we are able, since

22   that's a pleading, we are able to go back and assert defenses.

23   And if we admit and waive the defenses, it can be too late to

24   do.  So it's precautionary when I do these kinds of answers.

25            So I'm basically speculating about what was in my

Page 34

```
1    attorneys mind and I probably shouldn't be doing that, but that
2    was a response drafted by our attorneys and filed on our
3    behalf.  I don't think that position has been repeated in other
4    pleas.
5         Q    Okay.  But I guess just to harp on it one more time,
6    there was no evidentiary basis, necessarily, for saying
7    insufficient knowledge and response to Allegations 9 and 11 in
8    the answer in this case, correct?
9              MR. MOFFET:  Objection to the form of the question,
10        foundation, attorney-client privilege.
11   BY MR. CORDOVA
12        Q    I'm asking about facts.  I'm not asking what you
13   discussed with your counsel or what you guys think the legal
14   position is.  Was there in evidentiary basis for the responses
15   in Paragraph 9 and 11 in the answer?
16             MR. MOFFET:  Subject to prior testimony given, same
17        objection.
18             MR. CORDOVA:  Are you instructing your witness not to
19        answer?
20             THE WITNESS:  Not that I have anything new to add.
21   BY MR. CORDOVA
22        Q    Well, I suppose a yes or no would suffice for me.  Is
23   there any evidentiary basis for your responses to 9 or 11?
24             MR. MOFFET:  Objection to the form of the question
25        again, asked and answered.
```

Page 35

1          THE WITNESS:  All I can say is Paragraph 9 has a

2      legal conclusion in it.  We're not going to simply admit

3      it.  The answer was given the way it was given, and that's

4      all I can really say about it.

5  BY MR. CORDOVA

6      Q    Okay.  Give me one moment here.  All right.  I'm

7  going to turn now to the policy that we were talking about in

8  this case and the subject of this case.  Do you have a copy of

9  the policy in front of you?

10     A    I don't have a copy in front of me, of the entire

11  policy, no.

12     Q    Okay.  So you want me to share my screen?

13     A    Yes, please.

14     Q    Okay.  Give me one moment to do that?

15          MR. MOFFET:  While we do that, why don't we take

16      maybe five minutes if that's okay with you.

17          MR. CORDOVA:  We can take ten.  I'm going to go grab

18      some water and use the restroom.

19          MR. MOFFET:  Okay.  Good, thank you.

20          THE VIDEOGRAPHER:  The time is 1:11 p.m.  We are off

21      the record.

22                         (BREAK TAKEN)

23          THE VIDEOGRAPHER:  The time is 1:25.  We're back on

24      the record.

25          MR. CORDOVA:  Okay, thank you.

Page 36

1    BY MR. CORDOVA

2        Q    So just before we adjourned for a moment, I was going

3    to get into the policy.  I'm going to have that marked as

4    Exhibit 6.  Mr. McClung, I think you mentioned that you didn't

5    have a copy of that; is that correct?

6        (Plaintiff's Exhibit No. 6 marked for identification.)

7        A    Correct.

8        Q    Okay.  So I'll share my screen now.  Do you see the

9    policy?

10       A    I do.

11       Q    Okay.  And that policy number is 0100040031-0, right?

12       A    Yes.

13       Q    Perfect.  Your understanding is that that's the

14   policy at issue in this case, right?

15       A    It looks like it from that page.

16       Q    Turn to the first exclusion we're dealing with in

17   this case.  That's going to be the assault and battery

18   exclusion.  Do you see that on your screen?

19       A    I do.

20       Q    Okay.  So I guess generally before we get into the

21   exclusion specifically, you mentioned earlier that Mr. Maughan

22   wasn't happy with the policy he ultimately received from

23   Kinsale; is that accurate?

24       A    Well, he didn't know there was a problem until

25   Kinsale denied coverage.  I think he was satisfied with it

                                                        Page 37

1    because he thought he would have the coverage.

2        Q    Okay.  So did he think that the policy wouldn't have

3    exclusions?

4            MR. MOFFET:  Objection to the form of the question,

5        foundation.

6            THE WITNESS:  I don't know the answer to that

7        question.

8    BY MR. CORDOVA

9        Q    Does Venetian think the policy wouldn't have

10   exclusions?

11           MR. MOFFET:  Same objection, form and foundation.

12           THE WITNESS:  I can't say either.  That isn't

13       something that I discussed.  All I know is that Venetian's

14       position is they thought they had insurance to cover

15       injuries that were sustained in a fire.

16   BY MR. CORDOVA

17       Q    Was Venetian aware that the policy had an assault and

18   battery exclusion?

19       A    It's in the policy, that's all I can say.

20       Q    What -- what is your understanding of what this

21   exclusion precludes coverage?

22           MR. MOFFET:  Objection to the form of the question,

23       foundation.

24           THE WITNESS:  I think by its language, it excludes

25       coverage when some -- when one person assaults another.

Page 38

1          Typically you see these in the sexual assault cases in

2          apartment complexes, shootings in apartment complexes

3          where one person injures another one by a direct assault

4          or direct battery.

5     BY MR. CORDOVA

6          Q    Okay.  So do you think it would apply or bar coverage

7     for arson?

8               MR. MOFFET:  Objection to the form of the question,

9          foundation.

10              THE WITNESS:  I'm not a coverage lawyer, but I don't

11         think any normal person reading this exclusion would think

12         arson -- would think that they were -- that if one person

13         is in a room and they're injured by smoke inhalation or

14         fire that was started in another room, that that could

15         conceivably be an assault and battery.

16    BY MR. CORDOVA

17         Q    But you do think it would apply if Venetian was sued

18    for a shooting, per se, correct?

19         A    It depends on the facts.  I don't -- I don't know.

20    I've read the case law where people -- where apartment

21    complexes are liable for shooting and assaults and batteries,

22    but it is always one person attacking another.  I've never seen

23    an incident where -- instance where an arson or a fire was

24    considered to be an assault or a battery.

25         Q    Okay.  So do you think this exclusion would bar

Page 39

1    coverage if someone is injured from a stray bullet or --

2              MR. MOFFET:  Object to the form.

3              MR. HINSON:  Object to the form.

4              MR. MOFFET:  Form, foundation.  I think you're well

5         beyond your areas of inquiry.  You're asking hypothetical

6         questions at this point.

7              MR. CORDOVA:  I'm trying to understand the

8         distinction between arson and a shooting.

9              MR. MOFFET:  Well, that's not --

10             MR. CORDOVA:  Clarifying his position.

11             MR. MOFFET:  That's not part of your topical areas

12        for deposition.  That would be my objection.

13   BY MR. CORDOVA

14        Q    Okay.  Mr. McClung, if you could please clarify how

15   would a stray bullet, for example, be distinguishable from

16   injuries sustained from arson?

17             MR. MOFFET:  Same objection.

18             MR. HINSON:  Join.

19             THE WITNESS:  I don't know if I can answer that.  I

20        mean, I can tell you that, in this case, smoke got

21        apparently through a closed door at some point and

22        Mr. Hughes was injured and killed.  That is not the same

23        thing as a shooting or a stray bullet that one person

24        fires.  It's too attenuated.  It is not what anyone would

25        consider, in my opinion, assault and battery.

Page 40

```
 1   BY MR. CORDOVA
 2       Q    Okay.  And that's because you think that it's to
 3   attenuating to the injuries; is that accurate?
 4       A    I don't know -- I don't know how --
 5            MR. MOFFET:  Same objection as to the form of the
 6       question.
 7            THE WITNESS:  I don't know how assault and battery is
 8       defined for purposes of insurance.  I know that insurance
 9       law -- I know enough to be dangerous here, insurance law
10       and criminal law do not define them in the same way, as I
11       understand it.  I just can't answer that question.  I just
12       think that in the plain language that a reasonable insured
13       reading this policy would never consider that it excluded
14       smoke inhalation from a fire no matter how it started.
15   BY MR. CORDOVA
16       Q    Okay.  When you say you think, you also mean
17   Venetian, correct?
18       A    Venetian Hills, yes, you're right.
19       Q    Okay.  I think you mentioned earlier that the
20   exclusion might apply or not, depending on whether the insured
21   expected or intended something; is that correct?
22       A    Yes.
23       Q    Okay.  Do you see that language that you're referring
24   to on the screen?
25       A    Yeah, down at the bottom.
```

1       Q    Okay.  So that language says bodily injury or

2   property damage expected or intended from the standpoint of the

3   insured.  That's what you're referring to, right?

4       A    Yes.

5       Q    Okay.  If you read the paragraph preceding that

6   language, doesn't that essentially say that there is another

7   exclusion that's being modified, the assault and battery

8   somehow -- the assault and battery exclusion somehow depends on

9   whether an insured expected or intended something?

10          MR. MOFFET:  Objection to the form of the question

11       again, foundation, beyond the topics denominated in the

12       30(b)(6), argumentative.

13          MR. HINSON:  Object -- I'm sorry, I apologize.  The

14       -- Andy, could you point me to the language we're talking

15       about?  I'm sorry, I just wasn't clear on what two

16       provisions you guys are talking about, and for the record

17       I want it to be clear.  Thank you.

18   BY MR. CORDOVA

19       Q    So Mr. McClung, I'm highlighting the language we're

20   talking about.  Is the highlighted language what you were

21   referring to earlier and what we're talking about right now?

22       A    I was referring to the last section that begins with

23   the quoted term bodily injury, and my testimony was that the

24   way that I read that creates an ambiguity.  I don't understand

25   what that means other than the exclusion only applies when the

Page 42

```
 1    bodily injury or property damage is expected or intended from
 2    the standpoint of the insured.  That's the way I read it.  If
 3    you contend it doesn't say that, I think it's ambiguous and
 4    that was all -- that was the point of my testimony and that's
 5    essentially all I have to say about that, I think.
 6        Q    Okay.  So my -- so to summarize, I believe you
 7    testified that, based on the plain language, the exclusion
 8    would not apply; is that accurate?
 9        A    I'm sorry, repeat that.
10        Q    Your position is that the exclusion doesn't apply
11    based on it's plain language, correct?
12        A    Yes, I don't think that this involves an assault and
13    battery.
14        Q    Okay.  Well, the exclusion is a little broader than
15    that.  I guess I just want to clarify.  Like, you don't think,
16    based on its plain language, the exclusion will apply?
17            MR. MOFFET:  Objection to the form of the question,
18        asked and answered.
19            THE WITNESS:  That's one position, yes.  An
20        alternative position is it's ambiguous and it should be
21        construed against Kinsale.
22    BY MR. CORDOVA
23        Q    Okay.  And the -- your position regarding ambiguity,
24    you believe the ambiguity is based on the last sentence, bodily
25    injury or property damage expected from the standpoint of the
```

1    insured; is that accurate?

2            MR. HINSON:  Object to the form of the question,

3        misstates his prior testimony.

4            THE WITNESS:  I think that is an ambiguity, but I'm

5        not saying that can be the only ambiguity.  I'm not the

6        one that gets to decide it anyway.  The court reads it and

7        decides whether it's ambiguous.  But we reserve the right,

8        obviously, to raise any ambiguity and just because I don't

9        point it out -- I'm not an insurance lawyer, I might miss

10       something -- we're still going to assert every ambiguity

11       that may appear in the document.  That's just the one that

12       I see when I read it.

13   BY MR. CORDOVA

14       Q    Okay.  Does the Venetian currently believe there is

15   another basis for ambiguity?

16       A    I'd have to rely on my lawyers for that.

17       Q    Okay.  I wanted to go ahead and turn to the failure

18   to maintain exclusion.  Give me one moment here.  Do you see

19   the failure to maintain exclusion on your screen?

20       A    Yes.

21       Q    Okay.  I think you -- so your position is that this

22   doesn't -- this exclusion doesn't apply, correct?

23       A    Correct.

24       Q    Okay.  And I think earlier, based on your testimony,

25   you said that you thought that one of the problems with the

Page 44

1    exclusion, at least, is that there is a list of stuff and it

2    cannot be read in isolation so only our coverage for failing to

3    maintain a premises of safe condition.  My question is:  If the

4    exclusion only said any failure to maintain any premises in a

5    safe condition, do you think the exclusion would apply in that

6    case?

7              MR. MOFFET:  Objection to the form of the question,

8         foundation, hypothetical, beyond the topical -- topics,

9         rather, set forth in the 30(b)(6).

10             THE WITNESS:  I think if you put a period after safe

11        you wouldn't have a policy anymore.  I do not think it

12        would be read that way by a court because every instance

13        in which liability occurs for injuries could be said that

14        the premises are unsafe.  So your exception there, your

15        exclusion would essentially consume the entire policy.

16             So no, I don't think it would ever be read that way

17        by a court, number one, and, you know, yes, our position

18        is that, since you use the conjunctive the word and

19        instead of or, that Kinsale has to prove each and every

20        one of those elements in order for the exclusion to apply.

21    BY MR. CORDOVA

22        Q    Does the policy will provide coverage for property

23    damage?

24        A    Say that again.

25        Q    You mentioned that the policy provides coverage for

Page 45

1    injuries, presumably referring to bodily injury, correct?

2         A    Yes.

3         Q    Okay.  It also provides coverage for property damage,

4    right?

5         A    Frankly, I haven't looked at it for that reason, but

6    I'm assuming it does, yes.

7         Q    Okay.  So do you think that there -- could there be

8    coverage for property damage when the insured is not sued for

9    anything related to safety of the property?

10        A    I'm sure that it could, but this exclusion is for

11   bodily injuries.  It says property damage, personal advertising

12   injury which is a personal injury basically.  This is liability

13   the way I read it, so if you put a period after safe, you have

14   no liability coverage whatsoever.

15        Q    But there could be situations where property damage

16   is alleged and it has nothing to do with safety of the

17   property, correct?

18             MR. MOFFET:  Objection again, form, foundation,

19        hypothetical, beyond the scope of the denominated terms of

20        your notice, argumentative.

21             THE WITNESS:  I just -- if you put in a period after

22        safe, I think that drastically reduces the insurance.

23        Whether or not it could potentially cover a piece of

24        property damage, I don't know.

25             MR. CORDOVA:  I guess go off the record for a moment.

```
                                                      Page 46

  1        I think Mr. McClung --

  2             THE VIDEOGRAPHER:  I'm sorry, Counsel, did you say

  3        you wanted to go off the record?

  4             MR. CORDOVA:  Yes, please.

  5             THE VIDEOGRAPHER:  Just give me a moment to read us

  6        off.  The time is 1:39.  We're off the record.

  7                         (BREAK TAKEN)

  8             THE VIDEOGRAPHER:  The time is 1:53.  We're back on

  9        the record.

 10   BY MR. CORDOVA

 11        Q    Okay.  So I'm going to go ahead and turn to what

 12   we're going to mark as Exhibit 7, and this is a letter dated

 13   July 27th, 2021.  Give me a moment to share my screen.  Well,

 14   I guess, Mr. McClung, do you have that letter in front of you?

 15   The one from Gray, Rust, Moffett and Brieske to

 16   (indiscernible)?

 17        (Plaintiff's Exhibit No. 7 marked for identification.)

 18        A    Yes.

 19        Q    So like I said, we're going to go ahead and mark that

 20   as Exhibit 7.  I just really wanted to ask:  Do you know if

 21   Venetian's position regarding any of the arguments in this

 22   letter has changed?

 23        A    I don't believe they have, but I can't speak for my

 24   counsel.  I haven't been notified if it's changed.

 25        Q    Okay.  And you reviewed this letter before today's
```

Page 47

1     deposition?

2          A     Yes.

3          Q     Okay.  Do you know if there are any additional

4     arguments or defenses against Kinsale other than what's, you

5     know, summarized in this letter?

6          A     I believe it states the position.

7          Q     Okay.

8          A     But it's, again, ten or 11 pages.  I mean, ultimately

9     I'm relying on our counsel to assert all of the defenses that

10    are applicable, so if there's something in there or something

11    that is not addressed, we're certainly not waiving it.  I'm

12    just not aware of it.

13         Q     Okay.  Understood.  Well, I appreciate you attending

14    today and answering my questions.  That's actually all I have

15    for now.

16         A     All right.  Thank you.

17               MR. MOFFET:  Anybody else have any questions?

18               MR. HINSON:  I apologize, I need to take a quick -- I

19         need to take a minute and look at my notes here, Matt, and

20         see if I've got anything or not.

21               MR. MOFFET:  Sure.

22               MR. HINSON:  Andy -- I wasn't prepared for one a

23         question, Andy.  Sorry, you got me on that one so I'll

24         have to look.

25               MR. CORDOVA:  No worries.

Page 48

```
 1            MR. HINSON:  So let's -- y'all have another granola
 2       bar.  Give me about five minutes.  Thank you.
 3            THE VIDEOGRAPHER:  The time is 1:55.  We're off the
 4       record.
 5                          (BREAK TAKEN)
 6            THE VIDEOGRAPHER:  The time is 2:38.  We're back on
 7       the record.
 8  BY MR. CORDOVA
 9       Q    Mr. McClung, I think earlier you mentioned Maughan as
10  having information regarding the policy and the coverage it
11  provides.  Besides you and Mr. Maughan, would there be anyone
12  else within Venetian that has information regarding Venetian's
13  position of coverage?
14       A    No, not on anything respecting coverage of the
15  policy.
16       Q    Okay.  Other individuals within the company would
17  only have knowledge regarding liability and potential liability
18  in the underlying lawsuit, correct?
19       A    Art Robinson would have knowledge about the events,
20  although I don't think he was the property manager.  He was
21  living there at the time.  I believe there was another property
22  manager who has long since left.  I can't remember her name at
23  the moment that was the manager at the time, but those are the
24  only people.  They would only have knowledge of the events
25  themselves.  They would have no knowledge of anything
```

1    pertaining to a policy.

2         Q    Okay.  Well, thank you again.  That's all I have for

3    now.

4         A    Thank you.

5                          CROSS-EXAMINATION

6    BY MR. HINSON

7         Q    Sir, let me just ask a couple of follow-up questions

8    to what we were talking about earlier.  First I want to go back

9    to our conversation a little bit about Mr. Maughan's taking out

10   the liability policy and his understanding of the coverage that

11   you was buying.  First of all, was Mr. Maughan the one who was

12   dealing with Kinsale in taking out this policy?

13        A    Yeah, he did it through an agent.  I forget the name

14   of the agent but he's, I think, identified in on the dec page

15   or on the policy, first or second page of the policy.  He

16   basically sent a fax to his agent telling him he needed

17   coverage for the apartments, and they placed it with Kinsale.

18   He does not recall -- and it's been some time, but he does not

19   recall the details of what he asked for.  He has searched his

20   records and cannot find the records of that fax.  But it's an

21   apartment complex, people smoke in bed, people cook inside

22   these units, you know, you can have electrical fire, you can

23   have lightning strikes.

24             He wanted coverage that would protect him in the

25   event of a fire and not just property damage coverage.

Page 50

1    Somebody dies in the fire, he was expecting to have coverage

2    for it.

3         Q    And back to the policy that we're talking about in

4    this case.  Correct me if I'm wrong, but I believe it's only a

5    liability policy.  In other words, it's not for -- we got

6    confused on first-party and third-party before, but what we're

7    talking about is a liability policy.  Would you agree with

8    that?

9         A    Yes, I'm embarrassed to say I did not look at the

10   policy to even determine if there was a property damage

11   component to it.  I looked at it solely from the standpoint of

12   liability, but yeah, I mean I'm talking about liability when

13   I'm discussing that policy.

14        Q    Understated.  Okay.  Let me -- I need to share my

15   screen for just a second, so let me figure out how to do that

16   real quick.  Hold on folks.

17             MR. HINSON:  Ms. Court Reporter, am I able to do

18        that, share my screen?

19             THE VIDEOGRAPHER:  Yes, Counsel, I've enabled it.

20             MR. HINSON:  Thank you.  I'm trying not to show y'all

21        football scores.  Hang on.

22             THE WITNESS:  We can do that, SEC?

23             MR. HINSON:  All right.  I think we're almost there.

24        Let's see here, share.

25   BY MR. HINSON

Page 51

1      Q    Sir, hopefully what you can see is a document at the
2    top that says work order detail.  Can you see that?
3      A    I see that, yes.
4      Q    All right.  First of all, let me -- I didn't do your
5    notice but is this even a document that you've seen before,
6    sir, in your preparation for your deposition or otherwise?
7      A    Doesn't look familiar.  If you would scroll down.  It
8    does not look familiar to me.
9      Q    Okay.  So the document, just so we're -- I don't know
10   if we're Bates stamped or not, but we'll mark it as Defendant's
11   Exhibit D1.  Work order detail with Overland Solutions, Kinsale
12   in general -- excuse me, Kinsale Insurance Company General
13   Casualty.  Sir, as I scroll down this document, you will see
14   the insured name is Venetian Hills Apartments and Mr. Maughan
15   is on here.  This is -- I'll show you another document, sir,
16   but the point of this is apparently Kinsale Insurance, as part
17   of writing this policy, had requested an investigation of the
18   property itself.  First of all, are you aware one way or the
19   other whether that was done?
20       (Defendant's Exhibit No. D1 marked for identification.)
21      A    I don't have any knowledge of it.  I didn't inquire
22   into that, so no, I have no idea if it was actually done.
23      Q    Okay.  There is a work order detail where apparently
24   Kinsale had requested any investigation be done with special
25   attention to walking surfaces, slip and fall hazards, and fire

1    alarm/life safety and that language would be on Page 2 of the

2    two-page document.  Let me show you another document here.  All

3    right.  I'm sharing my screen now.  Hopefully in front of you

4    is a document that I'll mark as Defendant's Exhibit D2 to this

5    deposition, which I believe is a 15-page document, but it says

6    core survey at the top, Overland Surveys, do you see that?

7         (Defendant's Exhibit No. D2 marked for identification.)

8         A    I do.

9         Q    All right.  Sir, I'll just ask you some questions.

10   First of all, have you -- is this a document you recall seeing

11   before?

12        A    I've never seen that before.

13        Q    All right.  And on the first page of this document,

14   it indicates that this core survey was prepared by Kinsale

15   Insurance Company, the insured being Venetian Hills, and the

16   person interviewed being Arthur Robinson.  Can you tell us who

17   Arthur Robinson is, please?

18        A    He is presently the property manager and has been for

19   a number of years, with the exception of a small break that I

20   discussed earlier.

21        Q    The date of -- go ahead.

22        A    I believe he was property manager in 2016 when this

23   was done.

24        Q    All right.  That was my next question.  Looks like

25   the survey was done on the year of 2016.  Was Mr. Robinson the

1    manager in 2016?

2         A    I believe he was.

3         Q    And staying on the first page of this document, the

4    survey document, special attention, underwriters questions.  It

5    says here, special attention, answers, walking services were in

6    acceptable condition.  I'm just reading the document now.

7    There were some minor disruptions on the parking lot surfaces.

8    All buildings and apartment units are equipped with smoke

9    detectors and fire extinguishers were noted in common areas.

10   Do you see where I read that, sir?

11        A    I do, yes.

12        Q    All right.  As Venetian Hills' representative, do you

13   have any information about Kinsale's inspection of the property

14   at the time the policy was being written and taken out?

15        A    I do not.  I did not make that inquiry.  I don't

16   think that was on the list, so I didn't -- I didn't address it

17   with Mr. Maughan or Mr. Robinson.

18        Q    When Mr. Maughan was taking out the policy and

19   Venetian Hills more specifically, this liability policy, what

20   would be Venetian Hills' position about its expectations

21   whether liability for incidents involving the walking surfaces

22   or parking lot surfaces, such as slip and falls, would be

23   covered?

24        A    We would expect that they would have been covered.

25        Q    And as far as liability policy, I think you testified

1    a little bit about this already.  As far as liability insurance

2    policies that Venetian Hills was taking out with Kinsale, what

3    were the expectations of Venetian Hills with respect to

4    coverage for liability that would relate to the equipment of

5    the property with smoke detectors and fire extinguishers?

6         A     We would expect coverage related to firers.  I mean,

7    smoke detectors, fire extinguishers were in the buildings.

8    It's just -- I'm not sure I'm addressing your question or not,

9    but we would have expected coverage for any injuries that

10   occurred during a fire because fires are common, not every day

11   occurrences but common occurrences in apartments.

12        Q    If this inspection and interview was done with

13   Mr. Robinson in 2016, do you have any reason to dispute that

14   Venetian Hills would have been aware of Kinsale doing this

15   inspection of fire safety equipment at the property before

16   taking out the policy?

17        A    Certainly would have been aware.  I don't believe

18   they could have had access to the property without some

19   Venetian Hills employee being present, whether it was Mr.

20   Maughan or -- apparently it was Mr. Robinson.

21        Q    Mr.-- sir, I'll just represent to you, Mr. Maughan

22   testified in his deposition in the underlying case that records

23   relating to the use of smoke detectors in the buildings in the

24   apartment complex were maintained.  Are you generally familiar

25   with that, sir?

Page 55

1      A    Yes.

2      Q    All right.  Mr. Maughan testified in his deposition

3   that the purpose of maintaining those records was for the

4   insurance company.  Do you have any information about that,

5   sir?

6      A    I know that he kept those records, you know, all the

7   reasons why he kept it, I don't have specific knowledge about

8   that.  I've seen the records and I was just aware that they

9   maintained pretty meticulous records on the inspections.

10     Q    Sir, do you have any information about what

11  disclosures were made to Venetian Hills about the type of

12  insurance company that Kinsale Insurance is?

13     A    I'm not sure I follow the question.

14     Q    Well, do you have any information about what

15  disclosures were made to Kinsale Insurance about -- excuse me,

16  or made to Venetian Hills about Kinsale Insurance being a

17  surplus line carrier?

18     A    I do not have any information on that.

19     Q    All right.  And do you know, just generally, what a

20  surplus line insurer is as opposed to other types of insurers?

21     A    I cannot explain it to you right now.

22     Q    Okay.

23     A    Someone told me once, but I completely forgot the

24  explanation.

25     Q    Okay.  All right.  Well, you're here today on behalf

Page 56

1    of Venetian Hills, but if I recall your testimony, you were not

2    involved as general counsel for Venetian Hills until after the

3    fire would have taken place at the property; is that right?

4        A    Yes.

5        Q    Okay.  Sir, I'm sure you've looked at the complaint.

6    Did you review -- and we're not going to go through it, but did

7    you review the policy that was attached to the complaint, the

8    insurance policy?

9        A    I reviewed the policy a number of times, not -- I'm

10   sure I glossed over the one attached to the complaint, but I

11   have reviewed the policy.

12       Q    All right.  And the -- and this is probably been the

13   subject of a request already in the case, but I just want to

14   confirm.  To the best of the information you have now, sir, the

15   copy of the insurance policy that's attached to the complaint,

16   is that the same copy of the insurance policy that would have

17   been provided to Venetian Hills?

18       A    I believe it is, yeah.

19       Q    Just a second.  I think we're almost done.  Sir, were

20   you involved in any of the other claims that were associated

21   with the fire at Venetian Hills Apartments other than the one

22   dealing with the death of George Hughes?

23       A    Other lawsuits?  Claims?  What?

24       Q    Yes, sir.

25       A    When I first began representing Venetian Hills and

Page 57

1    Mr. Maughan, they were either in the process of settling one

2    suit or they had just settled that suit, one of the tenants who

3    claimed to have been injured running from the building.

4    Venetian Hills was served through the registered agent,

5    registered agent did not forward that.  It went into default,

6    the judge would not open the default, so it was essentially

7    settled.  I came in right at the point of settlement.  I wasn't

8    involved in the settlement, but that's when I began

9    representing them.  And that's the only other claim that I had

10   any knowledge of.

11        Q    Was Kinsale Insurance involved, in any way, in that

12   claim you described or any other claims to your knowledge?

13        A    My best recollection was that coverage was denied

14   because the claim was not recorded and it went into default.

15   That's just my recollection.  Again, I didn't have direct

16   involvement with them.

17        Q    To your knowledge, did any of the communications by

18   Kinsale Insurance concerning that other claim raised the issues

19   of assault and battery exclusion, pollution exclusion, or

20   failure to maintain exclusion?

21        A    I'm not aware that it did.  I think that was first

22   raised with this.  I could be mistaken, but I'm not aware that

23   they raised those exclusions.

24        Q    That's all I have right now.  Thank you.

25        A    Thank you.

Page 58

1           MR. MOFFET:  Anything else?

2           MR. CORDOVA:  Nope, nothing for me.

3           MR. MOFFET:  Okay.  Very good.  Thank you, gentlemen.

4           THE VIDEOGRAPHER:  Can we go off the record real

5      quick?

6           MR. CORDOVA:  Yeah, we're off the record.

7           THE VIDEOGRAPHER:  This concludes the videotaped

8      deposition.  The time is 2:57 p.m.  We're off the record.

9                (Deposition concluded at 2:57 p.m.)

10    (Pursuant to Rule 30(e) of the Federal Rules of Civil Procedure

11     and/or O.C.G.A. 9-11-30(e), signature of the witness has been

12                          reserved.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 59

1    Job #: 6108135

2                    REPORTER DISCLOSURES

3    The following representations and disclosures are made in

4    compliance with Georgia Law, more specifically:

5    • Article 10(B) of the Rules and Regulations of the Board of

6    Court Reporting (disclosure forms)

7    • OCGA 9-11-28(c) (disqualification of reporter for financial

8    interest)

9    • OCGA 15-14-37(a) and (b) (prohibitions against contracts

10   except on a case-by-case basis)

11   • I am a certified court reporter in the State of Georgia.

12   • I am a subcontractor for Veritext Legal Solutions.

13   • I have been assigned to make a complete and accurate record

14   of these proceedings.

15   • I have no relationship of interest in the matter on which I

16   am about to report, which would disqualify me from making a

17   verbatim record or maintaining my obligation of impartiality

18   in compliance with the Code of Professional Ethics.

19   • I have no direct contract with any party in this action and

20   my compensation is determined solely by the terms of my

21   subcontractor agreement.

22                    FIRM DISCLOSURES

23   • Veritext Legal Solutions was contacted to provide reporting

24   services by the noticing or taking attorney in this matter.

25   • There is no agreement in place that is prohibited by OCGA

1   15-14-37(a) and (b). Any case-specific discounts are

2   automatically applied to all parties, at such time as any party

3   receives a discount.

4   • Transcripts: The transcript of this proceeding as produced

5   will be a true, correct, and complete record of the colloquies,

6   questions and answers as submitted by the certified

7   court reporter.

8   • Exhibits: No changes will be made to the exhibits as

9   submitted by the reporter, attorneys or witnesses.

10   • Password-Protected Access: Transcripts and exhibits relating

11   to this proceeding will be uploaded to a password-protected

12   repository, to which all ordering parties will have

13   access.

14

15   _____          _____

16   Signature                                    Date

17

18

19

20

21

22

23

24

25

Page 61

1                          CERTIFICATE

2

3    STATE OF GEORGIA:

4    COUNTY OF FULTON:

5         I hereby certify that the foregoing transcript was taken

6    down, as stated in the caption, and the colloquies, questions

7    and answers were reduced to typewriting under my direction;

8    that the  transcript is a true and correct record of the

9    evidence given upon said proceeding.

10        I further certify that I am not a relative or employee or

11   attorney of any party, nor am I financially interested in the

12   outcome of this action.

13        I have no relationship of interest in this matter which

14   would disqualify me from maintaining my obligation of

15   impartiality in compliance with the Code of Professional

16   Ethics.

17        I have no direct contract with any party in this action

18   and my compensation is based solely on the terms of my

19   subcontractor agreement.

20        Nothing in the arrangements made for this proceeding

21   impacts my absolute commitment to serve all parties as an

22   impartial officer of the court.

23                         This the 22nd day of September, 2023.

24

25

Page 62

1    TO: MATTHEW G. MOFFETT, ESQ.

2    Re: Signature of Deponent 30(b)(6) James B. McClung

3    Date Errata due back at our offices: 30 days

4

5    Greetings:

6    The deponent has reserved the right to read and sign.
     Please have the deponent review the attached PDF

7    transcript, noting any changes or corrections on the
     attached PDF Errata.  The deponent may fill out the

8    Errata electronically or print and fill out manually.

9

     Once the Errata is signed by the deponent and notarized,

10   please mail it to the offices of Veritext (below).

11

     When the signed Errata is returned to us, we will seal

12   and forward to the taking attorney to file with the
     original transcript.  We will also send copies of the

13   Errata to all ordering parties.

14

     If the signed Errata is not returned within the time

15   above, the original transcript may be filed with the
     court without the signature of the deponent.

16

17

18   Please send completed Errata to:

19   Veritext Production Facility

20   20 Mansell Court

21   Suite 300

22   Roswell, GA 30076

23   (770) 343-9696

24   CS-SOUTHEAST@VERITEXT.COM

25

Page 63

1    ERRATA for ASSIGNMENT #6108135

2    I, the undersigned, do hereby certify that I have read the
     transcript of my testimony, and that

3

4    ____ There are no changes noted.

5    ____ The following changes are noted:

6

     Pursuant to Rule 30(7)(e) of the Federal Rules of Civil

7    Procedure and/or OCGA 9-11-30(e), any changes in form or
     substance which you desire to make to your testimony shall

8    be entered upon the deposition with a statement of the
     reasons given for making them.  To assist you in making any

9    such corrections, please use the form below.  If additional
     pages are necessary, please furnish same and attach.

10

11   Page _____ Line _____ Change _____

12   _____

13   Reason for change _____

14   Page _____ Line _____ Change _____

15   _____

16   Reason for change _____

17   Page _____ Line _____ Change _____

18   _____

19   Reason for change _____

20   Page _____ Line _____ Change _____

21   _____

22   Reason for change _____

23   Page _____ Line _____ Change _____

24   _____

25   Reason for change _____

Page 64

1    Page _____ Line _____ Change _____

2    _____

3    Reason for change _____

4    Page _____ Line _____ Change _____

5    _____

6    Reason for change _____

7    Page _____ Line _____ Change _____

8    _____

9    Reason for change _____

10   Page _____ Line _____ Change _____

11   _____

12   Reason for change _____

13   Page _____ Line _____ Change _____

14   _____

15   Reason for change _____

16   Page _____ Line _____ Change _____

17   _____

18   Reason for change _____

19

20                        _____

                              DEPONENT'S SIGNATURE

21

     Sworn to and subscribed before me this ____ day of

22   _____, _____.

23


     _____

24   NOTARY PUBLIC

25   My Commission Expires:_____

## &

**&**   2:4,15

## 0

**0100040031-0**
  36:11
**03214**   1:9

## 1

**1**   4:5 10:22 11:1
  11:8,23
**10**   2:20 15:22
  59:5
**11**   4:5 11:18
  19:16,18 20:4
  26:14 30:20,23
  30:25 34:7,15
  34:23 47:8
**11th**   26:17
**12:23**   1:20 5:2
**15**   4:7 52:5
**15-14-37**   59:9
  60:1
**15th**   6:5 17:11
**16**   4:8
**17**   4:9
**1700**   2:16
**1720**   2:5
**1728**   6:18
**17th**   2:5
**18**   1:19
**18th**   5:2
**1996**   9:15,16
**1:11**   35:20
**1:21**   1:9

**1:25**   35:23
**1:39**   46:6
**1:53**   46:8
**1:55**   48:3

## 2

**2**   4:6,19 15:3,6
  52:1
**20**   62:20
**2000**   9:14
**2016**   52:22,25
  53:1 54:13
**2017**   6:5 17:11
**2021**   46:13
**2023**   1:19 5:2
  61:23
**21**   28:9
**22**   4:10
**22nd**   61:23
**25556**   61:25
**27**   28:9
**271**   2:5
**27th**   46:13
**2:38**   48:6
**2:57**   58:8,9

## 3

**3**   4:8 16:2,5
**30**   1:14 5:3 9:18
  31:10 41:12
  44:9 58:10 62:2
  62:3 63:6
**300**   62:21
**30019**   6:20
**30076**   62:22

**30305**   2:10
**30326**   2:16
**30363**   2:6
**343-9696**   62:23
**3490**   2:9
**36**   4:12

## 4

**4**   4:9 16:8 17:5,7
**404.593.0020**
  2:11
**404.870.1030**
  2:17
**404.870.7390**
  2:17
**46**   4:13
**49**   3:9

## 5

**5**   3:6 4:10 22:4,6
**51**   4:16
**52**   4:17
**54**   26:14

## 6

**6**   1:14 4:11 5:3
  9:18 31:10 36:4
  36:6 41:12 44:9
  62:2
**6108135**   59:1
  63:1
**640**   2:10

## 7

**7**   4:13,19 46:12
  46:17,20 63:6
**7/27/21**   4:13

**7199**   1:25
**770**   62:23

## 8

**80s**   9:13
**888.501.9536**
  2:11

## 9

**9**   15:13 16:23
  17:10,14,19,22
  18:25 34:7,15
  34:23 35:1
**9-11-28**   59:7
**9-11-30**   58:11
  63:7
**90**   10:16
**90s**   9:14
**91514**   26:16
**950**   2:15

## a

**able**   7:5 22:9
  33:21,22 50:17
**above**   62:15
**absolute**   61:21
**absolutely**
  23:12
**acceptable**   53:6
**access**   54:18
  60:10,13
**accident**   8:18
**accurate**   11:6
  19:22 21:16
  24:12 36:23
  40:3 42:8 43:1
  59:13

**action** 1:7 13:22
  13:23 16:19
  26:12 30:25
  59:19 61:12,17
**active** 10:4
**actual** 18:11
**actually** 13:16
  16:25 18:17
  19:17 47:14
  51:22
**add** 34:20
**additional** 47:3
  63:9
**address** 6:17,18
  53:16
**addressed** 30:11
  47:11
**addressing** 54:8
**adjourned** 36:2
**administrator**
  1:9
**admission** 14:14
  15:2,9
**admissions** 4:7
**admit** 17:18,23
  20:6 33:23 35:2
**advertising**
  45:11
**affirmative**
  26:24 27:1,3,3,7
**agent** 23:4 25:8
  25:10,11,18
  49:13,14,16
  57:4,5

**ago** 9:23
**agree** 19:23
  50:7
**agreement**
  59:21,25 61:19
**ahead** 10:22
  11:22 12:22
  15:3 16:2 17:4
  22:3 43:17
  46:11,19 52:21
**alarm** 52:1
**allegation** 16:23
  16:23,25 17:1
  17:10,10,13,17
  19:17,18 20:6
**allegations** 12:2
  17:19,21 18:9
  34:7
**alleged** 45:16
**alleges** 19:18
**allowed** 27:8
**alluded** 29:17
**alluding** 10:11
**alternative**
  42:20
**amand** 2:15
**ambiguity**
  26:25 27:5
  28:20,25 29:2
  29:17 30:6,7,11
  30:13,18,22
  41:24 42:23,24
  43:4,5,8,10,15
**ambiguous**
  26:21,22 27:1

  27:14,16,22,23
  29:9,11 30:1,1,3
  42:3,20 43:7
**amended** 4:5
  9:18 10:23
  11:20
**andres** 2:4 5:8
  5:22
**andres.cordova**
  2:6
**andy** 41:14
  47:22,23
**answer** 4:9 6:11
  8:17 12:22
  16:19 17:5,13
  18:21,25 19:12
  20:3,4 26:24
  31:8,13 32:3,14
  32:20,22 33:8
  33:12,19 34:8
  34:15,19 35:3
  37:6 39:19
  40:11
**answered** 34:25
  42:18
**answering**
  18:14 47:14
**answers** 18:9
  33:19,24 53:5
  60:6 61:7
**anybody** 47:17
**anymore** 44:11
**anytime** 28:21
**anyway** 8:25
  21:8 43:6

**apartment** 38:2
  38:2,20 49:21
  53:8 54:24
**apartments** 1:8
  1:15 2:13 5:4
  17:12 25:11
  49:17 51:14
  54:11 56:21
**apologize** 15:22
  41:13 47:18
**apparently**
  39:21 51:16,23
  54:20
**appear** 43:11
**appearances** 2:1
**appeared** 1:22
**applicable**
  47:10
**applied** 60:2
**applies** 26:17
  41:25
**apply** 26:19
  27:9,15,22
  28:24 29:7,14
  29:25 30:4 31:8
  38:6,17 40:20
  42:8,10,16
  43:22 44:5,20
**appreciate**
  47:13
**approximately**
  5:2
**area** 24:23
**areas** 9:20 39:5
  39:11 53:9

argue  14:2
22:21 27:5,24
arguing  13:14
13:21 31:22,25
argument  23:1
29:19
argumentative
41:12 45:20
arguments
13:24 28:11
46:21 47:4
arrangements
61:20
arrested  18:21
arson  16:11
17:11 18:22
38:7,12,23 39:8
39:16
art  8:15 48:19
arthur  52:16,17
article  2:20 59:5
ashley  1:25
asked  25:13
34:25 42:18
49:19
asking  6:14
25:24 31:15,17
34:12,12 39:5
assault  27:14
29:18,24 36:17
37:17 38:1,3,15
38:24 39:25
40:7 41:7,8
42:12 57:19

assaulted  21:21
assaults  37:25
38:21
assert  26:10
33:22 43:10
47:9
asserts  17:14
assess  26:15
assigned  59:13
assignment  63:1
assist  63:8
assistant  9:13
assisted  14:7,10
14:13
assisting  14:8
associated
56:20
assume  6:12
assumed  25:19
assuming  45:6
atlanta  1:3 2:6
2:10,16 7:7
attach  63:9
attached  56:7
56:10,15 62:6,7
attachment
22:14 26:1,8,9
attachments
22:13
attacking  38:22
attendees  1:22
attending  47:13
attention  51:25
53:4,5

attenuated
39:24
attenuating
40:3
attorney  7:18
7:25 9:1,13
12:17 13:19
18:20 25:4
32:23 34:10
59:24 61:11
62:12
attorney's  26:11
26:15 31:2
attorneys  18:24
19:2 27:11
33:18 34:1,2
60:9
authorized  1:9
automatically
60:2
autumn  6:19
aware  13:6,8
19:11 20:21
21:8 26:23
37:17 47:12
51:18 54:14,17
55:8 57:21,22

**b**

b  1:14,17 2:20
3:3 5:3,16 6:18
9:18 31:10
41:12 44:9 59:5
59:9 60:1 62:2,2
back  8:9 26:2
28:9 29:16

33:22 35:23
46:8 48:6 49:8
50:3 62:3
bar  38:6,25 48:2
based  18:17
19:10,22 20:18
25:1,3 31:7 42:7
42:11,16,24
43:24 61:18
basically  5:23
7:15 23:17
28:19 33:16,25
45:12 49:16
basis  26:13,18
27:9 29:19
30:18 31:1,14
31:20 33:17
34:6,14,23
43:15 59:10
bates  51:10
batteries  38:21
battery  27:14
29:18 36:17
37:18 38:4,15
38:24 39:25
40:7 41:7,8
42:13 57:19
bed  49:21
began  56:25
57:8
begins  41:22
behalf  2:3,7,13
34:3 55:25
believe  7:22 8:8
8:10,21,23

10:16 12:9,10
12:19,23 13:2
21:5,6,22,24
27:6 28:2 32:21
32:24 33:7 42:6
42:24 43:14
46:23 47:6
48:21 50:4 52:5
52:22 53:2
54:17 56:18
**best** 6:11 56:14
57:13
**better** 28:12
31:4
**beyond** 24:6
31:10 39:5
41:11 44:8
45:19
**binder** 25:21,22
**binding** 7:1
**bit** 10:13,20
49:9 54:1
**blame** 25:8
**blamed** 25:10
**board** 2:21 59:5
**bodily** 41:1,23
42:1,24 45:1,11
**bottom** 29:20
40:25
**brad** 5:5
**break** 35:22
46:7 48:5 52:19
**brieske** 2:15
46:15

**brings** 30:25
**broader** 31:4
42:14
**broadly** 27:16
**brought** 14:24
**building** 12:4,5
57:3
**buildings** 53:8
54:7,23
**bullet** 39:1,15
39:23
**buying** 49:11

**c**

**c** 6:19 59:7
**calls** 23:2
**campo** 7:19
**capacity** 8:11
**caption** 61:6
**career** 9:9
**carrier** 55:17
**case** 5:23 6:1,3
8:22 14:14
16:19 17:5 20:4
22:3,22 26:12
26:15 27:8 31:8
32:14,17,22
34:8 35:8,8
36:14,17 38:20
39:20 44:6 50:4
54:22 56:13
59:10,10 60:1
**cases** 38:1
**casualty** 24:16
51:13

**cause** 13:17
16:10
**caused** 14:1
15:15
**ccr** 1:25
**certain** 17:17
**certainly** 12:24
27:23 30:12
47:11 54:17
**certainty** 19:15
**certificate** 61:1
**certified** 59:11
60:6
**certify** 61:5,10
63:2
**chance** 10:24
**change** 63:11,13
63:14,16,17,19
63:20,22,23,25
64:1,3,4,6,7,9
64:10,12,13,15
64:16,18
**changed** 15:17
16:12,16 46:22
46:24
**changes** 60:8
62:7 63:4,5,7
**charged** 13:8
18:22
**check** 8:9
**circuit** 26:17
**circumstances**
24:4 27:16
29:15

**civil** 1:7 58:10
63:6
**claim** 26:11,13
57:9,12,14,18
**claimed** 21:2
57:3
**claims** 56:20,23
57:12
**clarification**
6:13
**clarify** 39:14
42:15
**clarifying** 39:10
**clarity** 23:14
**clear** 6:9 9:17
41:15,17
**client** 12:17
13:19 20:20
25:4 34:10
**closed** 39:21
**clyde** 2:4
**clydeco.us** 2:6
**code** 26:16
59:18 61:15
**colloquies** 60:5
61:6
**comes** 30:9,13
**commercial**
4:11 24:11,21
**commission**
64:25
**commitment**
61:21
**committed**
17:11

**common** 53:9
54:10,11
**communicated**
14:16
**communicatio...**
10:17 57:17
**company** 1:5
5:23 7:1,24 8:12
9:24 10:1,2 12:8
24:17 48:16
51:12 52:15
55:4,12
**compensation**
59:20 61:18
**complaint** 4:5
10:23 11:20
12:2 16:24 17:3
17:14,20 18:14
20:15 28:2
33:12 56:5,7,10
56:15
**complete** 59:13
60:5
**completed**
62:18
**completely**
55:23
**complex** 49:21
54:24
**complexes** 38:2
38:2,21
**compliance** 59:4
59:18 61:15
**complied** 14:10

**component** 24:7
50:11
**conceivably**
38:15
**concentrate** 9:5
**concentrating**
9:15
**concern** 25:13
**concerned**
26:17
**concerning**
57:18
**concluded** 58:9
**concludes** 58:7
**conclusion**
17:15 35:2
**conclusions**
31:16,18
**condition** 28:1,6
44:3,5 53:6
**conduits** 8:19
**confirm** 56:14
**conflicts** 22:24
**confused** 6:14
50:6
**confusing** 29:23
**conjunctive**
44:18
**consider** 39:25
40:13
**considered**
38:24
**considering**
32:14

**construed** 17:16
27:2,10 42:21
**consume** 44:15
**contact** 8:12,15
10:6
**contacted** 59:23
**contained** 17:19
**contend** 15:20
26:20 42:3
**contention** 31:7
**context** 29:22
**contract** 26:25
28:10 59:19
61:17
**contracts** 59:9
**conversation**
25:2,3 49:9
**cook** 49:21
**copies** 62:12
**copy** 11:15
14:22 16:25
19:11 22:4 35:8
35:10 36:5
56:15,16
**cordova** 2:4 3:6
5:7,8,20,22 11:7
11:14,17 12:14
12:18 13:3,20
16:17 18:13
19:1 20:2,16
22:1 24:19 29:1
29:12 30:14
31:13,19 32:2,7
32:8 33:2 34:11
34:18,21 35:5

35:17,25 36:1
37:8,16 38:5,16
39:7,10,13 40:1
40:15 41:18
42:22 43:13
44:21 45:25
46:4,10 47:25
48:8 58:2,6
**core** 4:17 52:6
52:14
**corporate** 5:4
6:22 9:6
**correct** 6:23 7:1
15:10,15 18:14
20:7 21:16,19
24:21 25:22
31:15 32:12
34:8 36:5,7
38:18 40:17,21
42:11 43:22,23
45:1,17 48:18
50:4 60:5 61:8
**corrections** 62:7
63:9
**costs** 26:11
**counsel** 2:1,22
4:19 5:5,7,24
8:1,4,11 20:14
28:9 34:13 46:2
46:24 47:9
50:19 56:2
**count** 9:3
**county** 61:4
**couple** 10:13
15:12 22:12

49:7
**course** 27:11
**court** 1:1 2:21
  2:22 5:13 26:18
  29:9,10,25 32:5
  33:7 43:6 44:12
  44:17 50:17
  59:6,11 60:7
  61:22 62:15,20
**courts** 26:15
**cover** 23:12
  37:14 45:23
**coverage** 8:18
  16:19 22:19,19
  23:2,5,10,13,16
  24:1,14,15,18
  25:5,20 26:12
  28:1,19 33:9
  36:25 37:1,21
  37:25 38:6,10
  39:1 44:2,22,25
  45:3,8,14 48:10
  48:13,14 49:10
  49:17,24,25
  50:1 54:4,6,9
  57:13
**coverages** 23:5
**covered** 23:11
  23:24 53:23,24
**crack** 28:22
**creates** 41:24
**criminal** 40:10
**criteria** 22:20
  29:8

**cross** 3:5 5:19
  16:24 17:4 49:5
**cs** 62:24
**current** 6:18
**currently** 43:14
**cv** 1:9
**cvr** 1:25

**d**

**d** 6:19 26:8
**d1** 4:16 51:11
  51:20
**d2** 4:17 52:4,7
**dacula** 6:19
**damage** 13:17
  41:2 42:1,25
  44:23 45:3,8,11
  45:15,24 49:25
  50:10
**damages** 15:14
  16:10
**dangerous** 40:9
**darrell** 2:8,12
  5:11
**date** 52:21
  60:16 62:3
**dated** 46:12
**dates** 8:9
**day** 54:10 61:23
  64:21
**days** 62:3
**dealing** 36:16
  49:12 56:22
**dealt** 9:24
**death** 14:1
  15:20 16:11

32:11 56:22
**dec** 49:14
**decide** 30:3 43:6
**decides** 43:7
**declarations**
  4:12
**deem** 29:25
**deems** 29:9
**default** 57:5,6
  57:14
**defend** 24:4,7
  27:8
**defendant** 2:7
  4:15 5:10,12
**defendant's**
  51:10,20 52:4,7
**defendants** 1:10
  2:13 17:17
**defender** 9:12
**defending** 13:23
**defense** 9:14
  26:24 27:1,3,3,4
  27:7
**defenses** 4:9
  33:22,23 47:4,9
**define** 40:10
**defined** 40:8
**del** 7:19
**denials** 31:6
**denied** 32:24
  36:25 57:13
**denominated**
  31:17 41:11
  45:19

**deny** 17:19,23
  20:6 33:20
**denying** 33:20
**depending**
  40:20
**depends** 38:19
  41:8
**deponent** 62:2,6
  62:6,7,9,15
**deponent's**
  64:20
**deposed** 7:11
  9:2
**deposition** 1:14
  5:3,24 7:14,16
  9:18 20:19 21:1
  30:16 31:11
  39:12 47:1 51:6
  52:5 54:22 55:2
  58:8,9 63:8
**described** 57:12
**description** 4:3
**designated** 6:22
**desire** 63:7
**detail** 4:16
  10:20 25:12
  29:17 51:2,11
  51:23
**detailed** 30:21
**details** 24:8 25:4
  25:24 49:19
**detection** 12:7
  28:4
**detectors** 12:4
  13:1 53:9 54:5,7

54:23

**deteriorated** 10:13

**determine** 50:10

**determined** 59:20

**dies** 50:1

**different** 24:20 33:14

**direct** 3:8 38:3,4 57:15 59:19 61:17

**direction** 27:10 61:7

**directly** 14:16

**disclosure** 2:21 59:6

**disclosures** 4:10 22:3,10 26:2,9 55:11,15 59:2,3 59:22

**discount** 60:3

**discounts** 60:1

**discovery** 8:17 8:20 14:6,10

**discuss** 19:13

**discussed** 5:23 19:14 32:9 34:13 37:13 52:20

**discussing** 10:19 50:13

**discussion** 13:5

**discussions** 20:20

**dispute** 54:13

**disqualification** 59:7

**disqualify** 59:16 61:14

**disruptions** 53:7

**distinction** 39:8

**distinguishable** 39:15

**district** 1:1,2 9:13 33:6

**diversion** 21:22

**division** 1:3

**document** 11:18 11:24 15:5 22:13 43:11 51:1,5,9,13,15 52:2,2,4,5,10,13 53:3,4,6

**documents** 7:15 8:20,22,24 14:8 14:9

**doing** 9:10 14:9 34:1 54:14

**door** 39:21

**draft** 18:20 19:12 20:15 33:19

**drafted** 14:7 28:13 32:23 33:18 34:2

**drafting** 14:5

**drastically** 45:22

**drive** 6:19

**due** 62:3

**duly** 5:17

**duty** 24:4,7

## e

**e** 2:6,12,18 19:8 58:10,11 63:6,7

**earlier** 28:2 30:23 33:15 36:21 40:19 41:21 43:24 48:9 49:8 52:20

**easier** 11:3

**easily** 24:24

**east** 2:15

**eastern** 5:2

**either** 8:18 17:18 22:22 27:15 37:12 57:1

**electrical** 49:22

**electronically** 62:8

**elements** 44:20

**ellis** 1:25

**embarrassed** 50:9

**employee** 54:19 61:10

**enabled** 50:19

**entails** 24:9

**entered** 18:23 63:8

**entire** 29:22 30:12 35:10

44:15

**equipment** 28:4 28:4 54:4,15

**equipped** 53:8

**errata** 62:3,7,8 62:9,11,13,14 62:18 63:1

**escape** 21:15

**escapes** 21:6

**esq** 62:1

**esquire** 2:4,8,14

**essentially** 10:17 17:22 28:12 31:2 41:6 42:5 44:15 57:6

**estate** 1:9 9:5,15

**ethics** 59:18 61:16

**event** 49:25

**events** 25:17 48:19,24

**evidence** 20:21 31:7 61:9

**evidentiary** 34:6,14,23

**exact** 10:15

**exactly** 20:17 27:13

**examination** 3:5 3:8 5:19 49:5

**examinations** 3:1

**example** 15:13 39:15

except  21:4
  59:10
exception  44:14
  52:19
excluded  23:24
  40:13
excludes  37:24
exclusion  27:9
  27:12,15,18,25
  28:24 29:16,20
  29:22,25 30:4,7
  30:12 36:16,18
  36:21 37:18,21
  38:11,25 40:20
  41:7,8,25 42:7
  42:10,14,16
  43:18,19,22
  44:1,4,5,15,20
  45:10 57:19,19
  57:20
exclusions
  26:19,20 27:19
  37:3,10 57:23
excuse  51:12
  55:15
exhibit  4:3,5,6,8
  4:9,10,11,13,16
  4:17,19 7:16
  10:22 11:1,5,8
  11:16,23 15:3,6
  16:2,5 17:5,7
  22:4,6 36:4,6
  46:12,17,20
  51:11,20 52:4,7

exhibits  4:1
  60:8,8,10
exist  28:16
expect  53:24
  54:6
expectations
  53:20 54:3
expected  40:21
  41:2,9 42:1,25
  54:9
expecting  23:5
  50:1
expert  23:20
expires  64:25
explain  55:21
explanation
  21:6 55:24
expressly  23:12
  23:24
extent  17:15
  27:23 32:20
extinguisher
  12:6
extinguishers
  53:9 54:5,7
extremely  30:21

f

face  27:15,22
  29:6,14
facility  62:19
fact  18:17 31:1
facts  14:3 34:12
  38:19
factual  17:17,21
  18:9 31:6,20

  33:17
failing  28:1,3,5
  44:2
failure  27:19
  43:17,19 44:4
  57:20
fair  17:25
faith  31:1
fall  51:25
falls  53:22
familiar  11:24
  51:7,8 54:24
far  26:17 53:25
  54:1
favor  27:2
fax  2:11,17
  10:18 49:16,20
federal  9:12
  26:15,18 58:10
  63:6
fee  26:13
fees  26:11,15
  31:2
ferry  2:15
figure  50:15
file  1:8 18:8
  62:12
filed  8:9 19:7
  33:12 34:2
  62:15
files  14:10
fill  62:7,8
financial  59:7
financially
  61:11

find  49:20
fire  6:4,5,6 8:4,5
  12:6,6 13:9,11
  13:13,15,22,25
  15:19 17:11
  18:4 19:18 20:1
  20:14,18,20,22
  20:23,24,25
  21:4,15,18,20
  21:25 23:13
  24:15,17 25:13
  26:5,7 28:3,4
  31:23 32:11,18
  32:22 33:4,8
  37:15 38:14,23
  40:14 49:22,25
  50:1 51:25 53:9
  54:5,7,10,15
  56:3,21
firers  54:6
fires  23:6 39:24
  54:10
firm  7:18 19:11
  59:22
first  5:17 10:21
  15:9 16:1 17:9
  22:13 23:18,21
  36:16 49:8,11
  49:15 50:6 51:4
  51:18 52:10,13
  53:3 56:25
  57:21
five  8:1 35:16
  48:2

fleshed 18:11
folks 50:16
follow 7:5 32:4
  49:7 55:13
following 59:3
  63:5
follows 5:18
football 50:21
foregoing 61:5
forget 10:15
  49:13
forgot 55:23
form 12:11,16
  13:18 16:14
  18:5,19 19:24
  20:12 21:23
  24:13 28:7 29:5
  30:8 31:9 32:19
  34:9,24 37:4,11
  37:22 38:8 39:2
  39:3,4 40:5
  41:10 42:17
  43:2 44:7 45:18
  63:7,9
forms 59:6
forth 44:9
forward 57:5
  62:12
foundation
  13:19 18:6
  34:10 37:5,11
  37:23 38:9 39:4
  41:11 44:8
  45:18

frankly 45:5
frequently
  32:23 33:19
frivolous 26:16
  31:3
front 10:24 11:2
  16:20 22:5 35:9
  35:10 46:14
  52:3
full 23:2,5,9
fully 18:10
fulton 61:4
furnish 63:9
further 61:10

**g**

g 2:14 62:1
ga 62:22
gain 5:25
gathering 14:7
general 4:11 8:1
  8:4,11 24:21
  51:12,12 56:2
generally 6:2
  7:3 11:23 12:19
  12:19 16:7 23:3
  33:19 36:20
  54:24 55:19
gentlemen 58:3
george 1:9
  56:22
georgia 1:2 2:6
  2:10,16,21 6:19
  26:16 59:4,11
  61:3

georgia's 31:3
gestures 6:8
getting 24:6
  25:25
gist 25:4
give 14:21 16:2
  16:18 22:8 26:9
  35:6,14 43:18
  46:5,13 48:2
given 21:7 34:16
  35:3,3 61:9 63:8
glean 25:2
glossed 56:10
go 10:22 11:22
  12:22 15:3 16:2
  17:4 22:3 33:22
  35:17 43:17
  45:25 46:3,11
  46:19 49:8
  52:21 56:6 58:4
going 8:2 10:19
  10:21 11:7,22
  13:24 14:2 15:2
  15:25 16:7 22:2
  22:3 26:8 28:8
  28:10 32:2,4
  35:2,7,17 36:2,3
  36:17 43:10
  46:11,12,19
  56:6
golly 28:23
good 5:21 31:1
  35:19 58:3
grab 35:17

granola 48:1
grantham 13:23
  14:1,7,15
gray 2:15 46:15
great 25:12
greetings 62:5
ground 6:7
grsmb.com 2:18
guess 9:17 15:21
  16:7,18,23
  19:16 22:18
  23:14 24:10
  25:21 26:1
  29:17 34:5
  36:20 42:15
  45:25 46:14
guys 34:13
  41:16

**h**

hamilton 2:9
hand 30:2
hang 50:21
happen 14:22
  21:9 22:4
happened 8:4,5
happy 36:22
harp 34:5
hazards 51:25
health 10:13
hear 10:16
hello 5:7
help 23:14
highlighted
  41:20

| highlighting | i | information | insufficient |
|---|---|---|---|
| 41:19 | **idea** 51:22 | 17:18 20:6 | 17:23 31:21 |
| **hills** 1:8,15 2:13 | **identification** | 22:15 26:3,6,7 | 32:17 33:16 |
| 5:4,9 6:2,23 7:1 | 11:1 15:6 16:5 | 31:20,21 32:17 | 34:7 |
| 7:4,4,23 8:12 | 17:7 22:6 36:6 | 33:17 48:10,12 | **insurance** 1:5 |
| 13:1,10,21 | 46:17 51:20 | 53:13 55:4,10 | 5:8,22 9:14 |
| 17:12 29:25 | 52:7 | 55:14,18 56:14 | 23:20 24:6,8,23 |
| 40:18 51:14 | **identified** 7:16 | **inhalation** | 25:8,10,11 |
| 52:15 53:12,19 | 22:17 49:14 | 38:13 40:14 | 28:23 37:14 |
| 53:20 54:2,3,14 | **identifies** 16:9 | **inherent** 26:14 | 40:8,8,9 43:9 |
| 54:19 55:11,16 | 26:2 | **initial** 4:10 22:2 | 45:22 51:12,16 |
| 56:1,2,17,21,25 | **identify** 5:5 | 22:9 26:2 | 52:15 54:1 55:4 |
| 57:4 | **impacts** 61:21 | **injured** 38:13 | 55:12,12,15,16 |
| **hinson** 2:8 3:9 | **impartial** 61:22 | 39:1,22 57:3 | 56:8,15,16 |
| 5:11,11 39:3,18 | **impartiality** | **injures** 38:3 | 57:11,18 |
| 41:13 43:2 | 59:17 61:15 | **injuries** 23:5 | **insured** 24:5 |
| 47:18,22 48:1 | **incident** 6:4,6 | 37:15 39:16 | 29:22 40:12,20 |
| 49:6 50:17,20 | 8:4 38:23 | 40:3 44:13 45:1 | 41:3,9 42:2 43:1 |
| 50:23,25 | **incidents** 25:5 | 45:11 54:9 | 45:8 51:14 |
| **hold** 50:16 | 53:21 | **injury** 30:5 41:1 | 52:15 |
| **honestly** 24:7 | **including** 23:5 | 41:23 42:1,25 | **insurer** 55:20 |
| **hopefully** 5:25 | **inconsistent** | 45:1,12,12 | **insurers** 55:20 |
| 51:1 52:3 | 18:2 20:10 | **inquire** 51:21 | **insures** 23:23 |
| **hoping** 23:10 | 32:16,21 | **inquiry** 9:21 | **intend** 22:21 |
| **hughes** 1:8,9 2:7 | **incorporated** | 39:5 53:15 | 24:11 |
| 4:15 5:11 6:1 | 31:16 | **inside** 49:21 | **intended** 23:7 |
| 8:6,21,24 14:1 | **index** 3:1 4:1 | **insight** 5:25 | 24:25 29:24 |
| 14:13 15:1 | **indicates** 52:14 | **inspection** | 30:5 40:21 41:2 |
| 19:19 32:11 | **indicating** 20:21 | 53:13 54:12,15 | 41:9 42:1 |
| 39:22 56:22 | **indiscernible** | **inspections** 55:9 | **intends** 27:5 |
| **hypothetical** | 28:1 46:16 | **instance** 38:23 | **intentionally** |
| 39:5 44:8 45:19 | **individual** 13:7 | 44:12 | 21:19 |
| | 21:15 | **instruct** 32:2 | **interest** 59:8,15 |
| | **individuals** | **instructing** | 61:13 |
| | 22:14 48:16 | 34:18 | |

**interested** 61:11
**interpret** 23:9
**interrogatories**
4:8 16:1,4
**interrogatory**
16:8
**interview** 54:12
**interviewed**
52:16
**investigation**
51:17,24
**involved** 8:16
8:22 14:5 56:2
56:20 57:8,11
**involvement**
32:18 57:16
**involves** 6:4
42:12
**involving** 6:4
53:21
**isolation** 44:2
**issue** 12:6 22:19
32:24 33:21
36:14
**issued** 22:23
25:16,16,19,23
**issues** 57:18
**item** 21:25

**j**

**james** 1:17 3:3
5:16 6:18 62:2
**job** 59:1
**john** 1:8 2:13
8:14 9:24 19:5

**join** 32:24 33:21
39:18
**judge** 30:3 57:6
**judgment** 22:22
**july** 28:9 30:11
30:15 46:13
**jump** 16:18

**k**

**kamara** 13:6,22
15:15 16:9
18:21 26:2
**kept** 55:6,7
**killed** 19:19
39:22
**kind** 15:21
**kinds** 33:24
**kinsale** 1:5 5:7
5:22 22:16 29:3
36:23,25 42:21
44:19 47:4
49:12,17 51:11
51:12,16,24
52:14 54:2,14
55:12,15,16
57:11,18
**kinsale's** 26:11
53:13
**know** 6:3,11,13
9:23 11:5 13:6
13:14,21,25
15:17 18:10
19:5,13 20:25
21:2,3,9,11,12
22:17 23:1,1
24:22 25:15

26:13 29:10
30:22 32:15
36:24 37:6,13
38:19 39:19
40:4,4,7,8,9
44:17 45:24
46:20 47:3,5
49:22 51:9 55:6
55:6,19
**knowledge** 14:4
15:19 17:18,23
20:6 24:6 34:7
48:17,19,24,25
51:21 55:7
57:10,12,17

**l**

**l** 6:19
**landlord** 24:17
24:18 25:14
**language** 23:11
26:19 27:9
28:25 37:24
40:12,23 41:1,6
41:14,19,20
42:7,11,16 52:1
**large** 8:24
**late** 9:13 33:23
**law** 9:4 23:20
24:23 26:16
31:1 38:20 40:9
40:9,10 59:4
**lawsuit** 6:1,4
8:6,7,18,19,21
8:21 10:20,23
11:20 13:4,11

13:15 14:6 15:2
15:10 16:1 18:3
18:12 19:23
20:11 28:3
31:22 32:10,16
33:4 48:18
**lawsuits** 56:23
**lawyer** 38:10
43:9
**lawyers** 9:7
43:16
**lead** 16:11
**left** 48:22
**legal** 17:14,17
18:8 31:17
33:16 34:13
35:2 59:12,23
**letter** 4:13 28:9
30:11,15,19,22
46:12,14,22,25
47:5
**liabilities** 23:24
**liability** 4:11
24:11,14,17,21
44:13 45:12,14
48:17,17 49:10
50:5,7,12,12
53:19,21,25
54:1,4
**liable** 27:4 33:9
38:21
**life** 52:1
**lightning** 49:23
**likely** 22:15
26:3

**[line - moffet]**

**line**  55:17,20
63:11,14,17,20
63:23 64:1,4,7
64:10,13,16
**list**  22:14 28:15
44:1 53:16
**lit**  21:20,24
**litigation**  9:6,6
9:16 26:16 31:3
32:25
**little**  10:13,20
10:20 29:23
30:1 31:4 42:14
49:9 54:1
**living**  48:21
**llc**  1:8,15 2:9,13
6:23 7:4 10:3,4
10:5
**llp**  2:4,15
**lmm**  1:9
**located**  7:6
**long**  30:20
48:22
**look**  14:19
15:11 20:3
47:19,24 50:9
51:7,8
**looked**  45:5
50:11 56:5
**looking**  23:3
**looks**  20:4 36:15
52:24
**lot**  13:5 25:12
53:7,22

**m**

**made**  11:10
12:2 17:21
18:10 55:11,15
55:16 59:3 60:8
61:20
**mail**  2:6,12,18
62:10
**mails**  19:8
**maintain**  27:19
28:5 43:18,19
44:3,4 57:20
**maintained**
54:24 55:9
**maintaining**
55:3 59:17
61:14
**maintenance**
27:17
**make**  13:24,25
33:21 53:15
59:13 63:7
**making**  6:8
59:16 63:8,8
**manager**  8:15
10:4 48:20,22
48:23 52:18,22
53:1
**mansell**  62:20
**manually**  62:8
**march**  6:5 17:11
**marie**  1:8 2:7
4:15 5:11 6:1
8:6

**mark**  10:22
11:6,23 15:3
16:2 22:3 46:12
46:19 51:10
52:4
**marked**  11:1,7
15:6 16:5 17:5,7
22:6 36:3,6
46:17 51:20
52:7
**matt**  5:9 47:19
**matter**  40:14
59:15,24 61:13
**matthew**  2:14
62:1
**maughan**  1:8
2:13 8:14 9:24
10:7 14:9,10,16
19:5,6,12 23:2,7
24:10 25:15,22
36:21 48:9,11
49:11 51:14
53:17,18 54:20
54:21 55:2 57:1
**maughan's**  49:9
**mcclung**  1:17
3:3 5:5,16,21
6:18 32:9 36:4
39:14 41:19
46:1,14 48:9
62:2
**mean**  39:20
40:16 47:8
50:12 54:6

**meaning**  23:23
**means**  6:25
29:23 30:3,4
41:25
**meet**  7:17
**member**  10:3
**mentioned**  9:23
21:16 30:19,23
36:4,21 40:19
44:25 48:9
**mentions**  26:10
**met**  19:13 29:7
**meticulous**  55:9
**mid**  9:14
**mind**  30:9 34:1
**minor**  53:7
**minute**  47:19
**minutes**  35:16
48:2
**misstates**  43:3
**mistaken**  57:22
**mmoffett**  2:18
**modified**  41:7
**moffet**  5:9 11:5
11:9,11 12:11
12:16,21,23
13:18 16:14
18:5,19 19:24
20:12 21:23
24:13 28:7 29:5
30:8 31:9,15,25
32:4,19 34:9,16
34:24 35:15,19
37:4,11,22 38:8
39:2,4,9,11,17

40:5 41:10
42:17 44:7
45:18 47:17,21
58:1,3
**moffett** 2:14,15
5:9 7:8,17,19
46:15 62:1
**moffett's** 7:7
19:11
**moment** 9:23
14:21 15:25
16:3,18 22:8
26:9 30:10 35:6
35:14 36:2
43:18 45:25
46:5,13 48:23
**morning** 5:21
**motions** 13:5
**moved** 9:13,14
**multiple** 8:13,14

**n**

**n** 1:25
**name** 5:8,22
6:16 21:6 48:22
49:13 51:14
**necessarily**
27:21 34:6
**necessary** 63:9
**need** 6:13 14:19
14:22 16:24
47:18,19 50:14
**needed** 25:11,19
49:16
**negligent** 12:3,9
12:10,13,20

13:16
**never** 21:11
38:22 40:13
52:12
**new** 34:20
**nine** 17:16
**nodding** 6:8
**nonparty** 13:6
**nope** 58:2
**normal** 38:11
**northeast** 2:15
**northern** 1:2
**northwest** 2:5
**notarized** 62:9
**notary** 64:24
**noted** 53:9 63:4
63:5
**notes** 47:19
**notice** 7:16 9:18
31:11 45:20
51:5
**noticing** 59:24
**notified** 46:24
**noting** 62:7
**number** 10:15
15:13,22 16:8
16:23 18:25
36:11 44:17
52:19 56:9

**o**

**o.c.g.a.** 58:11
**object** 21:23
39:2,3 41:13
43:2

**objection** 12:11
12:16,21 13:18
16:14 18:5,19
19:24 20:12
24:13 28:7 29:5
30:8 31:9 32:19
34:9,17,24 37:4
37:11,22 38:8
39:12,17 40:5
41:10 42:17
44:7 45:18
**objections** 32:6
**obligation** 59:17
61:14
**obtaining** 25:8
**obviously** 43:8
**occurred** 6:5
32:15 54:10
**occurrences**
54:11,11
**occurs** 44:13
**ocga** 59:7,9,25
63:7
**office** 2:11,17
7:7
**officer** 61:22
**offices** 62:3,10
**oh** 11:15
**okay** 5:21 6:15
6:21,25 7:3,8,11
7:13,17,20,23
8:3,11,16 9:1,4
9:8,11,17 10:3
10:19 11:9,14
11:18 12:1,15

13:4,10,14 14:4
14:12,17,21,21
15:1,8,12,21,24
16:3,7,18,22
17:3,9 18:2 19:2
19:5,13,16 20:3
20:9 21:13 22:2
22:8,9,12,21
23:7,14,22,25
24:10,25 25:6
26:1,8,9,23 27:2
27:12 29:2,13
29:16 30:6,18
32:2,7 33:11,15
34:5 35:6,12,14
35:16,19,25
36:8,11,20 37:2
38:6,25 39:14
40:2,16,19,23
41:1,5 42:6,14
42:23 43:14,17
43:21,24 45:3,7
46:11,25 47:3,7
47:13 48:16
49:2 50:14 51:9
51:23 55:22,25
56:5 58:3
**once** 55:23 62:9
**open** 57:6
**opinion** 31:3
39:25
**opinions** 31:18
**opposed** 55:20
**order** 4:16 32:5
44:20 51:2,11

51:23
**ordering** 60:12
62:13
**original** 62:12
62:15
**outcome** 61:12
**overland** 51:11
52:6
**own** 21:20
**owner** 10:2

**p**

**p.m.** 1:20 5:2
35:20 58:8,9
**paces** 2:15
**page** 3:5 4:3
11:18 36:15
49:14,15 52:1,2
52:5,13 53:3
63:11,14,17,20
63:23 64:1,4,7
64:10,13,16
**pages** 30:20
47:8 63:9
**paragraph**
16:23 17:10,14
17:16,19,22
18:18 19:16,18
20:4 34:15 35:1
41:5
**paraphrase**
27:25
**parking** 53:7,22
**part** 8:24 20:19
39:11 51:16

**parties** 60:2,12
61:21 62:13
**party** 23:18,18
23:21 30:25
50:6,6 59:19
60:2 61:11,17
**password** 60:10
60:11
**pay** 31:2
**pdf** 62:6,7
**pending** 8:7,8
8:10
**people** 8:13,14
38:20 48:24
49:21,21
**perfect** 9:23
11:22 36:13
**period** 28:13
44:10 45:13,21
**person** 37:25
38:3,11,12,22
39:23 52:16
**personal** 45:11
45:12
**personally** 8:22
19:4
**personnel** 22:16
22:17
**pertaining** 49:1
**physically** 7:5
**piece** 45:23
**piedmont** 2:9
**place** 33:11 56:3
59:25

**placed** 49:17
**plain** 26:19
40:12 42:7,11
42:16
**plaintiff** 1:6 2:3
4:4
**plaintiff's** 4:19
11:1 15:6,9,14
16:5,10 17:7,14
17:19 22:6 36:6
46:17
**plea** 18:23
**pleading** 20:15
33:1,13,22
**pleas** 34:4
**please** 5:5,13
6:7,16 17:12,13
19:17 35:13
39:14 46:4
52:17 62:6,10
62:18 63:9,9
**point** 31:18 32:1
39:6,21 41:14
42:4 43:9 51:16
57:7
**police** 20:19
21:11
**policies** 24:8,20
24:21 54:2
**policy** 22:23,23
23:4,8,10,15,16
23:18,18,19,25
24:3,11,16,17
25:1,1,9,11,16
25:19,23,25,25

28:13,20 33:10
35:7,9,11 36:3,9
36:11,14,22
37:2,9,17,19
40:13 44:11,15
44:22,25 48:10
48:15 49:1,10
49:12,15,15
50:3,5,7,10,13
51:17 53:14,18
53:19,25 54:16
56:7,8,9,11,15
56:16
**pollution** 27:15
57:19
**position** 5:25
9:25 13:10
15:17 16:12
18:3 19:22
20:10 25:6
31:24,25 32:10
32:15,21,25
33:3,7,12,14
34:3,14 37:14
39:10 42:10,19
42:20,23 43:21
44:17 46:21
47:6 48:13
53:20
**potential** 26:13
30:6 48:17
**potentially** 27:6
29:11 45:23
**power** 26:14

**practice** 9:4,8
13:5
**precautionary**
33:24
**preceding** 41:5
**precludes** 37:21
**prefer** 10:24
**premise** 28:22
**premises** 28:6
28:18 44:3,4,14
**prep** 14:2
**preparation**
8:16 51:6
**prepare** 7:13,18
14:18
**prepared** 9:20
47:22 52:14
**present** 2:23
54:19
**presently** 9:5
52:18
**presumably**
45:1
**pretty** 55:9
**primarily** 8:14
9:7,24 12:6
**primary** 8:12
25:13
**print** 62:8
**prior** 7:18 19:6
34:16 43:3
**privilege** 12:17
12:24 13:1,19
34:10

**probably** 8:1
9:12,14 24:22
25:21 34:1
56:12
**problem** 36:24
**problems** 43:25
**procedure**
58:10 63:7
**proceeding** 2:23
33:6 60:4,11
61:9,20
**proceedings**
59:14
**process** 57:1
**produced** 5:17
8:20,24,25 60:4
**producing** 8:22
**production**
62:19
**professional**
59:18 61:15
**prohibited**
59:25
**prohibitions**
59:9
**property** 8:15
29:7 41:2 42:1
42:25 44:22
45:3,8,9,11,15
45:17,24 48:20
48:21 49:25
50:10 51:18
52:18,22 53:13
54:5,15,18 56:3

**protect** 49:24
**protected** 60:10
60:11
**prove** 44:19
**proven** 18:10
28:16
**provide** 24:1
28:3,19 44:22
59:23
**provided** 56:17
**provides** 23:16
24:4 44:25 45:3
48:11
**provisions**
41:16
**proximate**
13:17
**public** 9:12
64:24
**pull** 14:9 16:3
17:3 22:8
**pulling** 15:3
**purchase** 23:7
24:11,25
**purchased**
22:24
**purpose** 5:24
55:3
**purposes** 40:8
**pursuant** 2:20
58:10 63:6
**put** 11:11,12
28:13 44:10
45:13,21

### q

**question** 6:10
6:12,12 12:11
12:16 13:18
15:21 16:14
18:5,19 19:24
20:9,12 21:23
24:13 29:5 30:8
31:9 34:9,24
37:4,7,22 38:8
40:6,11 41:10
42:17 43:2 44:3
44:7 47:23
52:24 54:8
55:13
**questions** 6:8
16:8 22:13
25:13 39:6
47:14,17 49:7
52:9 53:4 60:6
61:6
**quick** 6:7 29:19
47:18 50:16
58:5
**quite** 6:14
**quote** 17:10
25:16
**quoted** 41:23

### r

**raise** 26:23 43:8
**raised** 57:18,22
57:23
**rather** 6:8 44:9
**read** 17:13 18:7
19:17,17 28:21

29:3,20,24
38:20 41:5,24
42:2 43:12 44:2
44:12,16 45:13
46:5 53:10 62:6
63:2
**reading** 30:2
38:11 40:13
53:6
**reads** 20:8 43:6
**real** 9:5,15
29:18 50:16
58:4
**really** 7:25 29:9
35:4 46:20
**reason** 21:4
45:5 54:13
63:13,16,19,22
63:25 64:3,6,9
64:12,15,18
**reasonable**
40:12
**reasons** 55:7
63:8
**recall** 14:12
25:24 30:20,21
49:18,19 52:10
56:1
**received** 36:22
**receives** 60:3
**recollection**
14:15 21:13
25:17 57:13,15
**record** 5:1,6
6:17 11:6 17:6

35:21,24 41:16
45:25 46:3,6,9
48:4,7 58:4,6,8
59:13,17 60:5
61:8
**recorded** 57:14
**records** 49:20
49:20 54:22
55:3,6,8,9
**reduced** 61:7
**reduces** 45:22
**refer** 6:2 28:8
**reference** 16:24
17:4
**referred** 16:10
**referring** 6:6
7:3 27:13,20
30:16 31:12
40:23 41:3,21
41:22 45:1
**regarding** 9:20
13:5 17:21 26:1
26:7 32:17
42:23 46:21
48:10,12,17
**registered** 57:4
57:5
**regulations** 2:20
59:5
**relate** 54:4
**related** 23:6
45:9 54:6
**relates** 26:11
31:13

**relating** 54:23
60:10
**relationship**
59:15 61:13
**relative** 61:10
**relied** 18:20,24
**rely** 20:14 43:16
**relying** 13:24
47:9
**remember**
18:23 48:22
**remote** 1:14
**remotely** 1:22
**repeat** 21:2 42:9
**repeated** 34:3
**rephrase** 6:11
18:15
**report** 21:11
59:16
**reporter** 2:22
5:13 50:17 59:2
59:7,11 60:7,9
**reporting** 2:21
59:6,23
**reports** 20:19
20:20
**repository**
60:12
**represent** 5:6,22
54:21
**representations**
59:3
**representative**
5:4 6:22 9:8
12:8 53:12

**representatives**
6:23
**representing**
56:25 57:9
**request** 14:8
15:2,9 56:13
**requested** 51:17
51:24
**requests** 4:6
14:11,13
**required** 17:15
25:20
**reserve** 27:23
43:7
**reserved** 58:12
62:6
**reserving** 26:10
30:12
**respect** 54:3
**respecting**
48:14
**respectively**
18:24
**respond** 6:7
**responded**
22:16
**responding**
18:16
**responds** 15:14
**response** 4:6,8
8:20 15:14,22
15:24 16:8,9,22
17:1,2,9,13,15
17:22 18:18
19:3,6 20:15

32:16 34:2,7
**responses** 8:17
  14:6,13,18,18
  14:22 15:1,8,18
  16:1,4,13 34:14
  34:23
**responsible**
  15:20 31:23
  32:11
**responsive** 14:8
**restroom** 35:18
**retained** 4:19
  8:5,7
**returned** 62:11
  62:14
**review** 14:17,17
  25:22 30:15
  56:6,7 62:6
**reviewed** 9:17
  14:19,20 17:8
  19:6 25:15
  46:25 56:9,11
**riding** 28:17
**right** 8:5 9:9,18
  11:18 15:4 17:8
  23:11 25:15
  26:10 27:23
  28:10 30:12,16
  35:6 36:11,14
  40:18 41:3,21
  43:7 45:4 47:16
  50:23 51:4 52:3
  52:9,13,24
  53:12 55:2,19
  55:21,25 56:3

56:12 57:7,24
  62:6
**risk** 23:4,8,10
  23:15,25 24:3
  24:18,20 25:1
**risks** 23:17,23
**road** 2:9,15
**robinson** 8:15
  48:19 52:16,17
  52:25 53:17
  54:13,20
**roger** 21:6,15
**role** 26:5
**room** 7:9 21:7
  21:14 38:13,14
**roswell** 62:22
**rule** 9:18 26:14
  26:14 30:23,24
  30:25 31:6
  58:10 63:6
**rules** 2:20 6:7
  32:4 58:10 59:5
  63:6
**run** 15:12
**running** 57:3
**rust** 2:15 46:15

**s**

**s** 2:3
**safe** 28:1,6,14
  28:14,17,18
  44:3,5,10 45:13
  45:22
**safety** 45:9,16
  52:1 54:15

**sage** 6:19
**satisfied** 36:25
**saw** 21:11
**saying** 18:16
  31:20 34:6 43:5
**says** 18:7,7
  21:14 26:16
  27:25 30:24,25
  41:1 45:11 51:2
  52:5 53:5
**scene** 20:20
**schedule** 22:14
**scope** 45:19
**scores** 50:21
**scratch** 30:2
**screen** 10:21,25
  11:11,13 14:23
  14:25 16:4 22:9
  35:12 36:8,18
  40:24 43:19
  46:13 50:15,18
  52:3
**scroll** 15:4 51:7
  51:13
**se** 38:18
**seal** 62:11
**searched** 49:19
**sec** 50:22
**second** 49:15
  50:15 56:19
**section** 41:22
**see** 15:4 16:3,25
  17:2 19:8 22:9
  22:10 30:22
  33:8 36:8,18

38:1 40:23
  43:12,18 47:20
  50:24 51:1,2,3
  51:13 52:6
  53:10
**seeing** 31:11
  52:10
**seeking** 23:2,12
**seeks** 30:7
**seen** 26:15
  33:13 38:22
  51:5 52:12 55:8
**send** 62:12,18
**sent** 19:11 49:16
**sentence** 42:24
**september** 1:19
  5:1 61:23
**serve** 61:21
**served** 15:18
  16:13 57:4
**services** 53:5
  59:24
**serving** 8:3
**set** 32:22 44:9
**setting** 17:11
**settled** 57:2,7
**settlement** 57:7
  57:8
**settling** 57:1
**sexual** 38:1
**sexually** 21:21
**share** 10:21,25
  14:23,24 35:12
  36:8 46:13
  50:14,18,24

sharing  52:3
shiver  2:9
shiverhamilto...
  2:12
shooting  38:18
  38:21 39:8,23
shootings  38:2
show  10:21
  50:20 51:15
  52:2
shown  29:7
sidewalk  28:22
sign  62:6
signature  58:11
  60:16 61:25
  62:2,15 64:20
signed  62:9,11
  62:14
similar  16:8
  31:3
simply  28:13,18
  33:20 35:2
sir  49:7 51:1,6
  51:13,15 52:9
  53:10 54:21,25
  55:5,10 56:5,14
  56:19,24
situation  28:5
situations  45:15
six  8:2
slip  51:25 53:22
small  52:19
smoke  12:4,7
  13:1 38:13
  39:20 40:14

49:21 53:8 54:5
  54:7,23
sock  21:20
socks  21:21
sole  10:2,3
  16:10
solely  50:11
  59:20 61:18
solutions  51:11
  59:12,23
somebody  28:21
  50:1
sorry  9:15 12:10
  24:1 25:6 33:3
  41:13,15 42:9
  46:2 47:23
sound  21:16
southeast  62:24
speak  14:1 18:8
  28:12 46:23
special  51:24
  53:4,5
specific  29:3
  55:7 60:1
specifically  6:6
  14:12 15:13
  20:4 31:16
  36:21 53:19
  59:4
speculating
  33:25
spoke  7:19,20
  25:18
sprinkler  12:5

st  2:15
stairwell  13:2
stamped  51:10
standing  32:5
standpoint
  29:21 30:4 41:2
  42:2,25 50:11
start  13:11,12
  13:25 20:22,23
  33:9
started  9:12
  13:15,22 15:19
  18:3 19:19 20:1
  20:14,18,23,25
  21:4,15,18,24
  33:4,8 38:14
  40:14
starting  13:8
  26:5
state  6:16 59:11
  61:3
stated  32:5 61:6
statement  2:22
  15:23 19:22
  21:7,12,12
  29:21,23 33:17
  63:8
states  1:1 47:6
statue  31:3
staying  53:3
strategically
  18:17
strategy  33:16
stray  39:1,15,23

street  2:5
strike  15:22
  24:2 25:6
strikes  49:23
strongest  25:18
stuff  6:9 44:1
subcontractor
  59:12,21 61:19
subject  27:10
  34:16 35:8
  56:13
submitted  2:22
  60:6,9
subpoena  21:10
subscribed
  64:21
substance  63:7
substantiate
  19:9
sued  28:5 38:17
  45:8
suffice  29:10
  34:22
sufficient  12:4
  13:2 17:18 20:5
suit  8:9,24
  11:16 57:2,2
suite  2:5,10,16
  62:21
summarize  42:6
summarized
  47:5
summary  22:22
suppose  17:4
  20:9 34:22

**[supposed - true]**

Page 83

| | | | |
|---|---|---|---|
| **supposed** 22:24 | **talks** 31:6 | **things** 28:15 | 49:18 53:14 |
| **suppression** | **technically** 27:6 | 32:24 33:20 | 58:8 60:2 62:14 |
| 12:7 28:3 | **teleconferenci...** | **think** 10:11 | **times** 7:20 9:3 |
| **sure** 5:23 7:4 | 1:23 | 11:12 12:12,25 | 56:9 |
| 11:4 12:5 33:21 | **telephone** 19:14 | 13:25 14:24 | **title** 7:23 8:1 |
| 45:10 47:21 | **tell** 27:18 39:20 | 16:24 18:9,22 | **today** 5:5 6:3,10 |
| 54:8 55:13 56:5 | 52:16 | 19:6 22:18 | 6:22 7:3,6,18 |
| 56:10 | **telling** 49:16 | 26:14,18,22,25 | 9:18 14:18 |
| **surfaces** 51:25 | **ten** 35:17 47:8 | 27:1,4,8,14,14 | 19:21 47:14 |
| 53:7,21,22 | **tenants** 57:2 | 27:17,21,22 | 55:25 |
| **surplus** 55:17 | **term** 24:24 29:3 | 28:8,24,25 29:6 | **today's** 5:24 |
| 55:20 | 41:23 | 29:10 30:1,23 | 7:13 30:16 |
| **survey** 4:17 | **terms** 45:19 | 31:4,10,15 32:9 | 46:25 |
| 52:6,14,25 53:4 | 59:20 61:18 | 33:3,6,13,15,18 | **told** 25:10,18 |
| **surveys** 52:6 | **test** 30:12 | 34:3,13 36:4,25 | 55:23 |
| **sustained** 37:15 | **testified** 5:18 | 37:2,9,24 38:6 | **took** 32:15 33:3 |
| 39:16 | 21:3,18,22 28:2 | 38:11,11,12,17 | **top** 15:4 51:2 |
| **swear** 5:14 | 33:15,18 42:7 | 38:25 39:4 40:2 | 52:6 |
| **sworn** 5:17 | 53:25 54:22 | 40:12,16,19 | **topical** 39:11 |
| 64:21 | 55:2 | 42:3,5,12,15 | 44:8 |
| **system** 12:5 | **testify** 9:20 | 43:4,21,24 44:5 | **topics** 31:10,17 |
| **t** | 14:18,20 24:8 | 44:10,11,16 | 41:11 44:8 |
| | **testifying** 6:21 | 45:7,22 46:1 | **touch** 29:18 |
| **tactically** 18:17 | **testimony** 7:1 | 48:9,20 49:14 | **transcript** 6:9 |
| **take** 11:23 | 19:21 21:10,14 | 50:23 53:16,25 | 20:19 60:4 61:5 |
| 33:11 35:15,17 | 34:16 41:23 | 56:19 57:21 | 61:8 62:7,12,15 |
| 47:18,19 | 42:4 43:3,24 | **third** 23:18 | 63:2 |
| **taken** 32:25 | 56:1 63:2,7 | 27:18 50:6 | **transcripts** 60:4 |
| 35:22 46:7 48:5 | **thank** 6:16 | **thought** 26:6 | 60:10 |
| 53:14 56:3 61:5 | 35:19,25 41:17 | 37:1,14 43:25 | **trial** 9:6 14:2 |
| **talk** 7:17 | 47:16 48:2 49:2 | **time** 5:2 8:7,10 | 22:22 |
| **talked** 25:18 | 49:4 50:20 | 18:22 21:7 | **trips** 28:21 |
| **talking** 24:16,16 | 57:24,25 58:3 | 28:16 34:5 | **true** 18:10 21:2 |
| 35:7 41:14,16 | **thing** 18:8 28:17 | 35:20,23 46:6,8 | 25:21 60:5 61:8 |
| 41:20,21 49:8 | 39:23 | 48:3,6,21,23 | |
| 50:3,7,12 | | | |

**trying**  18:18
  29:3 31:19,23
  39:7 50:20
**turn**  10:19
  15:25 16:22
  19:16 22:2 26:8
  29:16 35:7
  36:16 43:17
  46:11
**turning**  26:1
**twice**  7:22
**two**  41:15 52:2
**type**  9:4 23:4,18
  24:16 25:9
  55:11
**types**  55:20
**typewriting**
  61:7
**typically**  23:25
  38:1

u

**u**  6:19
**ultimate**  22:23
  25:16 32:11
**ultimately**  19:18
  21:14 30:2
  36:22 47:8
**unambiguous**
  29:9
**under**  24:4
  27:16 33:10
  61:7
**underlying**  6:1
  6:3,4 8:6,18,19
  8:21 10:20,22

10:23 11:20
  13:4,11,15,22
  14:6,14 15:2,9
  16:1 18:3,11
  19:23 20:11
  28:2 31:22
  32:10,16,25
  33:4 48:18
  54:22
**undersigned**
  63:2
**understand**
  6:10,14,21,25
  8:23 15:24
  18:18,21 20:13
  22:19 23:3
  26:12 27:10
  31:19,23 39:7
  40:11 41:24
**understanding**
  8:25 9:25 10:9
  10:12,14 12:1
  13:12,17 14:3
  16:12,15 19:7,8
  19:9,9,21,25
  20:18 23:16,17
  24:1,3 30:24
  36:13 37:20
  49:10
**understated**
  50:14
**understood**
  6:12 24:20
  47:13

**underwriters**
  53:4
**underwriting**
  22:16,17
**underwritten**
  22:25
**uninhabitable**
  28:15
**united**  1:1
**units**  49:22 53:8
**unsafe**  28:22
  44:14
**unsanitary**
  28:15
**untenantable**
  28:14
**uploaded**  60:11
**use**  35:18 44:18
  54:23 63:9
**used**  24:24
**uses**  23:9
**using**  23:10

v

**venetian**  1:8,15
  2:13 5:4,9 6:2
  6:23 7:1,4,4,4
  7:23 8:12 9:24
  12:2,9,20 13:1
  13:10,14,16,21
  15:14 16:9,10
  17:12,22 18:16
  20:5 22:15,16
  22:21 26:6,10
  26:20,23 27:5
  28:3,5 29:24

30:7 32:15 33:3
  33:11 37:9,17
  38:17 40:17,18
  43:14 48:12
  51:14 52:15
  53:12,19,20
  54:2,3,14,19
  55:11,16 56:1,2
  56:17,21,25
  57:4
**venetian's**  5:25
  8:16 14:5,13
  15:1,8,25 16:19
  17:5 18:2 19:22
  20:3,10 22:2
  31:8,13 32:10
  32:14 37:13
  46:21 48:12
**verbally**  6:8
**verbatim**  59:17
**veritext**  59:12
  59:23 62:10,19
**veritext.com**
  62:24
**videoconferen...**
  1:22
**videographer**
  5:1,13 35:20,23
  46:2,5,8 48:3,6
  50:19 58:4,7
**videotaped**  5:3
  58:7
**viewed**  29:21
**violating**  12:23
  12:25

[vs - years]                                      Page 85

| | | |
|---|---|---|
| **vs** 1:7 | 19:19,25 20:14 | **wrote** 28:9 |
| **w** | 20:18 21:4,5 | **y** |
| **w** 2:8 | 26:3 31:21 | **y'all** 28:17 48:1 |
| **wait** 11:15 | 32:10 33:4,8 | 50:20 |
| **waive** 28:11 | **wheeler's** 21:13 | **yeah** 6:3 10:11 |
| 33:23 | 32:18 | 11:3,7,19 12:25 |
| **waiving** 47:11 | **witness** 3:3 5:14 | 14:20,24 17:24 |
| **walking** 51:25 | 5:17 11:10,12 | 18:7 28:24 |
| 53:5,21 | 11:15 12:12,22 | 40:25 49:13 |
| **want** 11:5 33:20 | 12:25 16:15 | 50:12 56:18 |
| 33:21 35:12 | 18:7,20 19:25 | 58:6 |
| 41:17 42:15 | 20:13 21:24 | **year** 52:25 |
| 49:8 56:13 | 24:14 28:8 29:6 | **years** 8:2 10:14 |
| **wanted** 15:12 | 30:9 32:1,3,20 | 52:19 |
| 21:21 22:12 | 34:18,20 35:1 | |
| 24:14,15,18 | 37:6,12,24 | |
| 25:5 29:18 | 38:10 39:19 | |
| 43:17 46:3,20 | 40:7 42:19 43:4 | |
| 49:24 | 44:10 45:21 | |
| **warranted** 31:7 | 50:22 58:11 | |
| **water** 35:18 | **witnesses** 60:9 | |
| **way** 24:10 26:21 | **word** 28:14 31:5 | |
| 28:12 29:3 35:3 | 44:18 | |
| 40:10 41:24 | **wording** 23:9 | |
| 42:2 44:12,16 | **words** 28:21 | |
| 45:13 51:18 | 50:5 | |
| 57:11 | **work** 4:16 19:2 | |
| **we've** 32:24 | 51:2,11,23 | |
| **went** 7:15 23:4 | **worries** 47:25 | |
| 57:5,14 | **writing** 10:17 | |
| **whatsoever** | 51:17 | |
| 45:14 | **written** 2:21 | |
| **wheeler** 13:6,22 | 27:16 53:14 | |
| 15:15 16:9,11 | **wrong** 8:10 | |
| 17:11 18:3,21 | 24:24 25:9 50:4 | |

Georgia Code

Title 9, Chapter 11

Article 5, Section 9-11-30

(e) Review by witness; changes; signing.
If requested by the deponent or a party before
completion of the deposition, the deponent shall
have 30 days after being notified by the officer
that the transcript or recording is available in
which to review the transcript or recording and, if
there are changes in form or substance, to sign a
statement reciting such changes and the reasons
given by the deponent for making them. The officer
shall indicate in the certificate prescribed by
paragraph (1) of subsection (f) of this Code
section whether any review was requested and, if
so, shall append any changes made by the deponent
during the period allowed. If the deposition is not
reviewed and signed by the witness within 30 days
of its submission to him or her, the officer shall
sign it and state on the record that the deposition
was not reviewed and signed by the deponent within
30 days. The deposition may then be used as fully
as though signed unless, on a motion to suppress
under paragraph (4) of subsection (d) of Code

Section 9-11-32, the court holds that the reasons
given for the refusal to sign require rejection of
the deposition in whole or in part.

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES
ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.
THE ABOVE RULES ARE CURRENT AS OF APRIL 1,
2019.  PLEASE REFER TO THE APPLICABLE STATE RULES
OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the

foregoing transcript is a true, correct and complete

transcript of the colloquies, questions and answers

as submitted by the court reporter. Veritext Legal

Solutions further represents that the attached

exhibits, if any, are true, correct and complete

documents as submitted by the court reporter and/or

attorneys in relation to this deposition and that

the documents were processed in accordance with

our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining

the confidentiality of client and witness information,

in accordance with the regulations promulgated under

the Health Insurance Portability and Accountability

Act (HIPAA), as amended with respect to protected

health information and the Gramm-Leach-Bliley Act, as

amended, with respect to Personally Identifiable

Information (PII). Physical transcripts and exhibits

are managed under strict facility and personnel access

controls. Electronic files of documents are stored

in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.