Fulton County Superior Court
***EFILED***JT
Date: 5/5/2021 4:04 PM
Cathelene Robinson, Clerk

```
1                    IN THE SUPERIOR COURT OF FULTON COUNTY
                             STATE OF GEORGIA
2

3
         STATE OF GEORGIA              )
4                                      )
                   VS.                 )
5                                      )
         KAMARA WHEELER,               )
6                                      )   CRIMINAL ACTION
                        DEFENDANT.     )   FILE NOS. 16SC146855 AND
7                                      )   17SC153114
                                       )
8                                      )

9                                ******
10          TRANSCRIPT OF THE GUILTY PLEA PROCEEDINGS
                     IN THE ABOVE-MENTIONED CASES
11         BEFORE THE HONORABLE PAIGE REESE WHITAKER,
           COMMENCING ON THE 31ST DAY OF MARCH, 2021.
12                               ******

13
         APPEARANCES:
14
           ON BEHALF OF THE STATE:        JEREMY DAILEY,
15                                         ASSISTANT DISTRICT ATTORNEY

16
           ON BEHALF OF THE DEFENDANT:    MAXWELL SCHARDT,
17                                         DEPUTY PUBLIC DEFENDER

18

19

20                             EVELYN PARKER
                           OFFICIAL COURT REPORTER
21                       T-5855 JUSTICE CENTER TOWER
                          185 CENTRAL AVENUE, S.W.
22                         ATLANTA, GEORGIA 30303

23

24

25
```

```
 1                    IN-PERSON/HYBRID ZOOM PROCEEDINGS

 2

 3          MARCH 31, 2021

 4                    THE COURT:  MORNING, MS. WHEELER.  MR. SCHARDT,

 5               THIS IS THE FINAL PLEA CALENDAR FOR YOUR CLIENT, AND

 6               THERE ARE THREE DIFFERENT CASES THAT ARE ON THE

 7               FINAL PLEA.  16SC AND 17SC AND 19SC CASES.  IS THIS

 8               GOING TO BE A PLEA?

 9                    MR. SCHARDT:  IT IS GOING TO BE A PLEA TO THE 16

10               AND 17 S C CASES.  THE 19SC CASE AS PART OF THE

11               AGREEMENT IS GOING TO BE NOL-PROSSED.

12                    MR. DAILEY:  THAT'S CORRECT.

13                    MR. SCHARDT:  AND THERE ARE SOME AMENDMENTS TO

14               SOME CHARGES, AS WELL.

15                    THE COURT:  ALL RIGHT.  THANK YOU.  YOU MAY

16               PROCEED, MR. BARNHILL.

17                    MR. DAILEY:  YOUR HONOR, FOR PURPOSES --

18                    THE COURT:  I'M SORRY.  MR. DAILEY.

19                    MR. DAILEY:  NO PROBLEM, YOUR HONOR.  FOR

20               PURPOSES OF THE COURT, WE ARE PROCEEDING AS TO THE

21               INDICTMENT AS TO POSITION 10.  AS TO POSITION 11,

22               COUNT ONE IS GOING TO BE AMENDED TO VOLUNTARY

23               MANSLAUGHTER.  COUNT TWO WILL BE NOL-PROSSED, AND

24               THE REMAINING COUNTS WILL STAY THE SAME.

25                    THE COURT:  OKAY.  THANK YOU.
```

```
1                     MR. DAILEY:  MS. WHEELER, RAISE YOUR RIGHT HAND.
2                                KAMARA WHEELER,
3            HAVING BEEN DULY SWORN, WAS EXAMINED AND TESTIFIED AS FOLLOWS:
4                                 EXAMINATION
5        BY MR. DAILEY:
6                     MR. DAILEY:   ALL RIGHT.  YOU CAN LOWER YOUR
7                HAND.  I NEED YOU TO SPEAK LOUDLY FOR ME, OKAY, SO
8                EVERYBODY CAN HEAR.
9                Q.  WILL YOU STATE YOUR TRUE, CORRECT, AND LEGAL NAME?
10               A.  KAMARA R. WHEELER.
11               Q.  ARE YOU AT THIS TIME TAKING OR UNDER THE INFLUENCE OF
12               ANY DRUGS, ALCOHOL, OR MEDICATION?
13               A.  NO, SIR.
14               Q.  HOW OLD ARE YOU?
15               A.  THIRTY-SIX.
16               Q.  WHAT'S THE FARTHEST YOU HAVE COMPLETED IN SCHOOL?
17               A.  SEVENTH.
18               Q.  YOU COMPLETED THE 7TH GRADE.  ARE YOU ABLE TO READ,
19               WRITE, AND UNDERSTAND THE ENGLISH LANGUAGE?
20               A.  YES.
21               Q.  ALL RIGHT.  ALL RIGHT.  DID YOU DISCUSS ANYTHING THAT
22               WAS IN WRITING WITH YOUR ATTORNEY, MR. SCHARDT?
23               A.  YES.
24               Q.  SUCH AS THE INDICTMENTS IN THE CASE?  DID YOU SPEAK
25               WITH MR. SCHARDT ABOUT THE INDICTMENTS?
```

1                A.  YES.

2                Q.  AND DID YOU UNDERSTAND WHAT YOU DISCUSSED WITH HIM THAT

3        WAS IN WRITING?

4                A.  YES, SIR.

5                Q.  OKAY.  DO YOU UNDERSTAND THAT YOU WERE CHARGED WITH THE

6        FOLLOWING OFFENSES:  AS TO 16SC146855, YOU WERE CHARGED WITH

7        ARSON IN THE SECOND DEGREE, CRIMINAL DAMAGE TO PROPERTY IN THE

8        SECOND DEGREE, AND MISDEMEANOR OBSTRUCTION OF A LAW ENFORCEMENT

9        OFFICER.  DO YOU UNDERSTAND THAT?

10               A.  YES, SIR.

11               Q.  DO YOU UNDERSTAND IN REGARDS TO INDICTMENT 17SC153114,

12       WE ARE PROCEEDING AS TO ONE COUNT OF VOLUNTARY MANSLAUGHTER AND

13       FOUR COUNTS OF ARSON IN THE FIRST DEGREE?  DO YOU UNDERSTAND ALL

14       THAT?

15               A.  YES, SIR.

16               Q.  DO YOU UNDERSTAND THAT YOU HAVE THE RIGHT TO PLEAD

17       EITHER GUILTY OR NOT GUILTY TO THESE CHARGES, AND IF YOU PLEAD

18       NOT GUILTY OR REMAIN SILENT, YOU MAY RECEIVE A JURY TRIAL?

19               A.  YES, SIR.

20               Q.  AS WE JUST DISCUSSED, YOU HAVE REVIEWED THE INDICTMENTS

21       IN BOTH THESE CASES WITH MR. SCHARDT?

22               A.  YES, SIR.

23               Q.  DID YOU HAVE ENOUGH TIME TO SPEAK WITH HIM REGARDING

24       ALL THE FACTS AND CIRCUMSTANCES RELATED TO THOSE INDICTMENTS,

25       INCLUDING ANY POTENTIAL DEFENSES YOU MAY HAVE HAD AT TRIAL?

```
1                        A.  YES.

2                        Q.  DO YOU NEED MORE TIME TO SPEAK WITH YOUR ATTORNEY?

3                        A.  NO.

4                        Q.  ARE YOU SATISFIED WITH HIS SERVICES?

5                        A.  YES, SIR.

6                            MR. DAILEY:  MR. SCHARDT, DO YOU WAIVE FORMAL

7                        READING OF THE INDICTMENT?

8                            MR. SCHARDT:  SO WAIVED.

9                            MR. DAILEY:  DO YOU WAIVE ANY AND ALL DEFECTS IN

10                       THE INDICTMENT?

11                           MR. SCHARDT:  WE DO.

12                   BY MR. DAILEY:

13                       Q.  MS. WHEELER, DO YOU UNDERSTAND IN REGARDS TO YOUR FIRST

14                   CASE, THE OLDER CASE, ARSON IN THE SECOND DEGREE, CARRIES A

15                   SENTENCE OF 1 TO 10 YEARS?  CRIMINAL DAMAGE TO PROPERTY IN THE

16                   SECOND DEGREE CARRIES 1 TO 5 YEARS?

17                       A.  YES, SIR.

18                       Q.  YOU UNDERSTAND THOSE?

19                       A.  YES.

20                       Q.  DO YOU UNDERSTAND IN REGARDS TO YOUR SECOND CASE,

21                   VOLUNTARY MANSLAUGHTER, IT CARRIES 1 TO 20, AND EACH ONE OF THE

22                   FOUR COUNTS OF ARSON IN THE FIRST DEGREE CARRY AN ADDITIONAL 1 TO

23                   20 YEARS?  DO YOU UNDERSTAND THAT?

24                       A.  YES.

25                       Q.  OKAY.  DO YOU UNDERSTAND THAT WE ARE PROCEEDING TODAY
```

```
1               ON WHAT'S CALLED A NEGOTIATED PLEA, WHICH MEANS THE STATE, ALONG
2               WITH YOUR ATTORNEY, ARE MAKING A JOINT RECOMMENDATION TO THE
3               COURT, AND THAT JOINT RECOMMENDATION AS A GLOBAL RECOMMENDATION
4               FOR BOTH OF YOUR CASES IS 25 YEARS TO SERVE 20 YEARS IN
5               CONFINEMENT WITH THE REMAINING BALANCE TO BE PROBATED.  A
6               CONDITION OF PROBATION WOULD BE TO COMPLETE AN ARSON PROGRAM THAT
7               WE WILL DISCUSS IN A LITTLE BIT WITH THE COURT AND YOUR ATTORNEY.
8               DO YOU UNDERSTAND ALL THAT?
9                    A.   YES, SIR.
10                   Q.   DID YOU DISCUSS THAT OFFER WITH YOUR ATTORNEY?
11                   A.   YES, SIR.
12                   Q.   ALL RIGHT.  DO YOU UNDERSTAND THE COURT DOESN'T HAVE TO
13              ACCEPT THAT RECOMMENDATION AND CAN IMPOSE THE MAXIMUM SENTENCE ON
14              EACH ONE OF THESE CHARGES AND RUN THEM CONSECUTIVE OR ONE AFTER
15              THE OTHER?
16                   A.   YES, SIR.
17                   Q.   DO YOU UNDERSTAND THAT THIS PLEA MAY BE USED TO ENHANCE
18              SENTENCING ON OTHER CONVICTIONS IN THIS JURISDICTION, AS WELL AS
19              IN OTHER JURISDICTIONS, INCLUDING IN THE FEDERAL COURTS?
20                   A.   YES, SIR.
21                   Q.   DO YOU UNDERSTAND THAT IF YOU ARE CURRENTLY ON
22              PROBATION OR PAROLE, YOUR PROBATION OR PAROLE MAY BE REVOKED
23              BASED ON YOUR ENTERING OF A GUILTY PLEA TODAY?  DO YOU UNDERSTAND
24              THAT?
25                   A.   YES.
```

6

1          Q.   OKAY.  DO YOU UNDERSTAND THAT IF YOU ARE PLACED ON
2      PROBATION OF ANY KIND, YOU CANNOT VIOLATE ANY CRIMINAL LAWS OF
3      ANY GOVERNMENTAL UNIT OR ANY SPECIAL CONDITIONS OF PROBATION
4      WITHOUT BEING SUBJECT TO REVOCATION FOR THE BALANCE OF THE
5      SENTENCE?
6          A.   YES, SIR.
7          Q.   DO YOU UNDERSTAND YOU ARE NOT ALLOWED TO POSSESS OR USE
8      A FIREARM WHILE ON PROBATION?
9          A.   YES, SIR.
10         Q.   DO YOU UNDERSTAND THAT IF YOU ARE NOT A UNITED STATES
11     CITIZEN, A GUILTY PLEA CONVICTION WILL AFFECT YOUR IMMIGRATION
12     STATUS AND WILL RESULT IN DEPORTATION JUST LIKE A CONVICTION AT
13     TRIAL WOULD, AND THAT THIS IS TRUE REGARDLESS OF ANY ADVICE BY
14     YOUR ATTORNEY OR ANYONE ELSE?
15         A.   YES, SIR.
16         Q.   DO YOU UNDERSTAND THAT NEITHER THE COURT, YOUR
17     ATTORNEY, NOR THE DISTRICT ATTORNEY'S OFFICE HAS ANYTHING TO DO
18     WITH PAROLE, THE DEPARTMENT OF CORRECTIONS, OR THE BOARD OF
19     PARDONS AND PAROLES, AND NO ONE CAN GUARANTEE PAROLE NO MATTER
20     WHAT ANYONE HAS TOLD YOU?
21         A.   YES.
22         Q.   DO YOU UNDERSTAND THERE MAY BE OTHER ADVERSE OR
23     UNFAVORABLE CONSEQUENCES AS A RESULT OF THIS GUILTY PLEA
24     CONVICTION JUST AS THERE WOULD BE FROM A CONVICTION FOLLOWING A
25     TRIAL?

```
1                 A.  YES, SIR.
2                 Q.  DO YOU UNDERSTAND THAT BY PLEADING GUILTY TO A FELONY,
3        IF YOU USE, RECEIVE, POSSESS, OR TRANSPORT A FIREARM, OR USE A
4        FIREARM IN A CRIME, YOU WILL BE GUILTY OF A FELONY WHICH MAY
5        CARRY A SENTENCE OF 1 TO 15 YEARS IN PRISON?
6                 A.  YES, SIR.
7                 Q.  DO YOU UNDERSTAND THAT YOU WAIVE ANY AND ALL DEFENSES,
8        INCLUDING ANY MENTAL HEALTH DEFENSES, BY ENTERING A PLEA OF
9        GUILTY?
10                A.  YES, SIR.
11                Q.  DO YOU UNDERSTAND THAT IF YOU WENT TO TRIAL, YOU HAVE
12       THE RIGHT TO TRIAL BY JURY, THE RIGHT TO SEE, HEAR, AND CONFRONT
13       WITNESSES CALLED TO TESTIFY AGAINST YOU, AND THE RIGHT TO TESTIFY
14       OR TO REMAIN SILENT AND NOT INCRIMINATE YOURSELF?
15                A.  YES.
16                Q.  OKAY.  DO YOU UNDERSTAND THAT BY PLEADING GUILTY, YOU
17       ARE GIVING UP THE FOLLOWING RIGHTS:  YOU ARE GIVING UP THE RIGHT
18       TO TRIAL BY JURY?
19                A.  YES, SIR.
20                Q.  THE RIGHT TO REMAIN SILENT AND NOT INCRIMINATE
21       YOURSELF?
22                A.  YES.
23                Q.  THE RIGHT TO CONFRONT WITNESSES AGAINST YOU?
24                A.  YES.
25                Q.  THE RIGHT TO ASSISTANCE OF COUNSEL HIRED BY YOU OR TO
```

```
1              COURT-APPOINTED COUNSEL IF YOU CANNOT AFFORD AN ATTORNEY IN A
2         TRIAL OF YOUR CASE?
3              A.   YES, SIR.
4              Q.   THE RIGHT TO THE PRESUMPTION OF INNOCENCE?
5              A.   YES, SIR.
6              Q.   THE RIGHT TO TESTIFY ON YOUR OWN BEHALF AND PRESENT
7         OTHER EVIDENCE?
8              A.   YES, SIR.
9              Q.   SPEAK VERY LOUDLY FOR ME, MS. WHEELER, SO EVERYBODY CAN
10        HEAR.
11             A.   YES.
12             Q.   THE RIGHT TO SUBPOENA WITNESSES AND COMPEL THE
13        PRODUCTION OF EVIDENCE?
14             A.   YES.
15             Q.   THE RIGHT TO HAVE THE CHARGES AGAINST YOU PROVEN BEYOND
16        A REASONABLE DOUBT?
17             A.   YES.
18             Q.   AND THE RIGHT TO APPEAL IF CONVICTED OF THOSE CHARGES
19        AFTER TRIAL?
20             A.   YES, SIR.
21             Q.   HAS ANYONE FORCED, THREATENED, OR PROMISED YOU ANYTHING
22        TO GET YOU TO ENTER A GUILTY PLEA?
23             A.   NO, SIR.
24             Q.   IS IT YOUR DECISION TO WAIVE THESE RIGHTS WE DISCUSSED
25        AND ENTER A GUILTY PLEA BECAUSE YOU ARE IN FACT GUILTY?
```

1               A.   YES.

2               Q.   ALL RIGHT.   IN REGARDS TO THE INDICTMENT 16SC146855,

3        HOW DO YOU PLEAD TO THE CHARGE OF ARSON IN THE SECOND DEGREE?

4               A.   GUILTY.

5               Q.   HOW DO YOU PLEAD TO THE CHARGE OF CRIMINAL DAMAGE TO

6        PROPERTY IN THE SECOND DEGREE?

7               A.   GUILTY.

8               Q.   AND HOW DO YOU PLEAD TO THE CHARGE OF MISDEMEANOR

9        OBSTRUCTION?

10              A.   GUILTY.

11              Q.   WITH REGARDS TO THE INDICTMENT 17SC153114, HOW DO YOU

12       PLEAD TO THE CHARGE OF VOLUNTARY MANSLAUGHTER IN THAT CASE?

13              A.   GUILTY.

14              Q.   HOW DO YOU PLEAD TO THE FIRST COUNT OF ARSON IN THE

15       FIRST DEGREE?

16              A.   GUILTY.

17              Q.   AND TO THE SECOND COUNT OF ARSON IN THE FIRST DEGREE?

18              A.   GUILTY.

19              Q.   AND TO THE THIRD COUNT OF ARSON?

20              A.   GUILTY.

21              Q.   AND TO THE FOURTH COUNT OF ARSON?

22              A.   GUILTY.

23              Q.   IS THIS GUILTY PLEA FREELY AND VOLUNTARILY GIVEN WITH

24       FULL KNOWLEDGE OF THE CHARGES AGAINST YOU?

25              A.   YES.

1           Q.   DO YOU UNDERSTAND THAT YOU MAY HAVE ONLY A LIMITED
2      RIGHT TO APPEAL THIS GUILTY PLEA CONVICTION?
3           A.   YES, SIR.
4           Q.   DO YOU UNDERSTAND THAT YOU ONLY HAVE FOUR YEARS FROM
5      TODAY FOR A FELONY CHARGE AND 12 MONTHS FROM TODAY FOR A
6      MISDEMEANOR CHARGE TO FILE WHAT'S CALLED A HABEAS CORPUS PETITION
7      CHALLENGING THE CONSTITUTIONALITY OF YOUR GUILTY PLEA?
8           A.   YEAH.
9           MR. DAILEY:  YOUR HONOR, MS. WHEELER HAS ONE
10          PRIOR FELONY CONVICTION FOR THEFT BY RECEIVING FROM
11          NOVEMBER 10TH, 2005 OUT OF FULTON COUNTY.
12          YOUR HONOR, TAKING, I BELIEVE, BOTH POSITION 10,
13          ALSO CHRONOLOGICALLY IN REGARDS TO THE INDICTMENT
14          ENDING IN 855, HAD THIS GONE TO TRIAL, THE STATE
15          WOULD HAVE SHOWN THAT ON NOVEMBER 1ST, 2014, IN
16          FULTON COUNTY, APD RESPONDED ALONG WITH ATLANTA FIRE
17          AND RESCUE TO AN ABANDONED HOUSE THAT WAS ON FIRE.
18          UPON ARRIVAL, THEY SAW THAT THE HOUSE ITSELF WAS
19          ENGULFED IN FLAMES.  ONE OF THE RESPONDING OFFICERS,
20          OFFICER BROWN, NOTICED MS. WHEELER.  UPON
21          APPROACHING MS. WHEELER, MS. WHEELER IMMEDIATELY
22          JUMPED INTO THE BACK OF HER PATROL CAR; SAID, YEAH,
23          I DID IT.  I DID IT WITH A LIGHTER.  THE OFFICER
24          THEN GETS OUT OF THE PATROL CAR TO, I GUESS, PUT MS.
25          WHEELER UNDER ARREST.

```
 1              AT THAT POINT, SHE BEGAN TO RESIST ARREST,
 2    ULTIMATELY CAUSING SOME TEARS EVEN ON THE OFFICER'S
 3    UNIFORM.  THE HOUSE ITSELF WAS WORTH IN EXCESS OF
 4    $500.
 5              THAT WOULD BE THE BASIS FOR THAT INDICTMENT.
 6              AS TO THE SECOND INDICTMENT ENDING IN 114, HAD
 7    THIS GONE TO TRIAL, THE STATE WOULD HAVE SHOWN THAT
 8    ON MARCH 15TH, 2017, AT 1829 CAMPBELLTON ROAD,
 9    SOUTHWEST, APARTMENT I-5 IN ATLANTA, GEORGIA,
10    COMMONLY KNOWN AS THE VENETIAN HILLS APARTMENT
11    COMPLEX, MS. WHEELER WAS TRANSPORTED TO THIS
12    PARTICULAR APARTMENT COMPLEX BY A MAN NAMED ROGER
13    LIDDELL.  ROGER LIDDELL RENTED A ROOM IN THIS
14    PARTICULAR UNIT OF THIS APARTMENT COMPLEX.  HE
15    PICKED UP MS. WHEELER SOMETIME EARLIER IN THE NIGHT
16    AT A TEXACO WHERE I BELIEVE THE EVIDENCE WOULD SHOW
17    THEY WENT BACK TO HIS APARTMENT, WHICH WAS ROOM B IN
18    THE APARTMENT, WHERE THEY SMOKED CRACK, CRACK
19    COCAINE.
20              ALSO PRESENT IN THE APARTMENT WERE THREE OTHER
21    TENANTS THAT WERE ALSO RENTING OUT ROOMS.  ON THE
22    BOTTOM FLOOR, WE HAD A DARNELL RIVERS.  THAT
23    MR. LIDDELL HAD ONE OF THE ROOMS ON THE TOP FLOOR.
24    ANOTHER ROOM WAS OCCUPIED BY A MAN NAMED LARRY
25    BURNETT, HIS GIRLFRIEND, AND HER 9-YEAR-OLD CHILD
```

1                WERE PRESENT AT THE TIME OF THIS INCIDENT IN THAT

2                ROOM.

3                     AND, FINALLY, THE VICTIM IN THIS CASE, GEORGE

4                HUGHES, COMMON SPELLING.  ALL OF THESE INDIVIDUALS

5                WERE PRESENT AT THE APARTMENT AT THE TIME.

6                     AS I STATED, THEY DID SMOKE CRACK COCAINE, AT

7                WHICH POINT I BELIEVE THE EVIDENCE WOULD SHOW THAT

8                DESPITE HIS CONTINUAL INSISTENCE THAT IT DID NOT

9                HAPPEN, I BELIEVE, ULTIMATELY, A JURY WOULD CONCLUDE

10               THAT HE ATTEMPTED TO FORCE MS. WHEELER TO PERFORM

11               ORAL SEX ON HIM.

12                    THE COURT:  HE BEING MR. LIDDELL?

13                    MR. DAILEY:  YES.  PRESENT IN ROOM B, AT WHICH

14               POINT THERE WAS AN ALTERCATION THAT OCCURRED.

15               WITNESSES AT THE APARTMENT COMPLEX, SPECIFICALLY MS.

16               HARGETT, ALICIA HARGETT, H-A-R-G-E-T-T, STATED THAT

17               SHE HEARD ARGUING BETWEEN MR. LIDDELL AND ANOTHER

18               WOMAN.  ULTIMATELY, MS. WHEELER CONFESSED THAT

19               SUBSEQUENT TO THAT ARGUMENT, SHE ATTEMPTED TO LIGHT

20               WHAT SHE DESCRIBED AS A LARGE CLEAR PLASTIC BAG ON

21               FIRE AND THEN A SOCK ON FIRE IN THE APARTMENT

22               COMPLEX BEFORE LEAVING THE APARTMENT COMPLEX AT

23               APPROXIMATELY 4:10 A.M.

24                    SHE WAS OBSERVED ON SURVEILLANCE LEAVING THE

25               APARTMENT COMPLEX.  MULTIPLE WITNESSES THAT WERE

13

```
 1                 PRESENT AT THE SCENE PICKED HER OUT OF A PHOTO
 2                 LINEUP.
 3                      ANYWAY, THAT WOULD BE -- WELL, I SHOULD SAY
 4                 MR. HUGHES DIED AS A RESULT OF THE INCIDENT AND THE
 5                 APARTMENT BURNING DOWN.  THE OTHER INDIVIDUALS THAT
 6                 WERE PRESENT MANAGED TO ESCAPE.  NOTHING FURTHER
 7                 FROM THE STATE.
 8                      THE COURT:  ALL RIGHT.  MR. SCHARDT.
 9                      MR. SCHARDT:  MAY IT PLEASE THE COURT, YOUR
10                 HONOR.  FIRST OF ALL, BEFORE I GET STARTED, LET ME
11                 JUST APOLOGIZE IN ADVANCE IF I GET EMOTIONAL.  IT IS
12                 NOT MY INTENT.  I REALIZE HOW RIDICULOUS IT IS THAT
13                 WE ARE TALKING ABOUT THE DEATH OF GEORGE HUGHES AND
14                 MS. WHEELER GOING TO PRISON FOR TWO DECADES, AND I
15                 WOULD BE THE ONE GETTING EMOTIONAL.  BUT HOPEFULLY
16                 BRINGING THAT OUT NOW WILL PREVENT IT FROM HAPPENING
17                 LATER ON IN MY PRESENTATION.  BUT I DO APOLOGIZE FOR
18                 THAT.
19                      I WOULD ALSO BEFORE I START TALKING ABOUT MS.
20                 WHEELER, I WOULD LIKE TO JUST SAY, MS. WHEELER, AND
21                 ON BEHALF OF MS. WHEELER, SHE HAS GREAT REGRETS
22                 ABOUT THE DEATH OF GEORGE HUGHES.  THIS CASE WAS
23                 VOLUMINOUS.  THERE IS LOTS OF BAD THINGS THAT ARE
24                 DISCUSSED IN THE DISCOVERY OF THIS CASE.  MR. HUGHES
25                 IS BARELY DISCUSSED IN THE CASE.  THE ONLY REASON HE
```

```
 1            IS DISCUSSED IN THE CASE IS BECAUSE HE WAS THE POOR
 2            INDIVIDUAL WHO DIED AS A RESULT OF THIS CASE.  BUT
 3            OF ALL THE BAD THINGS GOING ON IN THIS CASE,
 4            MR. HUGHES, FROM MY VANTAGE POINT, AND I THINK I
 5            HAVE A VERY ACCURATE VANTAGE POINT ABOUT WHAT
 6            OCCURRED, HE HAD NOTHING TO DO WITH THIS.  AND
 7            THAT'S REALLY WHAT MAKES THIS UNFORTUNATE IS THE
 8            FACT THAT MR. HUGHES ENDED UP PAYING FOR THE ACTIONS
 9            OF OTHER PEOPLE.  AND, QUITE HONESTLY, IF IT WAS A
10            DIFFERENT SITUATION WITH DIFFERENT VICTIMS, WE MIGHT
11            BE IN A DIFFERENT POSTURE, AS FAR AS ENTERING A PLEA
12            VERSUS TRYING THIS CASE.  BUT MR. HUGHES DID NOT
13            DESERVE ANY OF THIS.
14                 MS. WHEELER, I HAVE KNOWN HER FOR GOT TO BE FOUR
15            YEARS NOW.  YEAH.  ALMOST EXACTLY FOUR YEARS.
16                 THE COURT:  BECAUSE SHE HAS BEEN IN JAIL THAT
17            LONG?
18                 MR. SCHARDT:  SHE HAS.  WE MADE A TRIP TO THE
19            SUPREME COURT OF GEORGIA AND BACK AND DELAYS WITH
20            COVID AND EVERYTHING ELSE.  SO WE HAVE KNOWN EACH
21            OTHER FOR SOME TIME, AND I HAVE GOTTEN TO KNOW HER,
22            HER FAMILY BACKGROUND.  SHE WAS RAISED BY HER MOTHER
23            WITH HER SISTERS.  HER MOTHER PASSED AWAY.  SO HER
24            MOTHER PASSED AWAY WHEN SHE WAS IN JAIL.  HER
25            SISTERS HAVE -- HER SISTERS ARE NOT PART OF HER LIFE
```

1     ANY MORE.  SHE MADE IT TO THE 7TH GRADE, AND THERE
2     IS JUST -- SHE ENDED UP ON THE STREETS.  SHE HAS
3     MENTAL HEALTH ISSUES, DRUG ISSUES.  SHE HAS BEEN THE
4     VICTIM OF VIOLENCE, SEXUAL VIOLENCE.  AND ONCE I GET
5     THROUGH THIS, IT WILL BE EASIER, BUT I GUESS THE
6     THING THAT BOTHERS ME, AND I WANT MS. WHEELER TO
7     UNDERSTAND, IS THAT SHE IS ESSENTIALLY ALONE AT THIS
8     POINT, BUT THERE ARE PEOPLE THAT CARE ABOUT HER.
9     AND I JUST WANTED HER TO REMEMBER THAT.
10          NOW, JUDGE, I'M NOT GOING TO GO INTO DETAILS OF
11    THIS INCIDENT.  I APPRECIATE MR. DAILEY
12    ACKNOWLEDGING MANY OF THE THINGS THAT MS. WHEELER
13    TOLD THE POLICE WHEN SHE WAS ARRESTED THAT I HAVE
14    BEEN SCREAMING FOR FOUR YEARS.  MR. LIDDELL WAS VERY
15    EVASIVE, LIED REPEATEDLY ABOUT MS. WHEELER EVEN
16    BEING AT THE APARTMENT, AND THEN TRIED TO MAKE IT
17    ABOUT MS. WHEELER HARASSING HIM AND TRYING TO
18    REPEATEDLY COME INTO THE APARTMENT.
19          MS. WHEELER FROM THE BEGINNING STATED THAT THIS
20    OCCURRED.  THAT SHE WAS VULNERABLE.  MS. WHEELER --
21    THAT NIGHT, IT WAS RAINING.  SHE WAS SLEEPING ON
22    CASCADE.  SHE WOULD USUALLY SLEEP UNDER LIKE AN
23    AWNING ON CASCADE OVER BY THE KROGER PARKING, KROGER
24    SHOPPING CENTER, WHICH IS MORE TOWARDS DOWNTOWN.  IF
25    SHE WAS LUCKY, THERE WAS A MAN THAT HAD A VAN AND A

1          CHURCH'S CHICKEN; THAT SHE WOULD GET TO SLEEP IN
2          THERE, IF SHE WAS LUCKY.
3              AND THAT DAY, SHE FOUND HERSELF FURTHER WEST ON
4          CASCADE, AND IT WAS GETTING DARK, AND SHE JUST
5          WANTED TO GO BACK TO THE PLACE THAT SHE FELT SAFE,
6          WHICH WAS THE STREET ON CASCADE, AN AREA OF CASCADE
7          THAT SHE KNEW.  THAT'S HER EXISTENCE IS SHE FELT
8          SAFE ON THE STREET, AT LEAST AS SHE KNEW THAT AREA
9          OF THE STREET.
10             SO SHE WAS TRYING TO GET A RIDE BACK TO THAT
11         AREA.  AND MR. LIDDELL PULLED UP AND SAID HE WOULD
12         GIVE HER A RIDE BACK UP CASCADE, AND THEN HE TOOK
13         HER TO HIS HOUSE, AND THEN HE LET HER TAKE A NAP.
14         SHE ENTERED THE UNIT, THE UNIT AT THIS COMPLEX.
15         THIS IS NOT A NICE APARTMENT COMPLEX, AND THE UNIT,
16         IF ONE OF US WERE TO DECIDE TO LIVE THERE, WE WOULD
17         RENT THE TOWNHOUSE UNIT.  I DON'T THINK ANY OF US
18         WOULD CHOOSE TO LIVE THERE, BUT WE WOULD HAVE RENTED
19         THE ENTIRE UNIT.  BUT THE WAY THEY HAD IT SET UP IS
20         IT WAS FOUR SEPARATE TENANTS THAT AREN'T RELATED TO
21         EACH OTHER THAT WOULD SHARE A UNIT, AND THEY ARE
22         WALLED OFF.  IT WAS -- THE TOWNHOUSE, TOWN HOMES,
23         THE WALLS WERE ALTERED.
24             AND MS. WHEELER ENTERED MR. LIDDELL'S HOME
25         THINKING HE WAS THE ONLY ONE THAT LIVED THERE.  SHE

1          DID NOT KNOW THAT MR. HUGHES HAD HIS OWN WALLED-OFF
2          UNIT.  SHE DID NOT KNOW ABOUT MS. HARGETT.  SHE DID
3          NOT KNOW ABOUT MR. RIVERS.
4               THEY WENT UP TO THE ROOM, AND SHE WAS ALLOWED TO
5          TAKE A NAP, AND SHE WAS OF THE IMPRESSION THAT MAYBE
6          MR. LIDDELL WASN'T A BAD GUY.
7               MR. LIDDELL, WHILE SHE WAS NAPPING, WENT AND
8          PROCURED CRACK COCAINE AND SOME LIQUOR, CAME BACK;
9          IN FRONT OF MS. WHEELER, WHO HAD BEEN USING THE DAY
10         BEFORE, REALLY HAD NO INTEREST IN USING THAT DAY,
11         BUT SHE USED, AND THEN IT WAS DETERMINED BY MR.
12         LIDDELL AND ONLY MR. LIDDELL THAT PAYMENT WAS DUE.
13         MS. WHEELER RESISTED THAT.  MS. WHEELER -- ACTUALLY,
14         AT ONE POINT, MR. LIDDELL, I THINK HE MAY HAVE BEEN
15         DRINKING; WAS GETTING A LITTLE CARELESS.  HE LEFT
16         HIS CELL PHONE.  THE CELL PHONE RECORDS INDICATE
17         THAT MS. WHEELER FIRST CALLED FRANK HAWTHORN TO TRY
18         TO GET HIM TO COME GET HER, AND MR. HAWTHORN IS
19         SOMEONE THAT'S SOMEWHAT OF AN UNCLE FIGURE TO HER.
20         HE DIDN'T ANSWER.  IT WAS 3:00 A.M.  AND THEN THE
21         RECORDS REVEAL THAT THERE WAS TWO 911 CALLS PLACED.
22         I BELIEVE THAT MS. WHEELER HAD HIDDEN MR. LIDDELL'S
23         PHONE IN THE SHEETS AND AND WAS MAKING THOSE CALLS
24         SECRETLY.
25              MR. LIDDELL, I BELIEVE, REALIZED IT ONCE THE 911

                                                              18

1      OPERATOR STARTED TO TALK, AND THERE IS A 911 HANGUP.
2      MR. LIDDELL WOULD NOT LET HER LEAVE THE UNIT.  I
3      MEAN LEAVE HIS ROOM.
4          AT ONE POINT, SHE TOOK A BREAK FOR IT, RAN DOWN
5      THE STAIRS, WHICH WAS HEARD BY OTHER PEOPLE LIVING
6      THERE, AND SHE HID IN A UTILITY CLOSET.  FIRST, I
7      SHOULD SAY SHE TRIED TO OPEN THE DOOR.  IT HAD THREE
8      DIFFERENT LOCKING MECHANISMS ON IT.  I HAVE BEEN TO
9      THE IDENTICAL UNIT.  I HAVE SEEN THESE DOORS.  SHE
10     WASN'T ABLE TO OPEN IT.  SHE WAS KNOWING THAT MR.
11     LIDDELL WAS RIGHT BEHIND HER.  SHE HID IN THE
12     CLOSET.
13         MR. LIDDELL COMES DOWN, AND MS. WHEELER -- AND,
14     YOU KNOW, I DON'T KNOW IF IT WENT TO TRIAL HOW IT
15     WOULD PLAY OUT.  IN MY ESTIMATION, IT IS A
16     COMBINATION OF ANGER AT WHAT HAS JUST OCCURRED AND
17     ALSO FEAR.  IN SEEKING A DIVERSION, SHE LIT A FIRE,
18     AND THE FIRE TOOK OFF.  AND, UNFORTUNATELY,
19     MR. HUGHES PERISHED IN THAT FIRE.  MR. LIDDELL GOT
20     OUT, AS DID THE OTHERS, AND MR. LIDDELL PRETTY MUCH
21     DISAVOWED ANY KNOWLEDGE OF THIS INCIDENT.  MS.
22     WHEELER WAS TOLD THAT MR. LIDDELL WOULD BE BROUGHT
23     TO JUSTICE FOR HIS ROLE, AND THAT'S NEVER OCCURRED.
24         IT IS STRIKING TO ME; WHAT GIVES ME HOPE IS THE
25     ARREST VIDEO OF MS. WHEELER IS REALLY STRIKING.  AND

```
1              I MEAN NO OFFENSE BY THIS, MS. WHEELER.  BUT MS.
2         WHEELER IN THE ARREST VIDEO, THERE IS BODY CAM.  MS.
3         WHEELER LOOKS -- SHE IS 37.  SHE LOOKS 20 YEARS
4         PASSED THAT IN THIS ARREST VIDEO, AND SHE LOOKS AS
5         FRAIL AND AS SKINNY AS, YOU KNOW, A STICK.
6              SINCE MS. WHEELER HAS BEEN IN JAIL, SHE HAS
7         GAINED HER WEIGHT BACK.  SHE IS NOT USING DRUGS.
8         YOU KNOW, SHE DROPPED THIS BOOK.  SHE DROPPED THIS
9         BOOK THAT I DIDN'T EVEN KNOW ABOUT, BUT IT IS A
10        PRAYER BOOK, PRAYERS THAT ROUTE DEMONS.
11             I VIEW HER AS A WORK -- I VIEW HER AS A WORK IN
12        PROGRESS, AND I JUST REALLY HOPE THAT SHE
13        UNDERSTANDS THAT THERE IS A PRICE TO PAY FOR HER
14        ACTIONS AND HER MISTAKES THAT HAVE OCCURRED, BUT I
15        HOPE SHE REALIZES THAT SHE IS A WORK IN PROGRESS, AS
16        WE ALL ARE.  AND I HOPE THAT SHE KEEPS THAT IN MIND
17        AND COMES OUT BETTER FOR IT.  I'M JUST GOING TO STOP
18        RIGHT THERE BEFORE I CARRY ON ANY MORE.
19             THE COURT:  ALL RIGHT.  THANK YOU.  I APPRECIATE
20        IT.  I MEAN, IT IS OBVIOUS FROM BOTH WHAT THE STATE
21        HAS PRESENTED AND WHAT THE DEFENSE HAS PRESENTED
22        THAT THIS IS BEYOND A TRAGIC SITUATION.  IT APPEARS
23        MS. WHEELER WAS LIVING A LIFE WHERE SHE REALLY HAD
24        NO TOOLS TO DEAL WITH THE CIRCUMSTANCES THAT SHE
25        FOUND HERSELF IN.  THOSE WERE BAD CIRCUMSTANCES.
```

```
 1              AND AS A RESULT OF HER ACTIONS, WHICH I APPRECIATE
 2              SHE IS HERE TO TAKE RESPONSIBILITY FOR, AN ENTIRELY
 3              INNOCENT VICTIM, GEORGE HUGHES, DIED AS A RESULT.
 4              AND I DO WANT TO HEAR FROM THE VICTIM'S FAMILY
 5              MEMBERS.  I BELIEVE, MS. MILES, YOU WANTED TO SAY
 6              SOMETHING OR PRESENT SOME SORT OF A STATEMENT?  SO
 7              IF YOU WOULD LIKE TO, GO AHEAD AND DO THAT.  IF YOU
 8              CAN UNMUTE YOUR AUDIO.
 9                   MS. MILES:  MORNING.  MY NAME IS DAZIA T. MILES,
10              AND I'M THE GREAT NIECE OF MR. HUGHES, AND I'M
11              ACTUALLY HERE TO DELIVER THE VICTIM IMPACT STATEMENT
12              ON BEHALF OF THE HUGHES FAMILY.
13                   THE UNEXPECTED LOSS OF MY UNCLE AND THE MANNER
14              IN WHICH IT HAPPENED HAS TAKEN A TOLL ON THE MENTAL
15              HEALTH AND THE SPIRIT OF MY FAMILY.  THAT IS
16              INEVITABLE, BUT TO DEPART THIS WORLD ALONE WHILE
17              EXPERIENCING EXTREME PAIN AND AGONY IS CRUEL AND
18              INHUMANE.  THERE ARE NO WORDS TO ACCURATELY EXPRESS
19              THE PAIN, ANGUISH, AND IMPETUS WE HAVE FELT SINCE
20              THE PAST FOUR YEARS SINCE THIS SENSELESS AND
21              AVOIDABLE DEATH OF MR. HUGHES.
22                   THE FAMILY WOULD LIKE YOU TO KNOW THAT GEORGE
23              WAS A VERY LOVING, KIND, SUBTLE, AND EASY-GOING MAN.
24              HE HAD A VERY LOUD AND HARDY LAUGH.  I REMEMBER HIS
25              LATE MOTHER AND A SMILE THAT WOULD MAKE YOU FEEL AS
```

```
 1              IF YOU HAD KNOWN HIM ALL YOUR LIFE.
 2                   HE WAS A LOVER OF A GOOD HOME-COOKED MEAL AND A
 3              GREAT BUSINESS PARTNER.  HE NEVER HAD ANY CHILDREN
 4              OF HIS OWN, BUT HE LOVED US AND TREATED ALL HIS
 5              NIECES AND NEPHEWS AS IF WE WERE HIS OWN.  OUR
 6              FAMILY FAVORITE SAYING IS THAT GEORGE NEVER MET A
 7              STRANGER, AND WE SAY THAT BECAUSE HIS KIND SPIRIT
 8              CREATED NURTURE AND CARRIED SO MANY ACQUAINTANCES,
 9              FRIENDSHIPS, AND RELATIONSHIPS THROUGHOUT HIS LIFE
10              AND EVEN IN DEATH.
11                   THE DEFENDANT HAS TAKEN FROM US THE LIFE, HUGS,
12              GUIDANCE, AND ADVICE, SENSE OF SECURITY, AND JUST
13              THE SIMPLE ACT OF TELLING MY UNCLE I LOVE YOU AND
14              MUCH MORE.  OUR FAMILY IS BROKEN, AND ON BEHALF OF
15              THE FAMILY OF GEORGE HUGHES, WE WOULD LIKE TO
16              EXPRESS OUR SINCEREST GRATITUDE TO THE FULTON COUNTY
17              COURT SYSTEM FOR ALLOWING US THIS OPPORTUNITY OF
18              EXPRESSION.
19                   THE COURT:  THANK YOU.  AND I'M SO SORRY FOR
20              YOUR LOSS.
21                   MR. SCHARDT:  JUDGE, THERE IS ONE MORE THING.
22              THE HUGHES FAMILY, THROUGH LEGAL COUNSEL, HAS ASKED
23              ME TO INQUIRE ABOUT A COUPLE THINGS FROM MS. WHEELER
24              ON THE RECORD, AND I DON'T HAVE A PROBLEM WITH IT.
25                   THE COURT:  ALL RIGHT.
```

```
1                    MR. SCHARDT:  MS. WHEELER -- AND WE DISCUSSED
2              THIS -- I THINK THE HUGHES FAMILY WOULD LIKE TO KNOW
3              IF GEORGE HUGHES WAS THE INTENDED VICTIM OR INTENDED
4              TARGET OF WHAT OCCURRED THAT DAY AND OF YOU LIGHTING
5              A FIRE?
6                   THE DEFENDANT:  NO.
7                   MR. SCHARDT:  OKAY.  DID YOU KNOW THAT
8              MR. HUGHES WAS EVEN IN THE UNIT THAT DAY?
9                   THE DEFENDANT:  NO.
10                   MR. SCHARDT:  OKAY.  DID YOU INTEND TO HARM
11              ANYONE?
12                   THE DEFENDANT:  NO, SIR.
13                   THE COURT:  ALL RIGHT.  THANK YOU.  MS. WHEELER,
14              IS THERE ANYTHING ELSE YOU WANT TO SAY TO THE COURT
15              OR TO THE VICTIM'S FAMILY?
16                   THE DEFENDANT:  I WOULD LIKE TO APOLOGIZE TO
17              THEM, TO THE CHILDREN.  I DIDN'T MEAN TO HURT
18              ANYBODY.  I'M SORRY.
19                   THE COURT:  THANK YOU.  I FIND THERE TO BE A
20              FACTUAL BASIS FOR THE PLEA IN EACH OF THESE
21              INDICTMENTS, AND I WILL ACCEPT THE PLEA IN EACH CASE
22              AS KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY
23              ENTERED.
24                    I DON'T HAVE A BREAKDOWN, MR. DAILEY, OF WHAT
25              THE SENTENCE IS FOR EACH COUNT THAT'S BEEN
```

```
1              NEGOTIATED.
2                   MR. DAILEY:  YES, YOUR HONOR.
3                   THE COURT:  I DON'T HAVE A GLOBAL ONE EITHER.
4                   MR. DAILEY:  YES.  WE WOULD REQUEST AS TO THE
5              17SC INDICTMENT THAT MS. WHEELER BE SENTENCED TO 20
6              YEARS TO SERVE AS TO THE VOLUNTARY MANSLAUGHTER, AND
7              THAT EACH OF THE ARSON COUNTS RUN CONSECUTIVE TO
8              COUNT ONE, CONCURRENT WITH EACH OTHER, FOR 5 YEARS
9              PROBATION, AND THAT THE OLDER INDICTMENT JUST RUN
10             CONCURRENT.
11                  THE COURT:  HANG ON JUST A SECOND.  GIVE ME A
12             SECOND.
13                  MR. DAILEY:  YES, YOUR HONOR.  I'M SORRY.
14                  THE COURT:  ALL RIGHT.  AND THE 15 INDICTMENT?
15                  MR. DAILEY:  YES.  YOUR HONOR, WE JUST ASK FOR
16             COUNT ONE TO BE 10 YEARS TO SERVE CONCURRENT WITH
17             THE 17SC CASE, AND COUNT TWO BE 5 YEARS TO SERVE
18             CONCURRENT, AND THE MISDEMEANOR 12 MONTHS.
19                  THE COURT:  AND YOU HAD MENTIONED HER COMPLETION
20             OF AN ARSON PROGRAM?  DO YOU WANT TO PUT SOMETHING
21             ABOUT THAT ON THE RECORD?
22                  MR. DAILEY:  YES, YOUR HONOR.  SO MR. SCHARDT
23             AND I HAVE DISCUSSED THAT.  OBVIOUSLY, THERE ARE
24             CURRENTLY -- I HAVE LOOKED THEM UP -- ARSON PROGRAMS
25             THAT SHE COULD TAKE, BUT WE DON'T WANT TO SENTENCE
```

1         HER TO A PARTICULAR PROGRAM AT THIS POINT.

2              THE COURT:  BECAUSE WHO KNOWS 20 YEARS FROM NOW?

3              MR. DAILEY:  MR. SCHARDT, I BELIEVE HE IS GOING

4         TO MAINTAIN CONTACT WITH MS. WHEELER, AND SO HE HAS

5         SAID THAT HE WILL ARRANGE THAT WHEN THE TIME COMES.

6              THE COURT:  ALL RIGHT.  THANK YOU.

7              SO I WILL SENTENCE IN ACCORD WITH THE

8         RECOMMENDATION THAT HAS BEEN NEGOTIATED.  SO IN THE

9         17SC153114 CASE ON THE REDUCED CHARGE OF VOLUNTARY

10        MANSLAUGHTER IN COUNT ONE, I SENTENCE YOU TO 20

11        YEARS TO SERVE.  COUNT TWO IS NOL-PROSSED.  COUNTS

12        THREE, FOUR, FIVE, AND SIX, WHICH ARE THE FOUR ARSON

13        CHARGES, THE SENTENCE ON THOSE IS 5 YEARS PROBATED,

14        CONSECUTIVE TO COUNT ONE, AND CONCURRENT TO EACH

15        OTHER.  AS A CONDITION OF THAT PROBATION, YOU ARE TO

16        SUCCESSFULLY COMPLETE AN ARSON PROGRAM WHICH WILL BE

17        IDENTIFIED IN THE FUTURE.

18             AND ON THE 16SC146855 CASE, YOU ARE SENTENCED TO

19        10 YEARS TO SERVE FOR CRIMINAL DAMAGE TO PROPERTY IN

20        THE SECOND DEGREE, 5 YEARS TO SERVE, CONCURRENT TO

21        COUNT ONE.  WILLFUL OBSTRUCTION, MISDEMEANOR, 12

22        MONTHS TO SERVE, ALSO CONCURRENT, AND THAT ENTIRE

23        SENTENCE TO BE SERVED CONCURRENTLY WITH THE 17SC

24        SENTENCE.

25             AND AS A PART OF THIS PLEA AGREEMENT, THE

25

```
 1          19SC165334 INDICTMENT IS BEING NOL-PROSSED.  ALL
 2          RIGHT.
 3               AND ONCE AGAIN, MY DEEPEST CONDOLENCES TO THE
 4          FAMILY OF MR. HUGHES.  AND, MS. WHEELER, YOU APPEAR
 5          TO BE GENUINELY SORRY AND WANTING TO MAKE A BETTER
 6          LIFE FOR YOURSELF AND WHICH YOU HAVE ALREADY DONE,
 7          APPEAR TO BE ON THE ROAD TO DOING THAT.  SO I WISH
 8          YOU LUCK IN COMPLETING THAT JOURNEY.  THANK YOU.
 9               MR. SCHARDT:  THANK YOU, JUDGE.  MS. ROSSER, I
10          HAVE APRIL 19TH, 2017.
11               THE COURT:  YES.  CREDIT FOR TIME SERVED.
12               THE LITIGATION MANAGER:  APRIL 19, 2017.
13               THE COURT:  ALL RIGHT.  THAT COMPLETES THIS
14          HEARING.
15                         (END OF PROCEEDINGS)
16
17
18
19
20
21
22
23
24
25
```

```
 1
 2                    C E R T I F I C A T E
 3
 4      STATE OF GEORGIA:
 5      COUNTY OF FULTON:
 6
 7          I, EVELYN PARKER, COURT REPORTER, DO HEREBY
 8      CERTIFY THAT THE FOREGOING 26 PAGES ARE A TRUE,
 9      COMPLETE, AND CORRECT COPY OF THE PROCEEDINGS TAKEN
10      DOWN BY ME IN THE CASE AFORESAID.
11
12          THIS CERTIFICATION IS EXPRESSLY WITHDRAWN AND
13      DENIED UPON THE DISASSEMBLY OR PHOTOCOPYING OF THE
14      FOREGOING TRANSCRIPT, OR ANY PART THEREOF, INCLUDING
15      EXHIBITS, UNLESS SAID DISASSEMBLY OR PHOTOCOPYING IS
16      DONE BY THE UNDERSIGNED OFFICIAL COURT REPORTER AND
17      ORIGINAL SIGNATURE AND SEAL IS ATTACHED THERETO.
18
19          THIS, THE 4TH DAY OF MAY, 2021.
20
21
22              /S/          EVELYN PARKER
23                     _____
24                     EVELYN PARKER,
                       OFFICIAL COURT REPORTER
25                     CCR-B-772, RPR, CM
```