## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| KINSALE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | 1:21-cv-03214-LMM |
| v. | ) | |
| | ) | |
| VENETIAN HILLS APARTMENTS, | ) | |
| LLC, JOHN MAUGHAN, and MARIE | ) | |
| HUGHES, as Authorized Administrator | ) | |
| for the Estate of GEORGE HUGHES, | ) | |
| | ) | |
| Defendants. | | |

## DEFENDANT HUGHES' BRIEF IN OPPOSITION TO PLAINTIFF
## KINSALE INSURANCE CO.'S MOTION FOR SUMMARY JUDGMENT

### I.    Introduction

George Hughes, died in a fire on March 15, 2017. He was in his bedroom at Venetian Hills Apartments in Atlanta, Georgia. The administrator of George Hughes' estate, Marie Hughes ("Hughes"), brought a wrongful death tort action against Venetian Hills Apartments, LLC ("Venetian Hills").

The year before the fire, Venetian Hills bought a commercial general liability insurance policy (the "Policy") from Kinsale Insurance Company ("Kinsale"). The sole issue in this declaratory judgment action is whether Kinsale owes a duty to defend a lawsuit against its policyholder, Venetian Hills. Dkt. No. 41 at 10 (dismissing without prejudice Kinsale's claim regarding its duty to indemnify for

lack of subject matter jurisdiction). Kinsale has filed for summary judgment, arguing that two exclusions in the Policy exclude coverage: a "failure to maintain" exclusion and an "assault and battery" exclusion. Dkt. No. 83-1 at 3.

Kinsale's motion does not address three fundamental issues with its policy language. First, Kinsale's argument – that there is no coverage for a claim arising out of a failure to maintain – ignores that the "failure to maintain" exclusion expressly states that "all other terms and conditions of the policy remain unchanged," which would include a specific policy endorsement that unequivocally states that the insurance applies to and provides coverage for harm "arising out of the ownership, *maintenance* or use" of Venetian Hills Apartments premises at 1829 Campbellton Rd, Atlanta, Georgia. Thus, at best, Kinsale's raises an ambiguity between the language of the Policy and an exclusion, and any such ambiguity must be construed in favor of coverage for Venetian Hills under venerable principles of Georgia law governing insurance policy interpretation.

Second, Kinsale's argument that the "failure to maintain" exclusion applies is based upon picking two terms out of the exclusion's list of adjectives in its operative language and claiming that those terms, read in isolation, bar coverage. Similarly, Kinsale incorrectly characterizes the cause of action in Hughes' complaint to force it into the "failure to maintain" exclusion. Neither tactic is consistent with Georgia law of insurance policy interpretation.

Third, Kinsale's motion also spends numerous pages trying to use extrinsic evidence to argue that the "assault and battery" exclusion applies. That is not how the duty to defend is determined under Georgia law or Kinsale' Policy. But even if extrinsic evidence were considered, Kinsale skips across the essential issue that a person setting a fire to property with no knowledge of George Hughes' presence and no intent to harm does not fall within the plain meaning of the exclusionary language of an "assault, battery, harmful or offensive contact or threat." Having chosen the language of its exclusion, Kinsale is not free to redefine it to broadly cover conduct that does not fit the exclusion.

## II.   The applicable Georgia law on policy interpretation and an insurer's duty to defend.

### A.   Insurance policies are read as a layperson would read them, and exclusions and ambiguous policy terms are strictly construed against the insurer.

In resolving disputed language in insurance policies, the court must first look to the text. *See Ga. Farm Bureau v. Smith*, 784 S.E.2d 422, 424 (Ga. 2016). An insurance policy "should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." *State Farm Mut. Auto. Ins. Co. v. Staton*, 685 S.E.2d 263, 265 (Ga. 2009) (quoting *Cont'l Ins. Co. v. Am. Motorist Ins. Co.*, 542 S.E.2d 607, 610 (Ga. App. 2000)). "Exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to

define any limitations on that coverage in *clear and explicit terms*." *Alley v. Great Am. Ins. Co.,* 287 S.E.2d 613, 616 (Ga. App. 1981) (emphasis added).

"Ambiguity in an insurance contract is duplicity, indistinctiveness, uncertainty of meaning of expression, and words or phrases which cause uncertainty of meaning and may be fairly construed in more than one way." *Meyers*, 548 S.E.2d 67, 69 (Ga. App. 2001). Under Georgia law, "[w]here a term of a policy of insurance is susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured." *Id.* at 69 ("Exceptions and exclusions to coverage must be narrowly and strictly construed against the insurer and liberally construed in favor of the insured to afford coverage.").

**B. An insurer's duty to defend is only excused if the allegations of the complaint unambiguously exclude coverage under the policy.**

In addition to the rules of policy interpretation, Georgia has well-defined rules concerning and insurers duty to defend its policyholder from lawsuits. It is an exacting standard that goes well beyond Kinsale's vague two-sentence description.

Whether an insurer has a duty to defend is determined by comparing the allegations of the complaint with the language of the policy. *See Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997); *Hoover v. Maxum Indem. Co.*, 730 S.E2d 413, 418 (Ga. 2012). It is *only* where the complaint sets for true factual allegations showing no coverage that the suit is one for which liability

insurance coverage is not afforded and for which the insurer need not provide a defense. *See Penn-Am. Ins.* at 376 (emphasis added) (also stating that to excuse the duty to defend the complaint must *unambiguously* exclude coverage under the policy). If the complaint shows "potential" or "arguable" coverage, the insurer has a duty to defend. *See id.*

Furthermore, the insurer is obligated to defend where the allegations of the complaint against the insured are ambiguous or incomplete with respect to the issue of insurance coverage. *Id.* In the Court of Appeals' opinion in *Penn-American* (which was affirmed by the Supreme Court), the court rejected the insurer's argument that facts extrinsic to the complaint and policy language are considered to determine whether a duty to defend exists. *Penn-Am. Ins. Co. v. Diabled Am. Veterans, Inc.*, 481 S.E.2d 850, 852 (Ga. App. 1997), *aff'd*, 490 S.E.2d 374 (Ga. 1997).

**III.    The allegations of the Hughes lawsuit trigger Kinsale's duty to defend.**

**A.    Kinsale's Policy conditions its duty to defend on the allegations of Hughes' complaint, without considering extrinsic evidence.**

As previously recognized by this Court, the language of Kinsale's Policy is consistent with Georgia law on the duty to defend. Dkt. 41 at 7. Under the terms of the Kinsale Policy, the allegations in the Hughes complaint determine whether the insurer has a duty to defend. Under the terms of the Kinsale Policy, the allegations in the Hughes complaint determine whether the insurer has a duty to defend. Dkt. No. 1-6 at 5, 19 (Exhibits "A" and "B" to this Brief) (emphasis added).

**B.      The allegations of Hughes' complaint fall within the Policy's insuring agreement and Designated Premises Endorsement.**

### 1.      *The allegations in the underlying lawsuit.*

Hughes' amended complaint seeks damages against Venetian Hills because of the death of George Hughes in a fire at the apartment complex. *See* Dkt. No. 1-5 at ¶¶ 2, 3, 4, 5, 37, 38, and 39. The complaint alleges that during the morning hours of March 15, 2017, a fire started and spread throughout the apartment complex at 1829 Campbellton Rd, Atlanta, Georgia 30311. *See* Dkt. No. 1-5 at ¶¶ 2, 10, and 14. The complaint also alleges that the fire trapped George Hughes in his apartment unit where he suffered greatly by burning to death. *See* Dkt. No. 1-5 at ¶¶ 2, 13, and 15.

Venetian Hills is alleged to have operated, controlled, and managed the apartment complex. Dkt. No. 1-5 at ¶ 12. The complaint allegations against Venetian Hills include that Venetian Hills did not have proper fire detection and fire suppression equipment in the apartment units as required by applicable codes and regulations, including smoke detectors, fire alarms, and fire suppression equipment. Dkt. No. 1-5 at ¶ 2, 22. Additional allegations include that Venetian Hills: failed to inspect, discover, and report hazardous conditions; failed to maintain a policy, procedure, or system of investigating, reporting, and warning of safety hazards to its invitees and therefore negligently maintained the premises; and negligently failed to supervise, hire, train, and retain its employees. Dkt. No. 1-5 at ¶¶ 25, 26, 28, and 29. Venetian Hills' negligence was alleged to have been in violation of O.C.G.A. § 51-

3-1 by failing to use the ordinary care to keep the premises safe, and in violation of O.C.G.A. § 44-7-13. Dkt. No. 1-5 at ¶ 31.

## 2. *The Kinsale Liability Policy*

Kinsale created and sold Venetian Hills an insurance policy that is composed of the Insurance Services Office, Inc., Commercial General Liability Coverage Form (CG00011001), plus additional nonstandard endorsements and exclusions. Dkt. No. 1-6. The Policy contains an endorsement titled "Limitation of Coverage to Designated Project or Premises" ("Designated Premises Endorsement"). The pertinent part of the endorsement is pasted below:

| | SCHEDULE | |
|---|---|---|
| **Premises:** | | |
| 1 | 1829 Campbellton Rd, Atlanta, GA 30311 | |
| 2 | 1390 Piedmont Rd, Atlanta, GA 30305 | |
| | | |
| **Projects:** | | |

**(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this policy)**

This insurance applies only to "bodily injury", "property damage" and "personal and advertising injury" arising out of:

   1.   The ownership, maintenance or use of the premises shown in the Schedule above;

   2.   The project shown in the Schedule above.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Dkt. No. 1-6 at 21; also Exhibit "C" to this Brief (emphasis added).

Kinsale does not dispute that the allegations of the complaint meet the requirements under the insuring agreement and Designated Premises Endorsement. Kinsale's motion for summary judgment is based on two exclusions – one titled

"Exclusions - Eviction and Failure to Maintain" and another titled "Exclusion - Assault and Battery."

## IV.   The exclusions in the Eviction and Failure to Maintain Endorsement do not bar coverage.

Kinsale's brief and statement of facts fail to include all the pertinent policy language of the "Eviction and Failure to Maintain" endorsement. A copy of the complete endorsement is attached to this brief as Exhibit "D." *See also* Dkt. No. 1-6 at 51. There are three exclusions in the endorsement: one relating to violations of specified statutes; one relating to failure to maintain any premises in the described condition; and one relating to eviction.

Kinsale mentions the first exclusion in passing and distorts its language through selective quoting. But Kinsale presents no argument that the first exclusion is the basis for its motion. *See* Dkt. No. 83-1 at 5-6. Instead, Kinsale focuses on the second exclusion. *See* Dkt. No. 83-1 at 6-11. But even if Kinsale were to claim that the first numbered exclusion supports its motion, that argument would fail. The plain language of the first exclusion shows that it concerns violations of California codes, Housing and Urban Development laws, rent stabilization laws, subsidized program rules or regulations, and rules or regulations pertaining to those specifically identified laws. Dkt. No. 1-6 at 51. None of the laws identified in the first exclusion are alleged in the underlying complaint against Venetian Hills. The first exclusion in

the endorsement does not apply on its face. The same is true for the third exclusion

concerning eviction.

The language of the second exclusion ("Failure to Maintain exclusion") is

pasted below:

Dkt. No. 1-6 at 51; *see also* Exhibit "D" (emphasis added).

### A.   The Policy is ambiguous when the Failure to Maintain exclusion is construed with the Designated Premises Endorsement.

The policy insuring agreement states that Kinsale will pay those sums that the

insured becomes legally obligated to pay as damages because of "bodily injury" to

which the insurance applies. Dkt. No. 1-6 at 5; Ex. A. The insuring agreement also

states that Kinsale will have the duty to defend the insured against any "suit" seeking

those damages. *Id.*

And the Designated Premises Endorsement states:

> This insurance applies only to "bodily injury", "property damage" and "personal and advertising injury" arising out of:
>
> 1.   The ownership, maintenance or use of the premises shown in the Schedule above;

Dkt. No. 1-6 at 21; Ex. C (emphasis added).

Kinsale argues coverage is barred by the Failure to Maintain exclusion:

> 2.   Any failure to maintain any premises in, or restore any premises to a safe, sanitary, healthy, habitable and tenantable condition;
>
> 3.   Eviction of, threat to evict or failure to evict any tenant or occupant of any property.
>
> ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Dkt. No. 1-6 at 51 (emphasis added).

To the extent the Failure to Maintain exclusion applies at all (which Hughes

disputes), under its plain language the terms and conditions of the Designated

Premises Endorsement are "unchanged." Dkt. No. 1-6 at 51 (Ex. D). That is, there

is no change to the broad provision of coverage for "bodily injury" arising out of the

"maintenance" of the Venetian Hills premises. Dkt. No. 1-6 at 21 (Ex. C).

The bottom of the Designated Premises Endorsement also has the same

language stating that "**ALL OTHER TERMS AND CONDITIONS OF THE**

**POLICY REMAIN UNCHANGED.**" *Id.*  And the Designated Premises

Endorsement also does not mention the Failure to Maintain exclusion or otherwise state that the endorsement was subject to or limited by it or any exclusions in the Policy. *Id.* The language appearing at the bottom of the endorsement and exclusion creates ambiguity in the Policy. At least one other federal court has ruled that Kinsale's use of this exact language at the bottom of each endorsement creates ambiguity in the policy that must be construed in favor of coverage. *See Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, LLC*, 5:22-cv-0048, 2023 WL 2756988, at *10-13 (W.D. Tex. Mar. 31, 2023) (finding the policy provided coverage and that Kinsale had a duty to defend). This Court should follow the well-reasoned decision of the Texas federal court issued earlier this year, which is wholly consistent with Georgia law. When conflicting endorsements create ambiguity, a court construes the policy in favor of coverage. *See Meyers*, 548 S.E.2d 67, 68-69 (Ga. App. 2001).

To be clear, this is not a situation where a later endorsement changes coverage under an existing policy. The top of the Designated Premises Endorsement and Eviction and Failure to Maintain endorsement show effective dates that are the same as the policy period on the declarations. Dkt. No. 1-6 at 1, 21(Ex.C), and 51(Ex D). The entirety of the Policy came into existence at the same time.

Additionally, policy interpretation principles support that the Designated Premises Endorsement should control over the exclusion. The endorsement contains a "Schedule" that has been completed in a custom manner for the specific

policyholder, Venetian Hills. *See Auto-Owners Ins. Co. v. Barnes*, 373 S.E.2d 217, 219 (Ga. App. 1988) (applying rule of contract construction that a limited or specific provision will prevail over one that is more broadly inclusive); *see also Aetna Life & Cas. Co. v. Charles S. Martin Distrib. Co.*, 169 S.E.2d 695 (Ga. App. 1969) (typewritten portion of insurance policy which specified coverage of personal property prevailed over printed clause which provided that personal property was inapplicable) and O.C.G.A. § 13–2–2(7) ("When a contract is partly printed and partly written, the latter part is entitled to most consideration.").

### B.   The Failure to Maintain exclusion does not apply.

Kinsale sweepingly (and incorrectly) argues that the exclusion broadly applies to "any lawsuit with any connection whatsoever to failure to maintain a premises in a safe and habitable condition." Dkt. No. 83-1 at 7. Kinsale goes even further and argues that the exclusion applies by its plain language because Hughes sued Venetian Hills for "failing to maintain the Premises in a safe condition." Dkt. No. 83-1 at 5. But that is not what the Policy says.

The policy language in question states "[a]ny failure to maintain any premises in, or restore any premises to *a safe, sanitary, healthy, habitable **and** tenantable condition.* Dkt. No. 1-6 at 51 (Ex. D) (emphasis added). While the words "safe" and "safety" appear in Hughes' complaint (as any reasonable person would expect in a negligence complaint), there is no mention whatsoever of some failure on the part

of Venetian Hills to maintain the property in a "sanitary, healthy, habitable and tenantable condition."  *See* Dkt. No. 1-5.

### 1.     *The failure to maintain exclusion is ambiguous.*

Kinsale's argument that the exclusion applies based solely upon a "failure to maintain the premises in a safe condition" completely ignores the presence of the term "and" in the exclusion. The use of "and" in the exclusion creates a conjunctive list. *All* the conditions stated in the list are required for the exclusion to apply. *See e.g.*, Conjunctive/disjunctive canon, Black's Law Dictionary (11th ed. 2019) ("The doctrine that in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives.").

Kinsale's argument based upon picking the term "safe" out of the exclusionary language is also inconsistent with Georgia law on insurance policy interpretation. The word "safe" must be interpreted and understood in relation to the other words surrounding it and not in isolation. *See Anderson v. Se. Fidelity Ins. Co.*, 307 S.E.2d 499, 500 (Ga. 1983) ("Words, like people, are judged by the company they keep."). The term "safe" in the exclusion must be determined to have a meaning related to the meaning of the other adjectives in the sentence. The legal definition of "habitable" includes "good enough for people to live in; providing a minimal level of safety and comfort so as to make for passable living conditions." Habitable, Black's Law Dictionary (11th ed. 2019). And the general definition is "capable of

being lived in; suitable for habitation." Habitable, Merriam-Webster.com Dictionary, accessed 10/30/2023; *see also* Sanitary, Merriam-Webster.com Dictionary, accessed 10/30/2023 (defining "sanitary" as "characterized by or readily kept in cleanliness"). Reading the exclusion as a layperson would read it, the usual and common meaning of the entire phrase would include conditions in a dwelling like waterproofing, weather protection, hot and cold water, working heat, lighting, ventilation, and keeping the dwelling clean and free from sewage and garbage. Any of those conditions could endanger the health, safety, and welfare of the public and residents.

Kinsale's contention that it does not owe coverage for any failure to maintain the premises in a "safe" condition is nearly so broad as to be limitless. Such an overbroad interpretation is contrary to the plain text of the exclusion and the Policy. To accept Kinsale's argument would render much of the coverage under the Policy a nullity. Virtually everything that can cause bodily injury that arises out of the "ownership, maintenance or use" of a premises is also something that is not safe condition. *See Isdoll v. Scottsdale Ins. Co.,* 466 S.E.2d 48, 50-51 (Ga. App. 1995) (discussing illusory coverage); *see also Barrett v. National Union Fire Ins. Co. of Pittsburgh*, 696 S.E.2d 326, 330 (Ga. App. 2010) (recognizing that Georgia public policy disfavors insurance provisions that permit the insurer, at the expense of the insured, to avoid the risk for which the insurer has been paid).

At bottom, Hughes' complaint must *unambiguously* exclude coverage to

under the Failure to Maintain exclusion for Kinsale to be excused from its duty to defend. *See Penn-Am. Ins. Co.,* 490 S.E.2d at 376. That is not the case here.

### 2. *Kinsale misinterprets Georgia law on the implied warranty of habitability*.

Kinsale's leading argument is that the Failure to Maintain Exclusion "mirrors the general definition for the warranty of habitability," which it asserts has been adopted by Georgia. Kinsale cites to one case as support for its assertion: *Thompson v. Crownover*, 381 S.E.2d 283 (Ga. 1989). Dkt. No. 83-1 at 6. Kinsale also claims that the implied warranty of habitability was codified by Georgia in O.C.G.A. § 44-7-13. Kinsale is incorrect.

As recognized by the Northern District of Georgia, "[a]lthough Georgia courts occasionally refer to an "implied warranty of habitability," the cause of action has never been specifically adopted." *Hall v. U.S. Dep't of Hous. & Urban Dev.*, 1:05-cv-1861, 2005 WL 8155794, at *2 (N.D. Ga. Nov. 9, 2005) ("The opinions most often cite the Restatement of Law 2d, Property, for the proposition that landlords should be liable for harm to a tenant arising from a condition that violates *either* an implied warranty of habitability *or* housing codes, and then evaluate whether housing codes were violated, without further discussion of an implied warranty.") (citing *Thompson v. Crownover*, 381 S.E.2d 283, 285 (Ga. 1989) and *Johnston v. Ross*, 590 S.E.2d 386, 392 (Ga. App. 2003)) (emphasis added).

Kinsale overlooks that the Restatement provision that it relies upon plainly speaks of two different bases for liability of a landlord: an implied warranty of habitability *or* a duty created by statute or administrative regulation. *See* Restatement (Second) of Property, Land. & Ten. § 17.6 (1977); *see also* comment (a). And Reporter's note 7 of the Restatement section notes that "[u]nlike the statutes in other jurisdictions, the applicable statutes in Georgia and Louisiana explicitly state that the landlord is liable in tort for injuries resulting from the violations of statutory provisions, so that there has never been any doubt in these states as to the tort liability of the landlord." Restatement (Second) of Property, Land. & Ten. § 17.6 (1977).

Georgia law provides a cause of action against the landlord for breach of housing codes and other legislation. *Thompson v. Crownover*, 381 S.E.2d 283, 285 (Ga. 1989). A claim for breach of state and local regulations is a tort action. *Johnston v. Ross*, 590 S.E.2d 386, 387-88 (Ga. App. 2003). Hughes' complaint includes a cause of action against Venetian Hills for breach of fire codes, and not a breach of an implied warranty of habitability.

The Hughes complaint does not allege that Venetian Hills failed to maintain the property in a "safe, sanitary, healthy, habitable, and tenantable condition." And it does not allege that Venetian "breached its statutory duty of habitability." In an attempt to get around the actual allegations of the Complaint, Kinsale makes a straw man argument: Kinsale mischaracterizes Hughes' action against Venetian Hills as

one for breach of the implied warranty habitability, claiming that Georgia has adopted that cause of action and codified it. Therefore, Kinsale claims, Hughes' cause of action for breach of the warranty of habitability falls within the language of its exclusion, which "mirrors the warranty of habitability." The argument should be rejected.

Furthermore, Kinsale's legally incorrect warranty of habitability argument in and of itself supports that its interpretation of the policy language is not the "usual and common meaning" of the language as it would be read by a layperson. The Failure to Maintain exclusion does not apply to Hughes' suit against Venetian Hills.

## V.    The Assault and Battery Exclusion does not bar coverage.

As with the other exclusion, Kinsale's brief and statement of facts fail to include all the pertinent policy language of the "Assault and Battery" exclusion. A copy of the complete endorsement is attached to this brief as Exhibit E. *See also* Dkt. No. 1-6 at 40. The operative language of the exclusion states:

> **COMMERCIAL GENERAL LIABILITY COVERAGE**
>
> The following exclusion is added to this policy:
>
> This insurance does not apply to any claim or "suit" for "bodily injury," "property damage" or "personal and advertising injury" arising out of, related to, or, in any way involving any actual or alleged assault, battery, harmful or offensive contact, or threat, whether provoked or unprovoked. This exclusion includes but is not limited to:

Dkt. No. 1-6 at 40 (Ex. E) (emphasis added).

**A.    When properly viewed with reference only to the Hughes' Complaint and the Policy, the Assault and Battery exclusion does not excuse Kinsale from its duty to defend.**

The Hughes complaint does not include any allegations concerning an assault, battery, harmful or offensive conduct, or threat. Dkt. No. 1-5. Kinsale does not even attempt in its motion to establish that the allegations of the complaint show no coverage under the assault and battery exclusion. Instead, Kinsale argues that it has no duty to defend based upon extrinsic evidence that it claims shows Kamara Wheeler started the fire through arson. The Court needs to go no further to determine that Kinsale has not met its burden with respect to its duty to defend.

**B.    Even if extrinsic evidence can be considered, the policy language doesn't support that arson is excluded under the Assault and Battery Exclusion.**

### *1.    The Assault and Battery Exclusion language.*

Kinsale argues, repeatedly, the Policy has an assault and battery exclusion and that the fire was caused by arson. But any argument demonstrating an actual link between these two things is harder to find. The Assault and Battery Exclusion refers to "assault, battery, harmful or offensive contact, or threat." None of these terms are defined in the Policy. Accordingly, the terms are given their ordinary and customary meaning. Courts look to dictionaries to determine the for the plain, ordinary, and popular sense of unambiguous terms. *See, e.g.*, *Auto-Owners Ins. Co. v. Ovation Condo. Ass'n, Inc.*, 1:21-cv-05326-LMM, 2023 WL 6278919, at *4 (N.D. Ga. Aug.

18, 2023).

The legal definition of "assault" includes "[t]he threat or use of force on another that causes that person to have a reasonable apprehension of imminent harmful or offensive contact; the act of putting another person in reasonable fear or apprehension of an immediate battery by means of an act amounting to an attempt or threat to commit a battery." The general definition is: "a violent physical or verbal attack." Assault, Merriam-Webster.com, accessed 10/26/2023.

The legal definition of "battery" includes [t]he nonconsensual touching of, or use of force against, the body of another with the intent to cause harmful or offensive contact." Battery, Black's Law Dictionary (11th ed. 2019); *see also Harris v. State*, 126 S.E.2d 693, 698 (Ga. App. 1962) (recognizing the definition of battery as the "unlawful touching or striking of the person of another by the aggressor himself or by any substance put in motion by him, done with the intention of bringing about a harmful or offensive contact or apprehension thereof which is not legally consented to by the other and not otherwise privileged"). "Because assault and battery are intentional torts, they require that the tortfeasor intend to inflict injury." *See Houston Specialty Ins. Co. v. Five Paces Inn Co.*, 1:19-cv-03319, 2019 WL 9633224, at *8 (N.D. Ga. Dec. 19, 2019), *aff'd*, 823 Fed. Appx. 897 (11th Cir. 2020).

Kinsale does not argue that an assault and battery would be read by a layperson to include arson. The ordinary dictionary definitions of "arson" relate to

the setting fire to property. The legal definition of "arson" includes "the intentional and wrongful burning of someone else's property (as to destroy a building) or one's own property (as to fraudulently collect insurance)." Arson, Black's Law Dictionary (11th ed. 2019). And the general definition of arson is "the illegal burning of a building or other property; the crime of setting fire to something." Arson, Merriam-Webster.com, accessed 10/26/2023.

Kinsale argues that the exclusion applies "so long as there is 'harmful or offensive contact.'" Again, Kinsale cherry-picks out a term from an exclusion and argues that it applies in isolation. And, again, that is incorrect. The words "harmful or offensive contact" must be interpreted and understood in relation to the other words surrounding it. *See Anderson v. Se. Fidelity Ins. Co.*, 307 S.E.2d 499, 500 (Ga. 1983). And "it is a well-recognized rule . . . that when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named; unless, of course, there is something to show that a wider sense was intended." *Ga. Baptist Children's Homes & Family Ministries, Inc. v. Essex Ins. Co.*, 427 S.E.2d 798, 800 (Ga. App. 1993).

Accordingly, the term "harmful or offensive contact" is construed to refer to things of the same kind as assault and battery. And the ordinary dictionary definitions of "assault" and "battery" support this reading because "harmful or offensive

contact" is part of the common definitions of assault and battery. The act of arson does not meet these definitions. Arson does not mean a touching or use of force against the body of another. Nor does the ordinary meaning of "arson" include the necessary intent to inflict injury that is required for assault and battery.

And at least one court in New York has recognized exactly this point in a similar case. In *20-35 86th St. Realty, LLC v. Tower Ins. Co. of New York*, a building owner sought a judgment declaring that defendant had an obligation to defend and indemnify it in connection with a building fire that left several people dead or injured. 106 A.D.3d 478, 479 (N.Y. App. Div. 2013). The insurer disclaimed coverage under the liability policy by attempting to invoke the assault and battery exclusion and arguing that the plaintiff's claims involved bodily injury arising from an assault or battery committed by an accused arsonist. *Id.* The court explained the correct analysis of the issue:

> Civil assault and battery are intentional acts, and the assault offenses with which the accused arsonist is charged do not include the intent to harm a specific individual . . . Thus, assuming that the insurance policy exclusion is triggered by civil, rather than criminal, assault or battery, the critical inquiry is whether the accused arsonist, in allegedly causing the fire, intended to harm any occupant of the building. Although the determination of the criminal action is therefore not necessary to a determination of the application of the exclusion, the criminal trial may shed light on the accused arsonist's motives, including whether he intended to harm anyone inside the building. In any event, the criminal trial may enable defendant to obtain access to evidence and witnesses that will assist in determining whether the exclusion applies.

*Id.* at 479-80 (citations omitted).  In other words, the court found a question of fact existed as to whether the arsonist intended to harm any of the occupants or even knew of they were there.[1]

And in this case, the extrinsic evidence relied upon by Kinsale does not establish that Ms. Wheeler had the required intent to inflict injury that is required for an assault or battery. In the plea hearing transcript, interestingly attached to Kinsale's motion, Ms. Wheeler testified that she did not know Mr. Hughes was in the apartment unit and that she did not intend to harm anyone. Dkt. No. 83-1 at 27. Moreoer, Ms. Wheeler did not plead guilty to any crime that requires or establishes an intent to commit assault or battery. Ms. Wheeler's guilty plea and statements at the plea hearing are the proper evidentiary admissions that are subject to consideration *if* the Court were to consider extrinsic evidence, which it should not. *See id.*, and Dkt. No. 81-6 at 2. But, in all events, Kinsale cannot base its coverage obligation on accusations in a charging instrument that were not proven and were superseded by the guilty plea that did not include any crimes that require intent to

---

[1] *See also White v. Nat'l Specialty Ins. Co.,* No. 1:13-cv-2319, 2014 WL 3871351, at *2 n.2 (E.D.N.Y. Aug. 6, 2014). In *White*, the court addressed an assault and battery exclusion in a case involving a bar patron beaten by an unknown assailant, explaining that the injuries stemmed from an intentional assault. *Id.* The court distinguished *220-35 86th Street Realty* because a "question of fact existed as to arsonist's knowledge that the building he burned was occupied, and thus whether he intended to harm the occupants." *Id.* This case is directly analogous to *220-35 86th Street Realty*, and wholly distinguishable from intentional harm cases like *White*.

commit assault or battery. *See id.*

> ## 2. *Kinsale has not cited to a single case supporting its claim that arson is excluded under assault and battery exclusion.*

Kinsale cites to six shooting cases and one stabbing case as support that Georgia courts routinely enforce assault and battery exclusions. These are obviously distinguishable and do not support its claim that arson is excluded. Kinsale then overreaches in claiming "[w]hether an assault and battery exclusion applies to arson is a matter of first impression in Georgia, but *other jurisdictions have clearly held it applies*." Dkt. 83-1 at 12 (emphasis added). The only case Kinsale cites for this proposition, *Mount Vernon Fire Ins. v. Oxnard Hospital Enter., Inc.*, 219 Cal. App. 4th 876 (2013), does **not** hold that an assault and battery exclusion applies to arson. In fact, the word arson does not even appear in the opinion. *Mount Vernon* is plainly distinguishable because, as described by Kinsale, it involved a person intentionally throwing a glass of flammable liquid on another person and setting them on fire. *That **is** an assault and battery*. The facts of *Mount Vernon* involve the use of force on the body of another and a clear intent to cause harmful or offensive contact. The same is true for Kinsale's attempt to rely on cases involving the shooting of a bullet at someone, which is inherently an act of assault. That Kinsale must stretch to cite wholly distinguishable cases involving gunfire and the intentional igniting of a person – not property (*i.e.* arson) – highlights the fallacy of their arguments about the assault and battery exclusion.

**VI.   Both exclusions are ambiguous because of their use of the defined term "suit."**

The Policy defines "suit" as: "a civil proceeding in which damages because of "bodily injury" . . . *to which this insurance applies* are alleged." Dkt. No. 1-6 at 19 (Ex. B) (emphasis added). Under the policy insuring agreement, the duty to indemnify and duty to defend are based upon whether the specified harm (*i.e.*, bodily injury) is covered. Dkt. No. 1-6 at 5 (Ex. A).

But Kinsale's exclusions do not specify that the insurance does not apply to a specified kind of "bodily injury." Instead, Kinsale's exclusions purport to exclude a certain kind of claim or "suit." Dkt. No. 1-6 at 40, 51 ("This insurance does not apply to any claim or "suit" for…"). Kinsale's use of "suit" in the exclusions results in ambiguity. When read with the definition of "suit," the exclusion is circular – how can something that the Policy has already defined as within the scope of the Policy be excluded?

An example of how Kinsale could have properly written an exclusion consistent with the insuring agreement is in the Contractual Liability exclusion which excludes "Bodily Injury . . . for which the insured is obligated to pay damages by reason of [excluded conduct]." Dkt. No. 1-6 at 61. The ambiguity created by Kinsale's drafting choices must be construed against it and in favor of coverage. *See Meyers*, 548 S.E.2d at 69.

## VII.  Conclusion

For the reasons discussed above, Kinsale's motion for summary judgment should be denied.

## VIII.  Request for summary judgment under Fed. R. Civ. P. 56(f)(1).

There are no material facts in dispute as to the duty to defend and Kinsale's claims fail as a matter of law. Pursuant to Fed. R. Civ. P. 56(f)(1), Defendant Hughes requests the Court grant summary judgment for all nonmovants.

Respectfully submitted this the 1st day of November, 2023.

**SHIVER HAMILTON CAMPBELL, LLC**

*/s/ Darrell Hinson*
JEFF P. SHIVER
Georgia Bar No. 001303
DARRELL W. HINSON
Georgia Bar No. 356789
*Attorneys for Defendant Marie Hughes as*
*Authorized Administrator for the Estate of*
*George Hughes*

3490 Piedmont Road, Suite 640
Atlanta, Georgia  30305
jeff@shiverhamilton.com
darrell@shiverhamilton.com

## **LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1(C). It is prepared in Times New Roman 14-point font.

Respectfully submitted this the 1st day of November, 2023.

**SHIVER HAMILTON CAMPBELL, LLC**

*/s/ Darrell W. Hinson*
DARRELL W. HINSON
Georgia Bar No. 356789

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this date served via email **Defendant Marie Hughes' Brief in Opposition to Kinsale Insurance Company's Motion For Final Summary Judgment** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following:

Andres Cordova, Esq.
Clyde & Co. US LLP
1221 Brickell Avenue
Suite 1600
Miami, Florida 33131

Matthew G. Moffett, Esq.
Matthew R. Del Campo, Esq.
Gray, Rust, St. Amand, Moffett &
Brieske, LLP
950 East Paces Ferry Road, NE
Suite 1700
Atlanta, Georgia 30326

Respectfully submitted this the 1st day of November, 2023.

**SHIVER HAMILTON CAMPBELL, LLC**

*/s/ Darrell W. Hinson*
DARRELL W. HINSON
Georgia Bar No. 356789

3490 Piedmont Road, Suite 640
Atlanta, Georgia  30305
jeff@shiverhamilton.com
darrell@shiverhamilton.com