IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KINSALE INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VENETIAN HILLS APARTMENTS, ) <br> LLC, JOHN MAUGHAN, and MARIE ) <br> HUGHES, as Authorized Administrator ) <br> for the Estate of GEORGE HUGHES, ) <br> ) <br> Defendants. ) | CIVIL ACTION FILE NO: <br> 1:21-cv-03214-LMM <br> <br> **DISPOSITIVE MOTION** |

**KINSALE INSURANCE COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR FINAL SUMMARY JUDGMENT**

KINSALE INSURANCE COMPANY ("Kinsale"), pursuant to Fed. R. Civ. P. 56 and LR 56, NDGa., files this reply brief in support of its motion for final summary judgment [Dkt. No. 83]:

I. **THE COURT IS CAPABLE OF ENFORCING THE POLICY AS WRITTEN**

Venetian voluntarily and knowingly purchased a discounted, surplus lines insurance policy with a Failure to Maintain Exclusion and an Assault and Battery Exclusion, but is nonetheless seeking coverage after Kamara Wheeler intentionally started a fire that killed George Hughes. Under Georgia law, the Court must apply the terms of the exclusions as written. *Jefferson Ins. Co. of New York v. Dunn*, 496 S.E.2d 696, 699 (Ga. 1998).

In its dizzying and fanciful arguments of illusoriness and ambiguity, the Estate is essentially asking the Court to suspend "common-sense," and provide Venetian with a different policy than the one it purchased, which is entirely improper. *Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1264 (11th Cir. 2021).

A policy is only ambiguous if a competing interpretation is "reasonable." *Allstate Prop. & Cas. Ins. Co. v. Roberts*, 696 F. App'x 453, 455 (11th Cir. 2017). And "a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Richard Mckenzie & Sons, Inc.*, 10 F.4th at 1264. The learned Court is more than capable of reading the exclusions, applying them as written, and ruling that Venetian simply did not purchase insurance to cover a lawsuit involving a fire started by a convicted arsonist. *SawHorse, Inc. v. S. Guar. Ins. Co. of Ga.*, 604 S.E.2d 541, 544 (Ga. Ct. App. 2004).

## II. KINSALE'S FACTS ARE ADMITTED IF THE ESTATE'S RECURRING RELEVANCY OBJECTION IS OVERRULED

With the exception of four paragraphs, the Estate responded to Kinsale's Statement of Undisputed Facts by objecting on grounds of "not material and irrelevant to the question of whether Kinsale has a duty to defend[.]" [Dkt. No. 90-6.] This is only a valid strategy if the facts are immaterial. *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 535 F. Supp. 3d 1321, 1324-25 (N.D. Ga. 2021), *aff'd*, 73 F.4th 934 (11th Cir. 2023). Kamara Wheeler's conviction for the voluntary manslaughter of George

Hughes by arson is material. Under LR 56, NDGa, the Estate should accordingly be deemed as admitting those facts. *See Cap. One, N.A. v. Browder*, No. 109CV02259MHSGGB, 2011 WL 13269115, at *2 (N.D. Ga. Apr. 6, 2011), *report and recommendation adopted*, No. 1:09-CV-02259-MHS, 2011 WL 13269164 (N.D. Ga. May 5, 2011).

### III. THE FAILURE TO MAINTAIN EXCLUSION APPLIES

The Failure to Maintain Exclusion bars coverage for any suit for bodily injury involving any "failure to maintain any premises in, or restore any premises to a safe … habitable and tenantable condition." [Policy, Dkt. No. 1-6, at 51.] The Estate tries to evade the plain language by fabricating confusion where there is none.

Ambiguity

The Estate argues the exclusion becomes ambiguous if it is pitted against another limitation, the Limitation of Coverage to Designated Project or Premises endorsement, which is not even at issue. [Dkt. No. 90, at 9-12.] The Estate describes the Designated Premises *Limitation* as a grant of coverage, but the Insuring Agreement provides coverage, not this *Limitation*. [Policy, Dkt. No. 1-6, at 5.] The purpose of the Designated Premises Limitation is "to exclude coverage for situations where the insured was engaged in activities away from the insured's premises[.]" *See Parliament Ins. Co. v. Bryant*, 380 So. 2d 1088, 1089 (Fla. 3 DCA

1980). *See also 9 Couch on Ins.* § 126:14 (noting that policies "*may restrict* coverage to particular physical areas by means of an explicit exception for risks arising or harm caused off or away from specified premises.").

If that strategy does not work, the Estate suggests maybe there is an ambiguity because the Designated Premises Limitation endorsement has this sentence at the bottom: "All Other Terms And Conditions Of The Policy Remain Unchanged." [Dkt. No. 90, at 10-11.] That is standard language that thousands of other courts have no trouble understanding. *See, e.g., Georgia Carpet Exp. v. Travelers Indem. Co.*, 252 S.E.2d 17, 18-19 (Ga. Ct. App. 1979) (enforcing exclusion with similar language); *Endurance Am. Specialty Ins. Co. v. United Constr. Eng'g, Inc.*, 786 F. App'x 195, 199 (11th Cir. 2019) (rejecting an argument like the Estate's as "unsupported by any text in the endorsement"); *Nahant Pres. Tr., Inc. v. Mount Vernon Fire Ins. Co.*, 78 F.4th 48, 52–53 (1st Cir. 2023) (similar language in exclusion unambiguously did not alter policy terms not mentioned in the exclusion).

As its only authority for the argument, the Estate cites to *Kinsale Ins. Co. v. Flyin'Diesel Performance & Offroad, LLC*, 5:22-cv-0048, 2023 WL 2756988 (W.D. Tex. Mar. 31, 2023), *appeal docketed*, No. 23-50336 (5th Cir. May 9, 2023). The insured argued a policy was ambiguous because a Coverage for Designated Events endorsement ("CDE") conflicted with exclusions added by endorsement. *Id*. at *5. Specifically, the CDE provided:

> This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" arising out of the ownership, maintenance or use of premises for the designated event(s) in the above Schedule, including any property located on these premises during the designated event(s).

*Id.* at *9. The court struggled with the purpose of the CDE because it did not expand or limit coverage that was already available under the policy's insuring agreement." *Id.* at *11. The court found the insureds "procured a one-day insurance policy to specifically cover a Race Wars 2 event" but "[t]he exclusionary endorsements severely limit or eliminate this coverage[.]" *Id.*

The CDE is not like the Designated Premises Limitation. The Insuring Agreement applied to bodily injury in the "coverage territory," which is defined broadly. Kinsale included the Designated Premises Limitation to territorially limit coverage to Venetian's apartment complexes.[1] In *Flyin'Diesel*, the CDE eliminated operations, not its territory.

The Failure to Maintain Exclusion "cannot be considered ambiguous simply because it includes provisions that operate to preclude coverage that would otherwise be granted" – "[t]hat is exactly what exclusions are intended to do[.]" *Ball v. NCRIC Inc.*, 120 Fed. Appx. 965, 971 (4th Cir. 2005).

---

[1] Venetian benefitted from the Designated Premises Limitation because it reduced the premium. *See Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 389 (S.D.N.Y. 2008) ("Limiting the coverage to designated premises significantly reduces the premium.").

The Estate continues to quibble with the form by suggesting that maybe the exclusion is ambiguous because it uses the conjunction "and" at the end of the list of what is excluded, instead of the word "or." [Dkt. No. 90, at 13-14.]

This argument was tried in *Taylor v. Bar Plan Mut. Ins. Co.*, 457 S.W.3d 340 (Mo. 2015) and failed. The plaintiff was the client of an attorney that sued the attorney's liability insurer to collect on a judgment. *Id*. at 344. The insurer prevailed on summary judgment under an exclusion. *Id*. On appeal, the client argued (like the Estate here) that the exclusion was ambiguous and did not apply "because its four subparts are connected with 'and' and not 'or,' making the provision conjunctive, essentially one exclusion." *Id*. at 348. The Missouri Supreme Court sensibly disagreed because that interpretation would "distort policy language to create ambiguity where none exists." *Id*. at 349. The Court explained:

> This Court has held that "and" most commonly means "along with or together with." However, in particular fact situations, "and" can mean "as well as, in addition to, and also"—in other words, "or." This is such a fact situation. Under Client's interpretation, for the exclusion to apply, the insured would have to be acting simultaneously as (1) a public official, (2) an ERISA fiduciary, (3) an investment advisor/securities broker/insurance agent/real estate agent/accountant, and (4) a lawyer representing investors regarding investments in enterprises that the lawyer either owns or receives a commission. It is difficult to imagine a scenario in which such an exclusion could ever apply. Client's reading renders the language essentially meaningless.

*Id*. at 348–49.

By definition, the terms "safe, sanitary, healthy, habitable and tenantable" are adjectives. MERRIAM-WEBSTER.COM DICTIONARY, accessed 11/22/2023. An adjective is "a modifier of a noun to denote a quality of the thing named, [or] to indicate its quantity or extent[.]" *Adjective*, MERRIAM-WEBSTER.COM DICTIONARY, accessed 11/22/2023. Stated differently, "[a]djectives describe or modify—that is, they limit or restrict the meaning of—nouns and pronouns." *Id*.

As used in the Failure to Maintain Exclusion, the adjectives "safe, sanitary, healthy, habitable and tenantable" modify or define the noun "condition." Venetian is required to maintain its premises in the defined "condition," including all five adjectives. Any failure to meet one or more of the five conditions does not meet the defined "condition" and triggers the exclusion.

<u>Illusoriness</u>

If it is not ambiguous, the Estate suggests the Failure to Maintain Exclusion applies but that it renders the policy illusory. [Dkt. No. 90, at 14-15.] Georgia law is clear that "an insurance policy is only illusory when it results in a *complete lack of any policy coverage*." *G&A Fam. Enters. v. Am. Fam. Ins. Co.*, No. 1:20-cv-3192-JPB, 2021 WL 1947180, at *6 (N.D. Ga. May 13, 2021) (emphasis added). "[I]n other words, the policy may not offer coverage that is chimerical." *Cynergy, LLC v. First Am. Title Ins. Co.*, 706 F.3d 1321, 1327 (11th Cir. 2013). For the Estate to render the Policy illusory, it must show no claim could ever be covered under the Policy.

The Failure to Maintain Exclusion does not completely negate all coverage under the Policy. A claim by a tenant who was erroneously locked out of his unit, for example, would not implicate the exclusion. A claim by a tenant whose car was damaged from debris from a lawnmower, for example, would not implicate the exclusion. A claim for defamation against the insured for erroneous information about someone, for example, would not implicate the exclusion.

The Court need not engage in all those hypotheticals. The Estate sued Venetian for failing to maintain its premises in "repair" as a landlord under O.C.G.A. § 44-7-13 and for failing to keep its premises in a safe condition as a landowner under O.C.G.A. § 51-3-1 by "not hav[ing] proper fire detection and fire suppression equipment, required by applicable codes and regulations." [Underlying Complaint, Dkt. No. 1-5, at 1, 6-7.] The Failure to Maintain Exclusion clearly applies.[2]

## IV. THE ASSAULT AND BATTERY EXCLUSION APPLIES

The Assault and Battery Exclusion excludes coverage for "'bodily injury[]' … arising out of, related to, or, in any way involving any actual or alleged assault,

---

[2] It cannot be lost that Venetian paid only $12,800 for a surplus lines policy that covered two apartment complexes and 123 units. [Unredacted Policy Declarations, Dkt. No. 93, at 1.] Venetian got exactly what it intended to purchase for a reduced premium – a surplus line policy with limited coverage. The Court cannot and should not rewrite the contract to provide more favorable terms than Venetian and Kinsale negotiated. *See Richard Mckenzie & Sons, Inc.*, 10 F.4th at 1267.

battery, harmful or offensive contact, or threat, whether provoked or unprovoked … regardless of fault or intent and regardless of the particular cause of action." [Policy, Dkt. No. 1-6, at 40.] It is obvious Wheeler intentionally started the fire that killed Mr. Hughes.

The Estate failed to address any of the authority Kinsale provided finding no duty to defend based on criminal adjudications. *See, e.g.*, *Harden v. State Farm Fire & Cas. Co.*, 605 S.E.2d 37, 38-39 (Ga. Ct. App. 2004) (finding State Farm had no duty to defend under an intentional acts exclusion based on an insured's entry of an *Alford* plea to child molestation); *Scottsdale Ins. Co. v. GWF Phillips Lodge No. 691*, No. 1:08-CV-94 (WLS), 2009 WL 10673435, at *4 (M.D. Ga. Sept. 30, 2009) (no duty to defend because an uninsured assailant "was found guilty by a Georgia court of assault and battery").

The Estate also failed to address Kinsale's authority regarding the binding nature of judicial admissions on summary judgment. *See, e.g.*, *Langdale Co. v. Nat'l Union Fire Ins. Co.*, 110 F. Supp. 3d 1285, 1293–94 (N.D. Ga. 2014), *aff'd*, 609 F. App'x 578 (11th Cir. 2015) ("Judicial admissions are 'formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them.'") (quoting *In re Malia*, No. 09–42273, 2012 WL 909738, *2 (Bankr. N.D. Ga. Feb. 8, 2012). *See also James River Ins. Co. v. Fortress Sys.*, 899 F. Supp. 2d 1331, 1334 (S.D. Fla. 2012) (applying judicial estoppel against a purported insured for taking

one position in the underlying action and another position in the ensuing coverage action). Try as it might, the Estate "cannot plead … around realty." *Zucker v. U.S. Specialty Ins.*, 856 F.3d 1343 (11th Cir. 2017)

The Estate also tries to suggest arson is not an assault and battery because there is no intent. [Dkt. No. 90, at 21.] But it ignores that the Assault and Battery Exclusion that Venetian purchased applies "*regardless of fault or intent*." [Policy, Dkt. No. 1-6, at 40.] The Estate cannot ask the Court to ignore language or rewrite the exclusion. There is clearly no coverage. *See, e.g.*, *Miami Beach Entm't, Inc. v. First Oak Brook Corp. Syndicate*, 682 So.2d 161, 162 (Fla. 3d DCA 1996) (applying assault and battery exclusion that included "[r]egardless of degree of culpability or intent" language to injuries from a bottle a stranger threw and unintentionally injured the claimant); *Founders Ins. Co. v. Cortes-Garcia*, No. 8:10-CV-02286-EAK, 2012 WL 2505917, at *7 (M.D. Fla. June 28, 2012) (applying assault and battery exclusion to allegations that a chair was "accidentally" thrown at the claimant); *Britamco Underwriters, Inc. v. O'Hagan*, No. CIV. 94-1160, 1994 WL 477551, at *5 (E.D. Pa. Sept. 2, 1994), *aff'd*, 60 F.3d 814 (3d Cir. 1995).

In *Essex Ins. Co. v. Sega Ventures, LLC*, No. CV413-253, 2015 WL 1505979 (S.D. Ga. Mar. 31, 2015), the policy included an assault and battery sublimit for assault or battery, "whether or not the actual 'injury' was intended or expected." *Id.*, at *5. The court noted that "[w]hile "assault" and "battery" may have alternate legal

definitions in a civil suit, the Court uses an insurance policy's defined terms when determining coverage," and "the provision's language covers all claims "resulting from" an assault and battery, which includes … derivative claims …" *Id.* Even though the underlying complaint included negligence counts, the court explained "even if [the] punch or strike was somehow the result of mistaken identity, the policy's assault definition makes no exception for attempts to injury that are the result of negligence … [and] the policy clearly states that a 'battery' may occur even if the resulting injury was not 'intended or expected.'" *Id.*

In attempting to ignore what indisputably happened, the Estate ignores the elements of Wheeler's crimes, which establish beyond all doubt that she intentionally inflicted offensive contact on Mr. Hughes and caused his death.

Wheeler pled guilty and was convicted of voluntary manslaughter under O.C.G.A. § 16-5-2 as a lesser included offense of murder. [Guilty Plea Final Disposition Form in Criminal Action, Dkt. No. 81-6.] Wheeler also pled guilty and was convicted for arson in the first degree under O.C.G.A. § 16-7-60. [*Id.*]

Her convictions establish she intentionally killed Mr. Hughes. Voluntary manslaughter under O.C.G.A. § 16-5-2 means "caus[ing] the death of another human being under circumstances which would otherwise be murder," except that the assailant is prompted by "sudden, violent, and irresistible passion." Wheeler pled guilty to and was convicted of killing Mr. Hughes with the requisite

intent for murder – "malice aforethought, either express or implied[.]"[3] Moreover, her convictions for arson in the first degree establishes that "it [was] reasonably foreseeable that human life might be endangered." O.C.G.A. § 16-7-60(a)(5).

Under Georgia law, the convictions establish the death of Mr. Hughes was caused by "assault, battery, harmful or offensive contact, or threat." Under Georgia law, "battery" means "[t]he act of intentionally causing actual physical harm to another is civilly actionable as a battery." *Equal Emp. Opportunity Comm'n v. Nunez, Inc.*, No. 1:09-CV-2661-WSD-AJB, 2011 WL 13168394, at *20–25 (N.D. Ga. Feb. 28, 2011), *report and recommendation adopted*, No. 1:09-CV-2661-WSD, 2011 WL 13175436 (N.D. Ga. Mar. 14, 2011) (quoting *Everett v. Goodloe*, 602 S.E.2d 284, 291 (Ga. Ct. App. 2004)). "It is the intent to make either harmful or insulting or provoking contact with another which renders one civilly liable for a battery." *Nunez, Inc.*, 2011 WL 13168394, at *22 (quoting *Everett*, 602 S.E.2d at 291). *See also Metro. Atlanta Rapid Transit Auth. v. Mosley*, 634 S.E.2d 466, 468 (Ga. Ct. App. 2006) (observing that an "'offensive' touching is one which proceeds from anger, rudeness, or lust"). Even "minimal" touching can be a battery. *First Mercury Ins. Co. v. Sudderth*, 620 Fed.Appx. 826, 828-29 (11th Cir. 2015). Moreover, indirect

---

[3] "Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." O.C.G.A. § 16-5-1(b).

assaults with a weapon or instrumentality, even from a distance, can qualify as an assault, battery, and harmful or offensive contact under Georgia law. *See, e.g.*, *Kohler v. Van Peteghem*, 767 S.E.2d 775, 779 (Ga. Ct. App. 2014), *overruled on other grounds by*, *Lee v. Smith*, 838 S.E.2d 870 (Ga. 2020); *Harris v. State*, 126 S.E.2d 693, 698 (Ga. Ct. App. 1962) ("Administering poison or any other harmful drug or substance to a person, with intent to inflict injury, amounts to assault and battery."); *Hendricks v. S. Bell Tel. & Tel. Co.*, 387 S.E.2d 593, 594 (Ga. Ct. App. 1989) ("The unlawful touching need not be direct, but may be indirect, as by the precipitation upon the body of a person of any material substance."). "If the tortfeasor acts with the belief that such unauthorized contact is substantially certain to result from his actions, that too can constitute the requisite intent to prove battery." *Kohler*, 767 S.E.2d at 779.

The Estate cites *20-35 86th St. Realty, LLC v. Tower Ins. Co. of New York,* 106 A.D.3d 478 (N.Y. App. Div. 2013), which dealt with New York's penal definitions of "assault" and "battery." This case has nothing to do with New York law, and that decision dealt with a motion to dismiss affirmative defenses based on an exclusion and did not address the merits of the coverage dispute.

If all its other strategies do not work, the Estate even goes so far as arguing that the word "suit" is unambiguous. Although its logic is difficult to follow, the Estate seems to argue that all the exclusions are ambiguous because they apply to

any "suit" for covered damages, which somehow contradicts the Insuring Agreement. [Dkt. No. 90, at 24.] The Estate poses the following question: "When read with the definition of "suit," the exclusion is circular – how can something that the Policy has already defined as within the scope of the Policy be excluded?" [*Id.*] The Estate's question highlights its confusion—exclusions preclude coverage otherwise available under the Policy, which "is exactly what exclusions are intended to do[.]" *Ball*, 120 Fed. Appx. at 971.

As a matter of law, the Assault and Battery Exclusion applies because Wheeler's convictions for voluntary manslaughter by way of arson included elements of harmful or offensive contact as well as intent to harm.

## CONCLUSION

The Court is more than able to enforce the terms of the policy as written. Venetian is "a sophisticated business entity, paid a minimal premium for such minimal coverage. … [Venetian] chose to buy the policy that it bought. It cannot change that choice now[.]" *See Richard Mckenzie & Sons, Inc.*, 10 F.4th at 1267. Kinsale is entitled to summary judgment.

Respectfully submitted,

/s/ ANDRES CORDOVA
Andres Cordova
Florida Bar No. 0118147
andres.cordova@clydeco.us
*Admitted Pro Hac Vice*

CLYDE & CO US LLP
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Telephone: (305) 446-2646
Fax: (305) 441-2374
*Counsel for Plaintiff*

/s/ ERIC P. BENEDICT
Eric P. Benedict
Georgia Bar No. 890708
Eric.Benedict@clydeco.us
*Local Counsel*
CLYDE & CO US LLP
271 17th Street NW
Suite 1720
Atlanta, GA 30363
Telephone: (404) 410-3178
*Counsel for Plaintiff*

## **LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE**

I hereby certify that the foregoing complies with the font and point selections approved by the Court in Local Rule 5.1(B). It is prepared in Book Antiqua, 13-point font.

/s/ANDRES CORDOVA
ANDRES CORDOVA

## **CERTIFICATE OF SERVICE**

I CERTIFY that on November 22, 2023, this document was filed via the CM/ECF system. I further certify I am unaware of any non-CM/ECF participants.

/s/ANDRES CORDOVA
ANDRES CORDOVA